Janet Lindner Spielberg (SBN 221926)
**LAW OFFICES OF JANET LINDNER SPIELBERG**
12400 Wilshire Boulevard, #400
Los Angeles, California  90025
Tel: (310) 392-8801
Fax: (310) 278-5938
Email: jlspielberg@jlslp.com

Michael D. Braun (SBN 167416)
**BRAUN LAW GROUP, P.C.**
10680 West Pico Boulevard, Suite 280
Los Angeles, California  90064
Tel:  (310) 836-6000
Fax:  (310) 836-6010
Email: service@braunlawgroup.com

Joseph N. Kravec, Jr. (*pro hac* to be filed)
Maureen Davidson-Welling (*pro hac* to be filed)
Wyatt A. Lison ( *pro hac* to be filed)
**STEMBER FEINSTEIN DOYLE
  & PAYNE LLC**
Allegheny Building, 17th Floor
429 Forbes Avenue
Pittsburgh, PA  15219
Tel:  (412) 281-8400
Fax:  (412) 281-1007
Email:jkravec@stemberfeinstein.com
Emal:mdavidsonwelling@stemberfeinstein.com
Email: wlison@stemberfeinstein.com

*ATTORNEYS FOR PLAINTIFF*

FILED

JUN 1 4 2011

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| SKYE ASTIANA on behalf of herself and all others similarly situated, | CASE NO.: **C11-02910** EDL |
| Plaintiff, | **CLASS ACTION** |
| v. | **COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY AND INJUNCTIVE RELIEF** |
| DREYER'S GRAND ICE CREAM, INC., | **DEMAND FOR JURY TRIAL**   ADR |
| Defendant. | |

---

1

COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief

Plaintiff, by her attorneys, brings this class action against Defendant Dreyer's Grand Ice Cream, Inc. ("DGIC" or "Defendant"), on her own behalf and on behalf of all others similarly situated, and alleges as follows based upon information and belief and the investigation of her counsel:

## INTRODUCTION

1.      This is a class action on behalf of a nationwide class of consumers who purchased Dreyer's Grand Ice Cream, Inc.'s "All Natural" Ice Cream products containing alkalized cocoa processed with potassium carbonate, a man-made, synthetic ingredient, beginning June 14, 2007 through the present ("Class Period"). Since at least 2007, DGIC has packaged, marketed and sold its Ice Cream products as being "All Natural" despite the fact they contain alkalized cocoa processed with a non-natural, man-made, synthetic ingredient - potassium carbonate.[1]

2.      Throughout the Class Period, DGIC prominently makes the claim "All Natural" on the labels of its Ice Cream products, cultivating a wholesome and healthful image in an effort to promote the sale of these products, even though its Ice Cream products were actually not "All Natural." While the "All Natural" Ice Cream products' labels did disclose they contained alkalized cocoa, the labels did not disclose that the alkalized cocoa was processed with a non-natural, man-made, synthetic ingredient - potassium carbonate. This is a significant omission since alkalized cocoa alternatively can be (and commonly is) processed with a natural ingredient such as sodium carbonate. In light of the Ice Cream labels' "All Natural" representation and the availability of natural processing ingredients for alkalized cocoa, a reasonably prudent consumer would certainly not normally expect the alkalized cocoa in DGIC's Ice Cream products to be processed with a man-made synthetic ingredient. Indeed, as a result of this false and misleading labeling, DGIC was able to sell these purportedly "All Natural" products to thousands of unsuspecting consumers in California and throughout the United States and to profit handsomely from these transactions.

---

[1]   As used throughout this Complaint, "Ice Cream" products includes DGIC's "All natural" premium Ice Creams, yogurts and sorbets identified in paragraph 23 of this Complaint.

COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No.

3.     Plaintiff alleges DGIC's conduct gives rise to common law fraud, violates the unlawful, unfair, and fraudulent prongs of California's Business and Professions Code section 17200, *et. seq.* (the "UCL"), and violates California's Business and Professions Code section 17500 *et. seq.* (the "FAL").  Plaintiff also alleges that DGIC's conduct is grounds for restitution on the basis of quasi-contract/unjust enrichment.

4.     DGIC has its principal place of business in Oakland, California and operates, manages and directs its nationwide sales and business operations from its offices in California.  DGIC's parent and holding companies are also located in California.  DGIC has major manufacturing, storage and distribution facilities in California, from which DGIC operates and directs the majority, or at least a substantial proportion, of its nationwide sales and business operations.  It is therefore believed and averred that the misleading labeling and related misconduct at issue in this Complaint occurred, were conducted and/or were directed primarily from, or at least a substantial proportion emanated from, California, including, but not limited to: a) the design of the Ice Cream products' packaging; b) the review, approval and revision of Ice Cream products and labeling; and c) the management and supervision of sales operations to Plaintiff and the Class.

5.     Plaintiff also seeks injunctive and declaratory relief based upon DGIC's conduct asserted in this Complaint.  As of the date of this Complaint, retail stores in the United States and California are selling DGIC Ice Cream products labeled as "All Natural," even though they contain alkalized cocoa processed with potassium carbonate, a man-made synthetic ingredient.  Moreover, even if DGIC elects to remove the "All Natural" representation from the labels, DGIC is not presently enjoined from putting the "All Natural" representation back on its labels at any time it so decides, even if its Ice Cream products still contain unnatural, synthetic ingredients.  Accordingly, Plaintiff seeks declaratory and injunctive relief to ensure DGIC removes any and all of the "All Natural" representations from labels on its Ice Cream products available for purchase, and to prevent DGIC from making the "All Natural" representation on its Ice Cream labels in the future as long as the Ice Cream products continue to use alkalized cocoa processed with a synthetic, unnatural substance.

COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No.

**PARTIES**

6.     Plaintiff Skye Astiana is currently a resident of Klamath Falls, Oregon. From at least June 14, 2007 to September 2007, Plaintiff Astiana was domiciled in California, residing in San Francisco and Mill Valley, California. Ms. Astiana is and, throughout the entire class period asserted herein, has been very concerned about and tries to avoid consuming foods that are not natural, such as foods using synthetic or artificial chemical ingredients. For this reason, Ms. Astiana is willing to and has paid a premium for foods that are all natural and has refrained from buying their counterparts that were not all natural. While Ms. Astiana was a California resident, she purchased on average: a) every 3 to 4 weeks pint sized containers of DGIC's Haagen Dazs Chocolate and Chocolate Peanut Butter at the Safeway on Market Street in San Francisco or at the Whole Foods grocery store on Miller Avenue in Mill Valley, California, b) every two months half gallon containers of DGIC's Dreyer's Chocolate and Rocky Road at the Safeway on Market Street in San Francisco and at the Rite Aid store on Blithedale Avenue in Mill Valley, California, c) other of DGIC's Ice Cream products[2]. From September 2007 to the present, while Ms. Astiana has been an Oregon resident, she purchased on average: a) every 3 to 4 weeks in 2007, 2008 and 2010 pints and single serving sized containers of DGIC's Haagen Dazs Chocolate and Chocolate Peanut Butter at stores in Klamath Falls near her residence in Oregon, b) every two months half gallon containers of DGIC's Dreyer's Chocolate and Rocky Road at stores in Bend, Oregon and Klamath Falls near her residence in Oregon, c) as well as other of DGIC's Ice Cream products at stores near her residence Klamath Falls, Oregon. Based on the "All Natural" representation on the DGIC's Ice Cream labels[3], Ms. Astiana believed the DGIC Ice Cream she purchased was all natural and relied on this representation in making her purchases. Upon information and belief, the DGIC Ice Cream Ms. Astiana purchased contained alkalized cocoa processed with potassium carbonate, a man-made, synthetic ingredient. While touting the product as "All Natural," the DGIC Ice Cream labels Ms. Astiana relied on neither disclosed that the alkalized cocoa used in the DGIC Ice Cream was

---

[2]   The other ice cream products include one or more chocolate flavors of DGIC's Edy's brand.
[3]   DGIC's Ice Cream labels and the claims made thereon were created, made and/or directed by DGIC primarily from, or at least a substantial proportion emanated from, California.

---

4

1   processed with potassium carbonate, a man-made, synthetic ingredient, nor otherwise disclosed that

2   a man-made, synthetic ingredient was used in the DGIC Ice Cream. Ms. Astiana not only purchased

3   the DGIC Ice Cream products because the label said it was "All Natural," but she paid more money

4   for the DGIC Ice Cream she purchased than she would have had to pay for other similar ice cream or

5   frozen yogurt products that were not all natural in that they contained man-made, synthetic

6   ingredients. Had Ms. Astiana known the truth that the DGIC Ice Cream was not all natural, she

7   would not have purchased the DGIC Ice Cream, but would have purchased another brand of ice

8   cream that was truly all natural or, if one was not available, would have purchased another non-

9   natural ice cream or frozen yogurt product that was less expensive than DGIC Ice Cream. Ms.

10   Astiana did not receive the "All Natural" ice cream she bargained for when she purchased the DGIC

11   "All Natural" Ice Cream products, and has lost money as a result in the form of paying a premium

12   for DGIC Ice Cream because it was purportedly all natural rather than paying the lesser amount for

13   non-natural alternatives.

14         7.       The Dreyer's Grand Ice Cream business was founded in 1928 as a partnership

15   between William Dreyer and Joseph Edy. Defendant Dreyer's Grand Ice Cream, Inc., successor to

16   the original business, was incorporated in California in 1977 and reincorporated in Delaware in

17   1985. DGIC is the leading ice cream producer in the United States and currently maintains its

18   headquarters at 5929 College Avenue, Oakland, California 94618. In 2002, Dreyer's Grand Ice

19   Cream Holdings, Inc. (DGICH) was incorporated in Delaware, and it became a publicly traded

20   company upon the merger of DGIC and Nestlé Ice Cream Co., LLC (NICC), in 2003. DGICH also

21   currently maintains its headquarters at 5929 College Avenue, Oakland, California 94618. In

22   addition, DGIC owns its largest manufacturing and distribution facility in Bakersfield, California;

23   owns a manufacturing plant with an adjoining cold storage warehouse in Tulare, California; owns a

24   cold storage warehouse facility located in the City of Industry, California; and leased an ice cream

25   manufacturing plant with an adjoining cold storage warehouse located in the City of Commerce,

26   California. DGIC is an affiliate of Nestlé USA, which is owned by Nestlé S.A. of Vevey,

27   Switzerland, the world's largest food company. Nestlé USA currently maintains its headquarters at

28

COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No.

1  800 North Brand Blvd., Glendale, California, 91203.  In 2010, Nestlé USA had sales of $10.4

2  billion.

3      8.      DGIC and its subsidiaries manufacture and distribute a full spectrum of ice cream

4  products and frozen snacks.  From its incorporation in 1977 to the present day, DGIC claims to

5  produce a variety of premium ice cream products made with all natural ingredients and all natural

6  flavors.  DGIC currently manufactures and distributes premium products under the DREYER'S

7  brand name in the Western United States and Texas and under the EDY'S® brand name east of the

8  Rocky Mountains.  DGIC also produces and distributes the super premium line of Haagen-Daz

9  products in the United States.  The HAGGEN-DAZ® brand name, owned by General Mills, is

10 licensed to Nestlé in the United States.  DGIC's products are sold and distributed nationwide in

11 grocery stores, convenience stores, club stores, ice cream parlors, restaurants, hotels and other

12 venues.

13                          **JURISDICTION AND VENUE**

14      9.      Jurisdiction of this Court is proper under 28 U.S.C. §1332, as complete diversity

15 between the parties exists.  Representative Plaintiff Skye Astiana, now an Oregon resident, was a

16 California resident in this District during her purchases of Defendant's products at issue in this

17 litigation from June 14, 2007 through September, 2007. Defendant is incorporated in Delaware and

18 its principle place of business is Oakland, California.  The nationwide class consists of citizens and

19 residents of states across the country.[4]

20      10.     Upon information and belief, the amount in controversy exceeds $5,000,000 for

21 Representative Plaintiff and Class members collectively, exclusive of interest and costs, by virtue of

22 the combined purchase prices paid by Plaintiff and the Class, and the profit reaped by Defendant

23 from its transactions with Plaintiff and the Class, as a direct and proximate result of the wrongful

24 conduct alleged herein, and by virtue of the injunctive and equitable relief sought.

25

26

27 ────────────────────

28 [4] If a national class is not certified, Plaintiff preserves the right, in the alternative, to seek class
   certification of either a multi-state or California state class against DGIC.

────────────────────────────────────────────

COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No.

11.     Upon information and belief, based upon Defendant's sales of its products through thousands of retail stores nationwide, more than one third of all Class members reside outside of California, and the total number of Class members is at least 100 and is likely to number in the thousands if not hundreds of thousands.

12.     Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391(b) and (c). Defendant maintains offices and has agents, transacts business or is found within this judicial district.  Moreover, a substantial portion of the underlying transactions and events complained of herein occurred and affected persons and entities are in this judicial district, and Defendant has received substantial compensation from such transactions and business activity in this judicial district, including as the result of purchases of Defendant's Ice Cream products from retail locations herein.  Finally, Defendant inhabits and/or may be found in this judicial district, and the interstate trade and commerce described herein is and has been carried out in part within this judicial district.

## BACKGROUND

13.     The cocoa bean is a seed that grows on trees native to South America. The fermented and dried cocoa seed is the basic ingredient in chocolate.  Chocolate is a name given to products that are derived from cocoa which are then mixed with some sort of fat (*e.g.* cocoa butter, oil) and finely powdered sugar to produce a solid edible product.

14.     To make chocolate, the beans are processed, roasted, cracked and shelled.  The resulting pieces called nibs are further processed into a chocolate liquor, butter or powder.  The cocoa powder is typically used in the flavoring of Ice Creams.

15.     Unsweetened baking cocoa powder is typically rendered in one of two forms: an unalkalized cocoa or a version known as Dutch-process/alkalized cocoa. Both are made by pulverizing partially defatted chocolate liquor and removing nearly all the cocoa butter. Unalkalized cocoa is light in color and somewhat acidic with a strong chocolate flavor.  Dutch-process cocoa is processed with alkali to neutralize its acidity.  Dutch cocoa is slightly milder in taste, with a deeper and warmer color than unalkalized cocoa.  Dutch-process cocoa is frequently used when the product calls for the blending of cacao with liquids.  Dutch processing destroys most of the flavonols present

---

7

in unalkalized cocoa -- the water-soluble plant pigments that are believed to give dark chocolate health benefits in the form of antioxidant, anti-inflammatory and antiviral properties.

**ALKALIZED COCOA PROCESSED WITH POTASSIUM CARBONATE IS UNNATURAL**

16.     Although the FDA does not directly regulate the term "natural," the FDA has established a policy defining the outer boundaries of the use of that term by clarifying that a product is not natural if it contains color, artificial flavors, or synthetic substances. http://www.fda.gov/ForConsumers/ConsumerUpdates/ucm094536.htm and http://www.fda.gov/AboutFDA/Transparency/Basics/ucm214868.htm.  Specifically, the FDA states: "the agency will maintain its policy (Ref. 32) regarding the use of 'natural,' as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food." 58 Fed. Reg. 2302, 2407 (Jan. 6, 2003).

17.     Cocoa is typically either unalkalized, or alkalized.  In order for cocoa to be used in its alkalized form, a Dutching or alkalization takes place during the processing of the cocoa beans. During this process an alkali - usually either potassium carbonate or sodium carbonate[5]- is suspended in water to neutralize acids and alter the pH level of the beans. The alkalizing agent darkens the cocoa, makes it milder in flavor and increases its dispersability.

18.     The FDA requires that "when any optional alkali ingredient" is used, "the name of the food shall be accompanied by the statement 'Processed with alkali', or 'Processed with ------', the blank being filled in with the common or usual name of the specific alkali ingredient used in the food." 21 C.F.R. 163.112(c)(1).

---

[5] Besides the commonly used potassium carbonate and sodium carbonate, there are other less commonly used alkali substances approved for use in processing cocoa not listed herein that are identified at 21 C.F.R. 163.112(b)(1).  Significantly, sodium carbonate and sodium bicarbonate appear to be the only "safe and suitable" nonsynthetic alkali substances approved for use in alkalizing cocoa.  Id.  Compare 7 C.F.R. §205.605.  To the extent DGIC may claim some of its Ice Cream products may have to some degree used alkalized cocoa processed with one or more of these less commonly used alkali substances, it is believed and therefore averred by Plaintiff that the DGIC Ice Cream products did not contain alkalized cocoa processed with one of the nonsynthetic alkali substances, and instead contained alkalized cocoa processed with one of the synthetic alkali substances.

COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No.

19.    DGIC's Ice Cream products containing alkalized cocoa are processed with potassium carbonate. Potassium carbonate is a recognized synthetic substance. 7 C.F.R. §205.605(b). Significantly, the other commonly used alkali in making alkalized cocoa – sodium carbonate – is a recognized non-synthetic, natural substance. 7 C.F.R. §205.605(a). Unfortunately, as explained in the next section of this Compliant, DGIC's Ice Cream products never disclosed that the alkalized cocoa it used was processed with potassium carbonate, the synthetic substance, despite the "All Natural" representation on its Ice Cream product labels.

<strong>DREYER'S USE OF ALKALIZED COCOA</strong>

20.    American consumers are health conscious and look for wholesome, natural foods to keep a healthy diet so they frequently take nutrition information into consideration in selecting and purchasing food items.  Product package labels, including nutrition labels, are vehicles that convey nutrition information to consumers that they can and do use to make purchasing decisions.  As noted by Food and Drug Administration Commissioner Margaret Hamburg during an October 2009 media briefing, "[s]tudies show that consumers trust and believe the nutrition facts information and that many consumers use it to help them build a healthy diet."

21.    The prevalence of claims about nutritional content on food packaging in the United States has increased in recent years as manufacturers have sought to provide consumers with nutrition information and thereby influence their purchasing decisions.  The results of the FDA's most recent Food Label and Package Survey found that approximately 4.8 percent of food products sold in the United States had either a health claim or a qualified health claim on the food package, and that more than half (53.2%) of the food products reviewed had nutrient content claims on the packaging.

22.    The alkalized cocoa in DGIC's Ice Cream products labeled as "All Natural" was processed with potassium carbonate, a synthetic substance.  DGIC's Ice Cream products could have used alkalized cocoa processed with the other commonly used alkalizing agent - sodium carbonate, a non-synthethic, natural substance, but they did not.  While DGIC's "All Natural" Ice Cream labels did disclose that they contain alkalized cocoa, those labels did not disclose that the alkalized cocoa was processed with potassium carbonate, a synthetic substance.  This omission is significant and

material given its "All Natural" representation on the Ice Cream products labels. Indeed, based on the "All Natural" representation, one would normally expect the alkalized cocoa contained in the Ice Cream products to be processed with the commonly used non-synthetic, natural alternative – sodium carbonate.

23.     According to DGIC's Ice Cream labels, cocoa processed with alkali is used as an ingredient in 84 of DGIC's Ice Cream flavors which otherwise claim to be "All Natural." Those Ice Cream flavors are:

    a.      **Haagen-Daz "All-Natural" Flavors - Ice Cream**

Banana Split
Caramel Cone (also available in single serve cup)
Chocolate (also available in single serve cup and 28 oz. carton)
Chocolate "Five"
Chocolate Chip Cookie Dough
Chocolate Chocolate Chip
Chocolate Peanut Butter (also available in single serve cup)
Cookies & Cream
Dark Chocolate
Java Chip (also available in 28 oz. carton)
Mint Chip
Rocky Road
White Chocolate Raspberry Truffle

    b.      **Haagen-Daz "All Natural" Frozen Yogurts**
Chocolate Almond

    c.      **Haagen-Daz "All Natural" Lowfat Sorbet**
Chocolate

    d.      **Haagen-Daz "All Natural" Ice Cream Bars**
Chocolate & Dark Chocolate

    e.      **Dreyer's and Edy's "All Natural" Slow Churned® Light Ice Cream**
Chocolate (also available in snack size cup)
Chocolate Chip (also available in snack size cup)
Cookie Dough (also available in snack size cup)
Cookies 'n Cream (also available in snack size cup)
Double Fudge Brownie (also available in snack size cup)
French Silk
Fudge Tracks
Mint Chocolate Chip (also available in snack size cup)
Mint Cookie Crunch
Mocha Almond Fudge
Mud Pie

---

10

Neapolitan
Nestle Drumstick Sundae Cone
Peanut Butter Cup
Rocky Road (also available in snack size cup)
Triple Chocolate Peanut Butter Sundae
Triple Cookie Fudge Sundae

    **f.**    **Dreyer's and Edy's "All Natural" Slow Churned® No Sugar Added Ice Cream**
Fudge Tracks
Mint Chocolate Chip
Neapolitan
Triple Chocolate

    **g.**    **Dreyer's and Edy's "All Natural" Slow Churned® Yogurt Blends**
Cappuccino Chip
Chocolate Fudge Brownie
Chocolate Vanilla Swirl
Cookies 'n Cream

    **h.**    **Dreyer's and Edy's "All Natural" Grand Ice Cream**

Chocolate
Chocolate Chip
Mint Chocolate Chip
Neapolitan
Rocky Road
Vanilla Chocolate

    **i.**    **Dreyer's and Edy's "All Natural" Fun Flavors Ice Cream**
Mocha Almond Fudge (also available in snack size cup)
Nestle Drumstick (also available in snack size cup)
Peanut Butter Cup (also available in snack size cup)

    24.    The labeling of products as "All Natural" carries implicit health benefits important to consumers – benefits that consumers are often willing to pay a premium over comparable products that are not "All Natural." Over the past 30 years, DGIC has cultivated and reinforced a corporate image that has catered to this "All Natural" theme and have boldly emblazed this claim on each and every one of its Ice Cream products labels, despite the fact it uses alkalized cocoa processed with an unnatural, synthetic ingredient – potassium carbonate.

    25.    DGIC has used the "All Natural" label to shape its brand and sell its product. Yet, the existence of alkalized cocoa processed with potassium carbonate in its Ice Creams renders the use of the label "All Natural," false and misleading. In manufacturing its Ice Cream products, Defendant

---

COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No.

had a choice between using natural or unnatural alkali processed cocoa. It chose the later, but nonetheless labeled its Ice Cream products as "All Natural." As a matter of its self-characterized socially conscious corporate morality, and as matter of law, DGIC must now reconcile its labeling with the true content of its products.

## CLASS ACTION ALLEGATIONS

26.   Plaintiff brings this action on behalf of herself and on behalf of all other members of the Class ("Class"), defined as all persons who, on or after June 14, 2007, purchased in the United States DGIC's Ice Cream products that were labeled "All Natural" but contained alkalized cocoa processed with a synthetic ingredient. Plaintiff brings this Class pursuant to Federal Rule of Civil Procedure 23(a), and (b)(1), 23(b)(2) and 23(b)(3).

27.   Excluded from the Class are: (i) all persons who purchased DGIC Ice Cream products for resale; (ii) Defendant and its employees, principals, affiliated entities, legal representatives, successors and assigns; and (iii) the judges to whom this action is assigned and any members of their immediate families.

28.   Upon information and belief, there are tens of thousands of Class members who are geographically dispersed throughout the United States. Therefore, individual joinder of all members of the Class would be impracticable.

29.   Common questions of law or fact exist as to all members of the Class. These questions predominate over the questions affecting only individual class members. These common legal or factual questions include:

   a.   whether DGIC labels its Ice Cream products as "All Natural;"

   b.   whether the alkalized cocoa used in DGIC Ice Cream products is processed with a synthetic ingredient;

   c.   whether DGIC's "All Natural" labeling of its Ice Cream products is likely to deceive class members or the general public;

   d.   whether DGIC's representations are unlawful;

   e.   the appropriate measure of damages, resitutionary disgorgement and/or restitution.

30.     Plaintiff's claims are typical of the claims of the Class, in that Plaintiff was a consumer who purchased DGIC's "All Natural" Ice Cream products in the United States that contained alkalized cocoa processed with a synthetic ingredient during the Class Period. Plaintiff, therefore, is no different in any relevant respect from any other Class member, and the relief sought is common to the Class.

31.     Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, and she has retained counsel competent and experienced in conducting complex class action litigation. Plaintiff and her counsel will adequately protect the interests of the Class.

32.     A class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual class member likely will be relatively small, especially given the relatively small cost of the Ice Cream products at issue and the burden and expense of individual prosecution of the complex litigation necessitated by DGIC's conduct. Thus, it would be virtually impossible for the Class members individually to effectively redress the wrongs done to them. Moreover, even if the Class members could afford individual actions, it would still not be preferable to class-wide litigation. Individualized actions present the potential for inconsistent or contradictory judgments. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

33.     In the alternative, the Class may be certified because DGIC has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate preliminary and final equitable relief with respect to the Class.

### FIRST CAUSE OF ACTION
### (Common Law Fraud)

34.     Plaintiff hereby incorporates the foregoing paragraphs of this Complaint and restates them as if they were fully written herein.

35.     Defendant's product labels for its Ice Cream uniformly misrepresented during the Class Period that its Ice Cream products were "All Natural," when in fact they contain alkalized

---

COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No.

cocoa powder processed with potassium carbonate, a man-made, synthetic ingredient. While
Defendant's labels did uniformly disclose during the Class Period that its "All Natural" Ice Cream
contained alkalized cocoa powder, it uniformly did not disclose during the Class Period that the
alkalized cocoa powder it used contained the man-made synthetic potassium carbonate. Thus, the
disclosure on its labels that the Ice Cream contained alkalized cocoa power constitutes an affirmative
act of concealment and non-disclosure since cocoa power may be (and commonly is) alkalized with
natural ingredients such as sodium carbonate, and the information about whether Defendant's cocoa
powder was alkalized with the man-made, synthetic potassium carbonate was known only by
Defendant. Defendant had a duty to disclose this material information in light of its representation
on its labels that its Ice Cream was "All Natural."

36.     Defendant's "All Natural" statements and representations and it its affirmative
concealments and omissions described herein were material in that there was a substantial likelihood
that a reasonable prospective purchaser of its Ice Cream would have considered them important
when deciding whether or not to purchase the Ice Cream.

37.     Defendant knew or recklessly disregarded that its Ice Cream was not "All Natural,"
and uniformly misrepresented its Ice Cream as "All Natural" and affirmatively concealed and
omitted the truth with the intent and purpose of inducing consumers (*i.e.*, Plaintiff and the Class) to
purchase its Ice Cream products.

38.     Defendant failed to disclose, misrepresented and/or concealed the foregoing material
facts from Plaintiff and the Class knowing that these facts may have justifiably induced them to
refrain from purchasing Defendant's Ice Cream and instead purchase another manufacturer's ice
cream, frozen yogurt or sorbet that was actually all natural, or to purchase a less expensive non-
natural substitute ice cream, frozen yogurt or sorbet product.

39.     As set forth in paragraph 6 of this Complaint, Plaintiff relied on Defendant's "All
Natural" representations on its Ice Cream labels as a material basis for her decisions to purchase
Defendant's Ice Cream. Moreover, based on the very materiality of Defendant's misrepresentations,
concealments and omissions uniformly made on or omitted from its Ice Cream product labels, Class
members' reliance on those misrepresentations, concealments and omissions as a material basis for

---

14

1 | their decision to purchase Defendant's Ice Cream may be presumed or inferred for all Class

2 | members.

3 |      40.    Defendant carried out the scheme set forth in this Complaint willfully, wantonly and

4 | with reckless disregard for the interests of Plaintiff and the Class.

5 |      41.    By reason of the foregoing, Plaintiff and members of the Class have been injured by

6 | purchasing Ice Cream represented to be "All Natural" which was not, and/or by paying a premium

7 | for that supposedly "All Natural" Ice Cream over less expensive non-natural alternatives. Plaintiff

8 | and the Class are therefore entitled to recover damages, punitive damages, equitable relief such as

9 | restitution and disgorgement of profits, and declaratory and injunctive relief.

**SECOND CAUSE OF ACTION**
**(False Advertising in Violation of**
**California Business & Professions Code 17500, *et seq.*)**

13 |      42.    Plaintiff hereby incorporates the foregoing paragraphs of this Complaint and restates

14 | them as if they were fully written herein.

15 |      43.    Plaintiff hereby incorporates by reference the allegations contained above. This cause

16 | of action is brought by Plaintiff on behalf of herself, the Class members, and the general public.

17 |      44.    Defendant uses advertising on its packaging to sell its Ice Cream products. Defendant

18 | is disseminating advertising concerning its goods which by its very nature is deceptive, untrue, or

19 | misleading within the meaning of California Business & Professions Code 17500, *et seq.* because

20 | those advertising statements contained on its product labels are misleading and likely to deceive, and

21 | continue to deceive, members of the putative class and the general public.

22 |      45.    In making and disseminating the statements alleged herein, Defendant knew or should

23 | have known that the statements were untrue or misleading, and acted in violation of California

24 | Business & Professions Code 17500, *et seq.*

25 |      46.    The misrepresentations and non-disclosures by Defendant of the material facts

26 | detailed above constitute false and misleading advertising and therefore constitute a violation of,

27 | California Business & Professions Code 17500, *et seq.*

COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No.

47.   Through its deceptive acts and practices, Defendant has improperly and illegally obtained money from Plaintiff and members of the putative class.  As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and members of the putative class, and to enjoin Defendant from continuing to violate California Business & Professions Code §17500, *et seq.*, as discussed above.  Otherwise, Plaintiff and those similarly situated will continue to be harmed by Defendant's false and/or misleading advertising.

48.   Pursuant to California Business & Professions Code 17535, Plaintiff seeks an order of this Court ordering Defendant to fully disclose the true nature of its misrepresentations.  Plaintiff additionally requests an order requiring Defendant to disgorge its ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendant by means of such acts of false advertising, plus interest and attorneys fees so as to restore any and all monies which were acquired and obtained by means of such untrue and misleading advertising, misrepresentations and omissions, and which ill-gotten gains are still retained by Defendant.  Plaintiff and the putative Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

49.   Such conduct is ongoing and continues to this date.  Plaintiff and the putative Class are therefore entitled to the relief described below.

### THIRD CAUSE OF ACTION
("Unlawful" Business Practices in Violation of
The Unfair Competition Law ("UCL"), Bus. & Prof. Code 17200, et seq.)

50.   Plaintiff hereby incorporates the foregoing paragraphs of this Complaint and restates them as if they were fully written herein.

51.   The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.  Cal. Bus. Prof. Code 17200.

52.   A business act or practice is "unlawful" if it violates any established state or federal law.

16
COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No.

53.     California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Article 6, Section 110660 provides that: "Any food is misbranded if its labeling is false or misleading in any particular."

54.     DGIC has violated, and continues to violate the Sherman Law, Article 6, Section 110660 and hence has also violated and continues to violate the "unlawful" prong of the UCL through its use of the term "All Natural" on the labels of its Ice Cream products that contained alkalized cocoa processed with an unnatural, synthetic ingredient. This identical conduct also violates the FDA Policy concerning what is "natural" as set forth in paragraph 13 and throughout this Complaint. This identical conduct also serves as the sole factual basis of each cause of action brought by this Complaint, and Plaintiff does not seek to enforce any of the state law claims raised herein to impose any standard of conduct that exceeds that which would violate the FDA Policy concerning what is "natural."

55.     By committing the acts and practices alleged above, DGIC has engaged, and continues to be engaged, in unlawful business practices within the meaning of California Business and Professions Code 17200 *et seq.*

56.     Through its unlawful acts and practices, DGIC has obtained, and continues to unfairly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause DGIC to restore this money to Plaintiff and all Class members, to disgorge the profits DGIC made on these transactions, and to enjoin DGIC from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future as discussed herein. Otherwise, the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

### FOURTH CAUSE OF ACTION
**("Unfair" Business Practices in Violation of
The Unfair Competition Law ("UCL"), Bus. & Prof. Code 17200, et seq.)**

57.     Plaintiff hereby incorporates the foregoing paragraphs of this Complaint and restates them as if they were fully written herein.

---

17

58.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code 17200.

59.     A business act or practice is "unfair" under the Unfair Competition Law if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

60.     DGIC has and continues to violate the "unfair" prong of the UCL through its misleading description of its products as "All Natural" when indeed a main ingredient is not natural being processed with a synthetic substance. The gravity of the harm to members of the Class resulting from such unfair acts and practices outweighs any conceivable reasons, justifications and/or motives of DGIC for engaging in such deceptive acts and practices. By committing the acts and practices alleged above, DGIC has engaged, and continues to be engaged, in unfair business practices within the meaning of California Business and Professions Code 17200 *et seq.*

61.     Through its unfair acts and practices, DGIC has obtained, and continues to unfairly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause DGIC to restore this money to Plaintiff and all Class members, to disgorge the profits DGIC has made on its Ice Cream products, and to enjoin DGIC from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future as discussed herein. Otherwise, the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**FIFTH CAUSE OF ACTION**
**("Fraudulent" Business Practices in Violation of**
**The Unfair Competition Law ("UCL"), Bus. & Prof. Code 17200, et seq.)**

62.     Plaintiff hereby incorporates the foregoing paragraphs of this Complaint and restates them as if they were fully written herein.

63.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code §17200.

COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No.

64.     A business act or practice is "fraudulent" under the Unfair Competition Law if it actually deceives or is likely to deceive members of the consuming public.

65.     DGIC's acts and practices of mislabeling their products as "All Natural" despite the fact they contained alkalized cocoa processed with a non-natural synthetic substance has the effect of misleading consumers into believing the product something it is not.

66.     As a result of the conduct described above, DGIC has been, and will continue to be, unjustly enriched at the expense of Plaintiff and members of the proposed Class. Specifically, DGIC has been unjustly enriched by the profits it has obtained from Plaintiff and the Class from the purchases of Ice Cream products made by them.

67.     Through its unfair acts and practices, DGIC has improperly obtained, and continues to improperly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause DGIC to restore this money to Plaintiff and all Class members, to disgorge the profits DGIC has made on its Ice Cream products, and to enjoin DGIC from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future as discussed herein. Otherwise, the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## SIXTH CAUSE OF ACTION
### (Violation of the Consumers Legal Remedies Act, California Civil Code § 1750, et seq.)

68.     Plaintiff hereby incorporates the foregoing paragraphs of this Complaint and restates them as if they were fully written herein.

69.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code § 1750, et seq. (the "CLRA").

70.     Plaintiff and each member of the proposed Class are "consumers" within the meaning of Civil Code §1761(d).

71.     The purchases of DGIC's products by consumers constitute "transactions" within the meaning of Civil Code 1761(e) and the Ice Cream products offered by DGIC constitute "goods" within the meaning of Civil Code § 1761(a).

72.     DGIC has violated, and continues to violate, the CLRA in at least the following respects:

      a.   in violation of Civil Code §1770(a)(5), DGIC represents that the transaction had characteristics which it did not have;

      b.   in violation of Civil Code § 1770(a)(7), DGIC represents that its goods were of a particular standard, quality or grade, which they were not; and

      c.   in violation of Civil Code § 1770(a)(9), DGIC advertised its goods with the intent not to provide what it advertised.

73.     Plaintiff and the members of the Class request that this Court enjoin DGIC from continuing to engage in the unlawful and deceptive methods, acts and practices alleged above, pursuant to California Civil Code § 1780(a)(2).  Unless DGIC is permanently enjoined from continuing to engage in such violations of the CLRA, future consumers of DGIC's Ice Cream products will be damaged by its acts and practices in the same way as have Plaintiff and the members of the proposed Class.

74.     Pursuant to Civil Code § 1782, in conjunction with the filing of this action, Plaintiff notified DGIC in writing of the particular violations of Civil Code § 1770 and demanded that DGIC repair, or otherwise rectify the problems associated with its illegal behavior detailed above, which actions are in violation of Civil Code § 1770.

75.     As DGIC has failed to adequately respond to Plaintiff's demand within 30 days of Plaintiff's notice, Plaintiff hereby requests damages as provided for in Civil Code § 1780:

      a.     actual damages in excess of the jurisdictional limits of this Court;

      b.     an order enjoining methods, acts and/or practices, as outlined above, which are in violation of Civil Code § 1770;

      c.     any other relief which the Court deems proper; and court costs and attorneys' fees.

COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No.

## SEVENTH CAUSE OF ACTION
### (Restitution Based On Quasi-Contract/Unjust Enrichment)

76.     Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully rewritten herein.  Plaintiff pleads this Count in the alternative.

77.     DGIC's conduct in enticing Plaintiff and the Class to purchase its Ice Cream products through its false and misleading packaging as described throughout this Complaint is unlawful because the statements contained on its product labels are untrue.  DGIC took monies from Plaintiff and Class members for a product promised to be "All Natural," even though the product it sold is not natural as specified throughout this Complaint.  DGIC has been unjustly enriched at the expense of Plaintiff and Class members as result of its unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on DGIC to restore these ill-gotten gains to Plaintiff and the Class.

78.     As a direct and proximate result of DGIC's unjust enrichment, Plaintiff and the Class members are entitled to restitution or restitutionary disgorgement in an amount to be proved at trial.

### PRAYER

WHEREFORE, Plaintiff, on behalf of herself and on behalf of the other members of the Class request award and relief as follows:

A.     An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiff be appointed Class Representative and Plaintiff's counsel be appointed Class Counsel.

B.     Restitution in such amount that Plaintiff and all Class members paid to purchase Ice Cream products, or the profits DGIC obtained from those transactions.

C.     Compensatory damages.

D.     Punitive Damages.

E.     A declaration and order enjoining DGIC from advertising its products misleadingly, in violation of California's Sherman Food, Drug and Cosmetic Law and other applicable laws and regulations as specified in this Complaint.

COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No.

1       F.     An order awarding Plaintiff her costs of suit, including reasonable attorneys' fees and

2  pre and post-judgment interest.

3       G.     An order requiring an accounting for, and imposition of, a constructive trust upon, all

4  monies received by DGIC as a result of the unfair, misleading, fraudulent and unlawful conduct

5  alleged herein.

6       H.     Such other and further relief as may be deemed necessary or appropriate.

7  **DEMAND FOR JURY TRIAL**

8       Plaintiff hereby demands a trial by jury on all causes of action and/or issues so triable.

9  DATED: June 14, 2011                  Respectfully Submitted,

10                                   s/Michael D. Braun

11                            Michael D. Braun (Bar No. 167416)

12                            **BRAUN LAW GROUP, P.C.**
                          10680 W. Pico Blvd., Suite 280

13                            Los Angeles, CA 90064
                          Phone:  (310) 836-6000

14                            Fax:     (310) 836-6010
                          E-Mail: service@braunlawgroup.com

15                            Joseph N. Kravec, Jr.

16                            Wyatt A. Lison
                          Maureen Davidson-Welling

17                            **STEMBER FEINSTEIN DOYLE**
                          **    & PAYNE, LLC**

18                            429 Forbes Avenue, 17th Floor
                          Pittsburgh, PA 15219

19                            Tel: (412) 281-8400
                          Fax: (412) 281-1007

20                            Email:  jkravec@stemberfeinstein.com
                                    wlison@stemberfeinstein.com

21                                      mdavidsonwelling@stemberfeinstein.com

22                            Janet Lindner Spielberg (Bar No. 221926)
                          **LAW OFFICE OF JANET LINDNER**

23                            **SPIELBERG**
                          12400 Wilshire Blvd., Suite 400

24                            Los Angeles, CA 90025
                          Phone: (310) 392-8801

25                            Fax:    (310) 278-5938
                          E-Mail: jlspielberg@jlslp.com

26

27

28

22