Joseph N. Kravec, Jr. (*pro hac vice*)
Maureen Davidson-Welling (*pro hac vice*)
Wyatt A. Lison ( *pro hac vice*)
**STEMBER FEINSTEIN DOYLE**
   **PAYNE & KRAVEC, LLC**
Allegheny Building, 17th Floor
429 Forbes Avenue
Pittsburgh, PA  15219
Tel:  (412) 281-8400
Fax:  (412) 281-1007
Email:jkravec@stemberfeinstein.com
Email: mdavidsonwelling@stemberfeinstein.com
Email: wlison@stemberfeinstein.com

Nabil Majed Nachawati, II (*pro hac vice*)
**FEARS NACHAWATI LAW FIRM**
4925 Greenville Avenue, Suite 715
Dallas, TX 75206
214-890-0711
Fax: 214-890-0712
Email: mn@fnlawfirm.com

Janet Lindner Spielberg (SBN 221926)
**LAW OFFICES OF JANET LINDNER**
   **SPIELBERG**
12400 Wilshire Boulevard, #400
Los Angeles, California  90025
Tel:  (310) 392-8801
Fax:  (310) 278-5938
Email: jlspielberg@jlslp.com

Michael D. Braun (SBN 167416)
**BRAUN LAW GROUP, P.C.**
10680 West Pico Boulevard, Suite 280
Los Angeles, California  90064
Tel:  (310) 836-6000
Fax:  (310) 836-6010
Email: service@braunlawgroup.com

*PLAINTIFFS' INTERIM CO-LEAD COUNSEL*
(Additional Counsel on Signature Page)

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **SKYE ASTIANA, PAMELA RUTLEDGE-MUHS  and JAY WOOLWINE, on behalf of themselves and all others similarly situated,**<br><br>           **Plaintiffs,**<br><br>      **v.**<br><br>**DREYER'S GRAND ICE CREAM, INC.,**<br><br>           **Defendant.** | **CASE NO.:  3:11-cv-02910-EMC**<br>**Consolidated with CASE NO.: 3:11-cv-3164**<br><br>**CLASS ACTION**<br><br>**FIRST AMENDED CONSOLIDATED COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs, by their attorneys, bring this class action against Defendant, Dreyer's Grand Ice Cream, Inc. ("DGIC" or "Defendant"), on their own behalf and on behalf of all others similarly situated, and allege as follows based upon information and belief and the investigation of their counsel:

**INTRODUCTION**

1.      This is a class action on behalf of a nationwide class of consumers , as more fully defined herein, who, from June 14, 2007 through the present ("Class Period"), purchased certain DGIC's Dreyer's and Edy's ice cream products labeled, marketed and sold as "All Natural Flavors," even though they contained artificial and/or synthetic ingredients and flavors, and purchased certain DGIC's Häagen-Dazs ice cream products labeled, marketed and sold as "All Natural," even though they contained artificial and/or synthetic ingredients and flavors.  Fifty-one (51) DGIC Ice Cream[1] flavors of the fifty-nine (59) flavors identified in this First Amended Consolidated Complaint as being "All Natural" or "All Natural Flavors" contain artificial flavors; twenty-one (21) DGIC Ice Cream products contain Propylene Glycol Monostearate (a commercial antifreeze) and forty-three (43) DGIC Ice Cream products contain alkalized cocoa processed with Potassium Carbonate.  In addition to these two artificial flavors, DGIC's "All Natural" and "All Natural Flavors" Ice Creams contain the following synthetic and artificial ingredients:  Glycerin, Mono and Diglycerides, Tetrasodium Pyrophospate, and Xanthan Gum.  Each of these ingredients is recognized as a synthetic or artificial chemical ingredient or flavor by federal regulators.  *See* 7 C.F.R. §205.605(b) and 21 C.F.R. §184.1666.  The inclusion of these synthetic and artificial ingredients, at least two of which are artificial flavors, makes DGIC's "All Natural Flavors" and "All Natural Ice Cream" representations on its Ice Cream labels false and misleading to a reasonable consumer.

2.      Throughout the Class Period, DGIC prominently made the claim "All Natural" on the label of its Häagen-Dazs ice creams, representing that the entire ice cream product was entirely

---

[1]   As used throughout this Complaint, "Ice Cream" products includes DGIC's Häagen-Dazs brand "All Natural" premium Ice Creams identified in paragraph 46 of this First Amended Consolidated Complaint, and DGIC's Edy's and Dreyer's brands "All Natural Flavors" Ice Creams identified in paragraph 47 of this First Amended Consolidated Complaint.

FIRST AMENDED CONSOLIDATED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 3:11-cv-02910-EMC

natural.  Similarly, DGIC prominently made the claim "All Natural Flavors" on the labels of its Dreyer's and Edy's ice cream flavors, also representing that the entire ice cream product was entirely natural.  By making such "All Natural" and "All Natural Flavors" claims, DGIC was cultivating a wholesome image in an effort to promote the sale of these products, even though DGIC's Ice Creams were actually <u>not</u> "All Natural" or "All Natural Flavors."  While the "All Natural" and "All Natural Flavors" labels did disclose those Ice Cream products contained Glycerin, Mono and Diglycerides, Propylene Glycol Monostearate, Tetrasodium Pyrophospate, and Xanthan Gum, the labels did not disclose that these ingredients were synthetic or artificial.  Moreover, DGIC never disclosed the Potassium Carbonate in any of the Ice Cream, listing it instead as Cocoa Processed with Alkali as further described in Paragraph 29, *infra*.  In light of the "All Natural" and "All Natural Flavors" representations on DGIC's Ice Cream labels, a reasonably prudent consumer would not expect the Ice Cream to include synthetic or artificial ingredients including synthetic or artificial flavors.  Moreover, DGIC's "All Natural" and "All Natural Flavors" labeling violated federal regulations mandating how ice cream containing artificial flavors must be labeled, further reinforcing DGIC's "All Natural" and "All Natural Flavors" misrepresentations.  As a result of DGIC's false and misleading labeling, DGIC was able to sell purportedly "All Natural" and "All Natural Flavors" Ice Cream to thousands, if not millions, of unsuspecting consumers in California and throughout the United States and to profit handsomely from these transactions.

3.     Plaintiffs allege that DGIC's conduct violates the Magnuson Moss Warranty Act, 15 U.S.C. §§2301, *et seq.* (the "MMWA"), gives rise to common law fraud, violates the unlawful, unfair, and fraudulent prongs of the Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, *et seq.* (the "UCL"), violates the False Advertising Law, Cal. Bus. & Prof. Code §§17500, *et seq.* (the "FAL"), and violates the Consumers Legal Remedies Act, Cal. Civ. Code §§1750, *et seq.* (the "CLRA").  Plaintiffs also allege that DGIC's conduct is grounds for restitution on the basis of quasi-contract/unjust enrichment.

4.     DGIC's conduct alleged herein is false and misleading and violates both California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law), §110660 and other applicable state laws. Under the Sherman Law, California has adopted all federal food labeling regulations as its own.

FIRST AMENDED CONSOLIDATED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 3:11-cv-02910-EMC

Cal. Health & Safety Code §110100(a).  DGIC's identical conduct that violates the Sherman Law and other applicable state laws also violates the Federal Food, Drug and Cosmetic Act ("FDCA") §403(a)(1), 21 U.S.C. §343(a)(1)  and regulations adopted pursuant thereto.  This identical conduct serves as the sole factual basis of each state law cause of action brought by this First Amended Consolidated Complaint, and Plaintiffs do not seek to enforce any of the state law claims raised herein to impose any standard of conduct that exceeds that which would violate FDCA §403(a)(1) and regulations adopted pursuant thereto.  Thus, Plaintiffs' state law claims are not preempted by the FDCA because Plaintiffs seek to enforce the same standard of conduct required by federal law and Plaintiffs' state law claims are based upon DGIC's breach of that standard of conduct.  For any of Plaintiffs' state law causes of action, the allegations supporting those causes of action and any forms of relief sought for those state law causes of action, Plaintiffs expressly disclaim any attempt to hold Defendant to a higher standard of conduct than what is required under federal law, and do not seek any form of relief based on conduct exceeding that which is required under federal law.  All state law causes of action asserted in this First Amended Complaint, the allegations supporting those state law causes of action asserted herein and any forms of relief sought for those state law causes of action asserted herein shall be read consistent with the limitations set forth in this paragraph.

    5.    DGIC has its principal place of business in Oakland, California and operates, manages and directs its nationwide sales and business operations from its offices in California.  DGIC's parent and holding companies are also located in California.  DGIC has major manufacturing, storage and distribution facilities in California, from which DGIC operates and directs the majority, or at least a substantial proportion, of its nationwide sales and business operations.  It is therefore believed and averred that a substantial portion of the misleading labeling and related misconduct at issue in this First Amended Consolidated Complaint occurred, was conducted and/or was directed and emanated from California, including, but not limited to: a) the design of the DGIC's Ice Cream packaging; b) the review, approval and revision of the Ice Cream labeling; c) the selection and integration of ingredients into the Ice Cream; d) the distribution of the Ice Cream nationwide; and e) the management and supervision of sales operations to Plaintiffs and the Class (as defined herein).

FIRST AMENDED CONSOLIDATED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 3:11-cv-02910-EMC

6. Plaintiffs also seek injunctive and declaratory relief based upon DGIC's conduct asserted in this First Amended Consolidated Complaint. As of the date of this First Amended Consolidated Complaint, retail stores in the United States and California are selling DGIC Ice Cream labeled as being "All Natural" and "All Natural Flavors," even though the Ice Cream contains synthetic and artificial ingredients and flavors. Moreover, even if DGIC elects to remove the "All Natural" and "All Natural Flavors" representations from the Ice Cream labels, DGIC is not presently enjoined from putting the "All Natural" or "All Natural Flavors" representations back on its labels at any time it so decides, even if its Ice Cream products still contain unnatural, synthetic or artificial ingredients and flavors. Accordingly, Plaintiffs seek declaratory and injunctive relief to ensure DGIC removes any and all of the "All Natural" and "All Natural Flavors" representations from the labels on its Ice Cream available for purchase, and to prevent DGIC from making the "All Natural" or "All Natural Flavors" representations on its Ice Cream labels in the future as long as the Ice Cream products continue to contain synthetic or artificial ingredients or flavors.

## PARTIES

7. Plaintiff Skye Astiana is currently a resident of Mill Valley, California. Ms. Astiana was previously a resident of Klamath Falls, Oregon, from approximately the end of September 2007 until September 2011. Prior to moving to Klamath Falls, Ms. Astiana was domiciled in California, residing in Mill Valley, California for all of August and most of September 2007 and prior thereto. Ms. Astiana is and for the past two decades has been, very concerned about and tries to avoid consuming foods that are not natural, such as foods using synthetic or artificial chemical ingredients. For this reason, Ms. Astiana is willing to and has paid a premium for foods that are all natural and has refrained from buying their counterparts that were not all natural. While Ms. Astiana was a California resident, she purchased on average: a) every 3 to 4 weeks pint sized containers of DGIC's Häagen-Dazs "All Natural" Chocolate and Chocolate Peanut Butter Ice Cream at the Safeway on Market Street in San Francisco or at the Whole Foods grocery store on Miller Avenue in Mill Valley, California, b) every two months half gallon containers of DGIC's Dreyer's "All Natural Flavors" Chocolate and Rocky Road Ice Cream at the Safeway on Market Street in San Francisco and at the Rite Aid store on Blithedale Avenue in Mill Valley, California, and c) other of DGIC's Ice

FIRST AMENDED CONSOLIDATED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 3:11-cv-02910-EMC

Cream products.[2]  While Ms. Astiana was an Oregon resident, she purchased on average: a) every 3 to 4 weeks in 2007, 2008 and 2010, pints and single serving sized containers of DGIC's Häagen-Dazs "All Natural" Chocolate and Chocolate Peanut Butter Ice Cream at stores in Klamath Falls near her residence in Oregon, b) every two months half gallon containers of DGIC's Dreyer's "All Natural Flavors" Chocolate and Rocky Road Ice Cream at stores in Bend, Oregon and Klamath Falls, Oregon, c) as well as other of DGIC's "All Natural Flavors" Ice Cream products at stores in Klamath Falls, Oregon.

8.    Based on the "All Natural" and "All Natural Flavors" representations on DGIC's Ice Cream products' labels, Ms. Astiana believed the "All Natural" and "All Natural Flavors" DGIC Ice Cream she purchased was all natural and contained only natural flavors, and relied on these representations in making her purchases.  However, the DGIC Ice Cream Ms. Astiana purchased contained synthetic and artificial ingredients (including artificial flavors).  While touting the products as being "All Natural" and "All Natural Flavors," the labels that Ms. Astiana relied on did not disclose that synthetic and artificial ingredients and flavors were used in the products.  Ms. Astiana not only purchased DGIC's "All Natural" and "All Natural Flavors" Ice Cream because the labels said they were "All Natural" and "All Natural Flavors," but she paid more money for DGIC's Ice Cream she purchased than she would have had to pay for other similar products that were not all natural in that they contained synthetic or artificial ingredients and flavors.  Had Ms. Astiana known the truth that DGIC's "All Natural" and "All Natural Flavors" Ice Cream were not as represented and warranted, she would not have purchased DGIC's Ice Cream, but would have purchased other brands that were truly all natural or, if one was not available, would have purchased other non-natural products that were less expensive than DGIC's "All Natural" and "All Natural Flavors" Ice Cream.  Ms. Astiana did not receive the "All Natural" or "All Natural Flavors" Ice Cream products she bargained for when she purchased DGIC's Ice Cream, and has lost money as a result in the form of paying a premium for DGIC's products because they were purportedly "All Natural" and "All Natural Flavors" rather than paying the lesser amounts for non-natural alternatives.

---

[2]   The other Ice Cream products include one or more flavors of DGIC's Dreyer's/Edy's brands labeled as "All Natural Favors."

5

FIRST AMENDED CONSOLIDATED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 3:11-cv-02910-EMC

9.      Plaintiff Pamela Rutledge-Muhs is a resident of San Bernardino County, California. Ms. Rutledge-Muhs is, and throughout the entire class period asserted herein has been, very concerned about and tries to avoid consuming foods that are not natural, such as foods using synthetic or artificial chemical ingredients.  For this reason, Ms. Rutledge-Muhs is willing to and has paid a premium for foods that are all natural and has refrained from buying their counterparts that were not all natural.  While Ms. Rutledge-Muhs was a California resident, she purchased, on average, two cartons of DGIC's Dreyer's "All Natural Flavors" Mint Chocolate Chip ice cream every other month at the Stater Bros. Markets store located in San Bernardino, California.  Based on the "All Natural Flavors" representation on DGIC's Ice Cream label, Ms. Rutledge-Muhs believed the "All Natural Flavors" DGIC Ice Cream she purchased was all natural and contained only natural flavors, and relied on this representation in making her purchases.  However, the DGIC Ice Cream Ms. Rutledge-Muhs purchased contained synthetic and artificial ingredients and flavors.  While touting the product as being "All Natural Flavors," the labels that Ms. Rutledge-Muhs relied on did not disclose that synthetic and artificial ingredients and flavors were used in the product.  Ms. Rutledge-Muhs not only purchased DGIC's "All Natural Flavors" Ice Cream because the labels said it was one of DGIC's "All Natural Flavors," but she paid more money for DGIC's Ice Cream she purchased than she would have had to pay for other similar products that were not all natural in that they contained synthetic or artificial ingredients and flavors.  Had Ms. Rutledge-Muhs known the truth that DGIC's "All Natural Flavors" Ice Cream was not as represented and warranted, she would not have purchased DGIC's Ice Cream, but would have purchased other brands that were truly all natural or, if one was not available, would have purchased other non-natural products that were less expensive than DGIC's "All Natural Flavors" Ice Cream.  Ms. Rutledge-Muhs did not receive the "All Natural Flavors" Ice Cream products she bargained for when she purchased DGIC's Ice Cream, and has lost money as a result in the form of paying a premium for DGIC's product because it was purportedly an "All Natural Flavor" rather than paying the lesser amount for non-natural alternatives.

10.      Plaintiff Jay Woolwine is a resident of San Bernardino County, California.  Mr. Woolwine is, and throughout the entire class period asserted herein has been, very concerned about

and tries to avoid consuming foods that are not natural, such as foods using synthetic or artificial chemical ingredients.  For this reason, Mr. Woolwine is willing to and has paid a premium for foods that are all natural and has refrained from buying their counterparts that were not all natural.  While Mr. Woolwine was a California resident, he purchased, on average, one carton of DGIC's Dreyer's "All Natural Flavors" Chocolate Peanut Butter Cup ice cream every month at the Vons and the Stater Bros. Markets stores located in Big Bear City and Big Bear Lake, California.  Based on the "All Natural Flavors" representation on DGIC's Ice Cream label, Mr. Woolwine believed the "All Natural Flavors" DGIC Ice Cream he purchased was all natural and contained only natural flavors, and relied on this representation in making his purchases.  However, the DGIC Ice Cream Mr. Woolwine purchased contained synthetic and artificial ingredients and flavors.  While touting the product as being "All Natural Flavors," the labels that Mr. Woolwine relied on did not disclose that synthetic and artificial ingredients and flavors were used in the product.  Mr. Woolwine not only purchased DGIC's "All Natural Flavors" Ice Cream because the labels said it was one of DGIC's "All Natural Flavors," but he paid more money for DGIC's Ice Cream he purchased than he would have had to pay for other similar products that were not all natural in that they contained synthetic or artificial ingredients and flavors.  Had Mr. Woolwine known the truth that DGIC's "All Natural Flavors" Ice Cream was not as represented and warranted, he would not have purchased DGIC's Ice Cream, but would have purchased other brands that were truly all natural or, if one was not available, would have purchased other non-natural products that were less expensive than DGIC's "All Natural Flavors" Ice Cream.  Mr. Woolwine did not receive the "All Natural Flavors" Ice Cream products he bargained for when he purchased DGIC's Ice Cream, and has lost money as a result in the form of paying a premium for DGIC's product because it was purportedly an "All Natural Flavor" rather than paying the lesser amount for non-natural alternatives.

11.     The Dreyer's Grand Ice Cream business was founded in 1928 as a partnership between William Dreyer and Joseph Edy.  Defendant Dreyer's Grand Ice Cream, Inc., successor to the original business, was incorporated in California in 1977 and reincorporated in Delaware in 1985.  DGIC is the leading ice cream producer in the United States and currently maintains its headquarters at 5929 College Avenue, Oakland, California 94618.  In 2002, Dreyer's Grand Ice

7

FIRST AMENDED CONSOLIDATED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 3:11-cv-02910-EMC

Cream Holdings, Inc. (DGICH) was incorporated in Delaware, and it became a publicly traded company upon the merger of DGIC and Nestlé Ice Cream Co., LLC (NICC) in 2003.  DGICH also currently maintains its headquarters at 5929 College Avenue, Oakland, California 94618.  In addition, DGIC owns its largest manufacturing and distribution facility in Bakersfield, California; owns a manufacturing plant with an adjoining cold storage warehouse in Tulare, California; owns a cold storage warehouse facility located in the City of Industry, California; and leased an ice cream manufacturing plant with an adjoining cold storage warehouse located in the City of Commerce, California.  DGIC is an affiliate of Nestlé USA, which is owned by Nestlé S.A. of Vevey, Switzerland, the world's largest food company.  Nestlé USA currently maintains its headquarters at 800 North Brand Blvd., Glendale, California, 91203.  In 2010, Nestlé USA had sales of $10.4 billion.

12.     DGIC and its subsidiaries manufacture and distribute a full spectrum of ice cream products and frozen snacks.  From its incorporation in 1977 to the present day, DGIC claims to produce a variety of premium ice cream products made with all natural ingredients and all natural flavors.  DGIC currently manufactures and distributes premium products under the Dreyer's brand name generally in the Western United States and Texas and under the Edy's brand name generally east of the Rocky Mountains.  DGIC also produces and distributes the super premium line of Häagen-Daz products in the United States.  The Häagen-Daz brand name, owned by General Mills, is licensed to Nestlé in the United States.  DGIC's products are sold and distributed nationwide in grocery stores, convenience stores, club stores, ice cream parlors, restaurants, hotels and other venues.

### JURISDICTION AND VENUE

13.     Jurisdiction of this Court is proper under 28 U.S.C. §1332(d)(2).  Diversity jurisdiction exists as Representative Plaintiffs Astiana, Rutledge-Muhs and Woolwine are California residents, residing in Mill Valley and San Bernardino County, California, with the products at issue being purchased by them in California and in Oregon.  DGIC is incorporated in Delaware and its principle place of business is Oakland, California.  The nationwide class ("Class") consists of

citizens and residents of states across the country.[3]  The amount in controversy exceeds $5,000,000 for Representative Plaintiffs and Class members collectively, exclusive of interest and costs, by virtue of the combined purchase prices paid by Plaintiffs and the Class, and the profits reaped by DGIC from its transactions with Plaintiffs and the Class, as a direct and proximate result of the wrongful conduct alleged herein, and by virtue of the injunctive and equitable relief sought.

14.     Venue is proper within this judicial district pursuant to 28 U.S.C. §1391 because a substantial portion of the underlying transactions and events complained of herein occurred and affected persons and entities are in this judicial district, and DGIC has received substantial compensation from such transactions and business activity in this judicial district, including as the result of purchases of the DGIC's "All Natural" and "All Natural Flavors" Ice Cream from retail locations herein.  Further, DGIC maintains its principle place of business in this judicial district, and therefore inhabits and/or may be found in this judicial district, and the interstate trade and commerce described herein is and has been carried out in part within this judicial district.

## BACKGROUND

15.     Webster's New World Dictionary defines "natural" as "produced or existing in nature; not artificial or manufactured."[4]  "All" is defined as "the whole extent or quantity of."[5]  Thus, the combined use of "All Natural" on the labels of DGIC's Ice Cream indicates to the average reasonable person that "the whole extent or quantity of" the ingredients contained in the ice cream are "produced or existing in nature; not artificial or manufactured."

16.     The same is true for DGIC's use of the term "All Natural Flavors" on DGIC's Ice Cream.  In common parlance, the use of the term "flavor" in relation to ice cream refers to the ingredient(s) of the ice cream.  Indeed, in the United States people commonly, if not exclusively,

---

[3]  If a national class is not certified, Plaintiffs reserve the right, in the alternative, to seek class certification of a California or multi-state class against DGIC for those counts for which a nationwide Class has been asserted.

[4] *Webster's New World Dictionary of the American Language*, 2nd College Ed. (Simon & Schuster, 1984), "natural," definition no. 2 at p.947.

[5] *Id.*, "all," definition no. 1 at p. 36

FIRST AMENDED CONSOLIDATED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 3:11-cv-02910-EMC

1   refer to a particular variety of ice cream based on its ingredients as being the ice cream's "flavor"

2   because it is the ingredients that that give a particular variety of ice cream its taste.  Moreover, DGIC

3   markets its Dreyer's, Edy's and Häagen-Dazs varieties of ice cream as "flavors" on the respective

4   websites for Dreyer's, Edy's and Häagen-Dazs brands.[6]  Thus, the combined use of "All Natural

5   Flavors" on the labels of DGIC's Ice Cream indicates to the average reasonable person that "the

6   whole extent or quantity of" the ingredients contained in the ice cream are "produced or existing in

7   nature; not artificial or manufactured."

8          17.     DGIC thus made a far broader and more encompassing representation by labeling its

9   Ice Cream products as "All Natural" or "All Natural Flavors" as opposed to simply saying they were

10  "natural."  While FDA have established a policy addressing the meaning of "natural" when used in

11  food labeling, no FDA regulations have specifically addressed the broader representation made by

12  labeling a product as "all natural," and the only policy to address "all natural" labeling requires

13  disclosure of any synthetic or artificial ingredients so as to indicate they are not natural.  However, it

14  is noteworthy that although the broader "All Natural" and "All Natural Flavors" representations

15  were made on DGIC's Ice Cream labels, the presence of synthetic or artificial ingredients in them

16  also violates the federal regulators' policy for the narrower "natural" representation.

17         18.     The United States Food and Drug Administration ("FDA") – which has responsibility

18  for regulating the labeling of the food products at issue in this case as well as many other foods – has

19  not promulgated regulations defining the terms "natural" or "all natural."  However, the agency has

20  established a policy defining the outer boundaries of the use of the term "natural" by clarifying that a

21  product is ***not*** natural if it contains color additives, artificial flavors, or synthetic substances.

22

23

---

24  [6]  DGIC's Dreyer's, Edy's and Häagen-Dazs websites contains a "flavor finder" in which a person
25  can obtain information on each of DGIC's ice cream varieties.  *See* DGIC's "Flavor Finder®"
    showing each of DGIC's varieties of ice cream on its Dreyer's website at
26  http://dreyers.com/flavorfinder/index.asp?b=104&filled=1; its Edy's website at
27  http://edys.com/flavorfinder/index.asp?b=105&filled=1; and its Häagen-Dazs website at
    http://www.Häagendazs.com/products/default.aspx.  A copy of each of DGIC's flavor finders from
28  its websites has been provided as Exhibit 1.

10

FIRST AMENDED CONSOLIDATED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 3:11-cv-02910-EMC

http://www.fda.gov/ForConsumers/ConsumerUpdates/ucm094536.htm[7] and

http://www.fda.gov/AboutFDA/Transparency/Basics/ucm214868.htm.[8]  Specifically, the FDA

states: "the agency will maintain its policy (Ref. 32) regarding the use of 'natural,' as meaning that

nothing artificial or synthetic (including all color additives regardless of source) has been included

in, or has been added to, a food that would not normally be expected to be in the food."  58 Fed.

Reg. 2302, 2407 (Jan. 6, 2003).  Although this definition is not a regulation, it is the "most definitive

statement of the agency's view." [9]

19.     Courts and trade members have requested that the FDA provide a regulatory

definition of "natural," however, the FDA has declined to do so because the time required to conduct

a public hearing "would take two to three years to complete," and the agency's resources are

currently devoted to other, higher priorities."[10]

20.     Similar to the FDA, the United States Department of Agriculture ("USDA"), which

regulates the labeling of meat and poultry, has also set limits on the use of the term "natural."   The

USDA's Food Safety and Inspection Service states that the term "natural" may be used on labeling

of meat and poultry products so long as "(1) the product does not contain any artificial flavor or

flavorings, color ingredient, or chemical preservative … or any other artificial or synthetic

ingredient, and (2) the product and its ingredients are not more than minimally processed."[11]

21.     According to the USDA, "[m]inimal processing may include: (a) those traditional

processes used to make food edible or to preserve it or to make it safe for human consumption, e.g.,

---

[7] Attached hereto as Exhibit 2.

[8] Attached hereto as Exhibit 3.

[9] *See* letter from Michael M. Landa, Acting Director, Center for Food Safety and Applied Nutrition to Judge Jerome B. Simandle dated September 16, 2010, filed in *Ries et al., v. Hornell Brewing Co., Inc.*, Case No. 10-1139 (N.D. Cal.), Docket No. 54, attached hereto as Exhibit 4.

[10] *See Id.* (Letter to Judge Simandle).

[11] *See* the United States Department of Agriculture Food Standards and Labeling Policy book available at http://www.fsis.usda.gov/OPPDE/larc/Policies/Labeling_Policy_Book_082005.pdf (last visited March 19, 2012), excerpts also attached hereto as Exhibit 5 at p. 5.

FIRST AMENDED CONSOLIDATED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 3:11-cv-02910-EMC

smoking, roasting, freezing, drying, and fermenting, or (b) those physical processes which do not fundamentally alter the raw product and/or which only separate a whole, intact food into component parts, e.g., grinding meat, separating eggs into albumen and yolk, and pressing fruits to produce juices."[12] However, "[r]elatively severe processes, e.g., solvent extraction, acid hydrolysis, and chemical bleaching would clearly be considered more than minimal processing."[13]

22.     Under the USDA's guidelines, if a product is severely processed, the product can be labeled "All Natural" if the ingredient would not significantly change the character of the product to the point that it could no longer be considered a natural product.  However, even in that case, ***"the natural claim must be qualified to clearly and conspicuously identify the ingredient, e.g., all natural or all natural ingredients except dextrose, modified food starch, etc."***[14] (emphasis added).

23.     The terms "synthetic" and "artificial" closely resemble each other, and in common parlance are taken as synonymous.  The scientific community defines "artificial" as something not found in nature, whereas a "synthetic" is defined as something man-made, whether it merely mimics nature or is not found in nature.[15]  In the scientific community, "synthetic" includes substances that are also "artificial," but a synthetic substance also can be artificial or non-artificial.[16]

24.     However, the common understanding of "artificial" resembles the scientific community's definition of "synthetic."  Indeed, Webster's New World Dictionary defines "artificial" as "anything made by human work, especially if in intimation of something natural," whereas

---

[12] *Id.*

[13] *Id*.

[14] *Id.*

[15] Peter E. Nielsen, *Natural-synthetic-artificial!*, Artificial DNA: PNA & XNA, Volume 1, Issue 1 (July/August/September 2010), available at http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3109441/ and attached hereto as Exhibit 6.

[16] *Id.*

FIRST AMENDED CONSOLIDATED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 3:11-cv-02910-EMC

"synthetic" is defined as "a substance that is produced by chemical synthesis and is used as a substitute for a natural substance which it resembles."[17]

25.      Congress has defined "synthetic" to mean "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes." 7 U.S.C. §6502(21).  *See also* 7 C.F.R. §205.2 (defining, in USDA's National Organic Program regulations, a "nonsynthetic" as "a substance that is derived from mineral, plant, or animal matter and does not undergo a synthetic process as defined in section 6502(21) of the Act (7 U.S.C. §6502(21)").

26.      In addition to defining "synthetic," federal authorities have also expressly recognized numerous chemicals as synthetics, as discussed in the following paragraphs.

## DGIC'S SYNTHETIC AND ARTIFICIAL INGREDIENTS AND FLAVORS

27.      **Glycerin.**  Glycerin (a/k/a Glycerine or Glycerol) is a synthetic alcohol that rarely exists in its free form in nature.  It is used in food products as a sweetener, as a preservative, or as a thickening agent.  Glycerin is commonly manufactured for commercial use through the hydrolysis of fats and oils during the manufacture of soap products, or synthesized from the hydrogenolysis of carbohydrates or from petrochemicals.   Glycerin can, alternatively, be produced through a fermentation process using yeast; however, due to the resulting low yields and presence of byproducts formed through the fermentation process, commercial manufacturers use the synthetic processes above to produce Glycerin rather than the more natural fermentation method.  Commercial glycerin used in food products manufactured by either of the two commonly used methods is a recognized synthetic product.  21 C.F.R. §172.866; 7 C.F.R. §205.605(b); 7 C.F.R. §205.603; 21 C.F.R. §178.3500.  It is believed, and therefore averred, that the Glycerin in DGIC's Ice Cream is synthesized using one or both of the two commonly used manufactured methods – hydrolysis of fats and oils or hydrogenolysis of carbohydrates or propylene – and is not derived naturally.

---

[17] Webster's New World Dictionary of the American Language, 2nd College Ed. (Simon & Schuster, 1984), "artificial," definition SYN at p.79.

FIRST AMENDED CONSOLIDATED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 3:11-cv-02910-EMC

28. **Mono and Diglycerides.** Glycerides, also called acylglycerols, are ester forms of glycerol. Mono and Diglycerides are made from fatty acids by heating oil (often palm oil) for up to three hours at a high temperature and passing hydrogen gas through it in the presence of a metal catalyst. Mono and Diglycerides are recognized synthetic chemicals by federal regulation (7 CFR §205.605(b)) and are most often added to foods as an emulsifier, but can also be added to baked goods, low-fat spreads, peanut butter and ice creams to control texture.

29. **Potassium Carbonate**. Unsweetened baking cocoa is typically rendered in one of two forms: natural un-alkalized cocoa or a processed version known as alkalized or Dutch-processed cocoa. Un-alkalized cocoa is light in color and somewhat acidic with a strong chocolate flavor. Alkalized cocoa is processed with an alkali to neutralize its acidity making it slightly milder in taste, with a deeper and warmer color than un-alkalized cocoa. In order for cocoa to be used in its alkalized form, a "Dutching" or alkalization takes place during the processing of the cocoa beans. During this process an alkali – usually either Potassium Carbonate or sodium carbonate[18] – is suspended in water to neutralize acids and alter the pH level of the beans. This alkalizing agent darkens the cocoa, makes it milder in flavor and increases its dispersability. The FDA requires that "when any optional alkali ingredient" is used, "the name of the food shall be accompanied by the statement 'Processed with alkali', or 'Processed with ------', the blank being filled in with the common or usual name of the specific alkali ingredient used in the food." 21 C.F.R. §163.112(c)(1). DCIG's Ice Creams that list the ingredient as Cocoa Processed with Alkali without identifying the alkalizing agent are processed with potassium carbonate, a recognized synthetic ingredient by regulation.[19] 7 C.F.R. §205.605(b). Significantly, the other commonly used alkali in making

---

[18] Besides the commonly used Potassium Carbonate and sodium carbonate, there are other less commonly used alkali substances approved for use in processing cocoa not listed herein that are identified at 21 C.F.R. §163.112(b)(1). Significantly, sodium carbonate and sodium bicarbonate appear to be the only "safe and suitable" non-synthetic alkali substances approved for use in alkalizing cocoa. *Id.* Compare 7 C.F.R. §205.605.

[19] To the extent DGIC may claim some of its products may have to some degree used alkalized cocoa processed with one or more of these less commonly used alkali substances, it is believed and therefore averred by Plaintiffs that DGIC' Ice Cream did not contain alkalized cocoa processed with

14

FIRST AMENDED CONSOLIDATED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 3:11-cv-02910-EMC

alkalized cocoa – sodium carbonate – is a recognized non-synthetic, natural substance.  7 C.F.R. §205.605(a).  Alkalized cocoa imparts flavor and is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof, and is thus an artificial flavor.

30.     **Propylene Glycol Monostearate**.  Propylene Glycol Monostearate is manufactured by combining stearic acid and propylene glycol.  Propylene glycol, a/k/a 1,2-proanediol, is commonly used as a commercial antifreeze, is considered a flavor agent in food and is recognized by federal regulation as not occurring naturally. 21 C.F.R. 184.1666.  Propylene glycol monostearate in large doses has been reported to cause kidney damage in several species and toe deformities in chicks. *See* Database of Select Committee on GRAS Substances (SCOGS) Reviews, Propylene Glycol Monostearate at http://www.accessdata.fda.gov/scripts/fcn/fcnDetailNavigation.cfm?rpt=scogsListing&id=264. Propylene Glycol Monostearate imparts flavor and is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof, and is thus an artificial flavor.

31.     **Tetrasodium Pyrophosphate**.  Tetrasodium Pyrophosphate (TSPP) is a recognized synthetic chemical by federal regulation.  *See* 7 C.F.R. §205.605(b).  It is often used in dairy products to suspend cocoa, maintain protein dispersion, or to bind iron.

32.     **Xanthan gum**.  Xanthan Gum is a polysaccharide derived from the fermentation of sugars by the *Xanthomonas campesris* bacterium and purification using isopropyl alcohol.  Xanthan Gum is listed as a synthetic ingredient by federal regulation and is typically used as a thickening or stabilizing agent in beverages, and as an emulsifier in salad dressings.  7 C.F.R. §205.605(b).

33.     As explained in the next section of this First Amended Consolidated Complaint, DGIC's "All Natural" and "All Natural Flavors" Ice Creams have, throughout the Class Period, used one or more of the aforementioned synthetic and artificial ingredients, but its labeling never

---

one of the non-synthetic alkali substances, and instead contained alkalized cocoa processed with one of the synthetic alkali substances.

FIRST AMENDED CONSOLIDATED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 3:11-cv-02910-EMC

disclosed they were synthetic ingredients despite the "All Natural" representation on the food products' labels.[20]

## DGIC'S USE OF NON-NATURAL INGREDIENTS

34.    American consumers are health conscious and look for wholesome, natural foods to keep a healthy diet, so they frequently take nutrition information into consideration in selecting and purchasing food items.  Product package labels, including nutrition labels, are vehicles that convey nutrition information to consumers that they can and do use to make purchasing decisions.  As noted by FDA commissioner Margaret Hamburg during an October 2009 media briefing, "[s]tudies show that consumers trust and believe the nutrition facts information and that many consumers use it to help them build a healthy diet."

35.    The prevalence of claims about nutritional content on food packaging in the United States has increased in recent years as manufacturers have sought to provide consumers with nutrition information and thereby influence their purchasing decisions.  The results of a recent FDA Food Label and Package Survey found that approximately 4.8 percent of food products sold in the United States had either a health claim or a qualified health claim on the food package, and that more than half (53.2%) of the food products reviewed had nutrient content claims on the packaging.

36.    American consumers are increasingly seeking "All Natural" ingredients in the foods they purchase.  Although this segment of the health food market was once a niche market, natural foods are increasingly becoming part of the mainstream food landscape.  According to *Natural Foods Merchandiser*, a leading information provider for the natural, organic and healthy products industry, the natural food industry enjoyed over $81 billion in total revenue in 2010, and grew over

---

[20]  In addition to the synthetic and artificial ingredients identified throughout this First Amended Consolidated Complaint, DGIC sold ice cream products that included the following ingredients which Plaintiffs suspect are also artificial and/or synthetic, but not have been expressly recognized as such by federal regulations:  Artificial sweeteners, ascorbic acid, blue 1, cellulose gum, invert sugar, maltodextrin, modified starches, partially hydrogenated oils, polydextrose, polysorbate 80, retinyl palmitate, sorbitan monostearate, bleached soy lecithin and yellow 5.  In the event discovery of this action reveals that these additional ingredients in DGIC's Ice Cream identified herein are synthetic or artificial, or that additional DGIC "All Natural" or "All Natural Flavors" ice cream products contain synthetic or artificial ingredients, Plaintiffs reserve the right to amend the this First Amended Consolidated Complaint based on such discovery.

FIRST AMENDED CONSOLIDATED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 3:11-cv-02910-EMC

7% in 2009.[21]   The market for all natural and organic foods grew 9% in 2010 to $39 billion, and 2010 sales were 63% higher than sales in 2005.[22]   Consumer demand for all natural and organic foods is expected to grow 103% between 2010 and 2015 with annual sales exceeding $78 billion in 2015.[23]

37.     Consumers desire "All Natural" ingredients in food products for a myriad of reasons, including wanting to live a healthier lifestyle, perceived benefits in avoiding disease and other chronic conditions, as well as to increase weight loss and avoid chemical additives in their food. The "All Natural" branding also appears to appeal to individual consumers' interest in supporting sustainable living and environmentally sensitive food consumption, helping the environment, assisting local farmers, assisting factory workers who would otherwise be exposed to synthetic and hazardous substances, and financially supporting the companies that share these values.  As a result, consumers are willing to pay a higher price for "all natural" and organic foods and beverages.

38.     According to an article in *The Economist*, "natural" products are a fast growing market because of the power of "mother nature" in the hands of marketers, which conjures up images of heart-warming wholesomeness and rustic simplicity.  According to this publication, a chief selling point of the organic-food industry is that no man-made chemicals are used in the production process.[24]

39.     In order to capture and tap into this growing market and the hunger of consumers for the perceived healthier, chemical free benefits of "all natural" foods, DGIC labels and advertises its Ice Creams as being "All Natural" or "All Natural Flavors."

---

[21] *See Natural and Organic Products Industry Sales Hit $81 Billion*, Natural Foods Merchandiser, (June 1, 2011), available at: http://www.prnewswire.com/news-releases/natural-and-organic-products-industry-sales-hit-81-billion-122958763.html and attached hereto as Exhibit 7.

[22] http://www.marketwire.com/press-release/natural-and-organic-food-and-beverage-market-to-double-by-2015-1525854.htm (last visited March 2, 2012) attached hereto as Exhibit 8.

[23] *Id.*

[24] *Chemical Blessings: What Rousseau got Wrong*, The Economist, (February 4, 2008) available at: http://www.economist.com/node/10633398 and attached hereto as Exhibit 9.

40.     A reasonable consumer's understanding of the term "natural" comports with federal regulators and common meaning.  That is, a reasonable consumer understands the term "natural" to mean that none of the ingredients are synthetic and none of the ingredients are artificial.  When the term "natural" is broadened to "All Natural" as DGIC did, there is no question that a reasonable consumer understands the term "All Natural" to mean that none of the ingredients are synthetic and none of the ingredients are artificial.  In other words, by claiming that the DGIC's Häagen-Dazs Ice Cream is "All Natural," DGIC raised the bar and both warranted and represented to consumers that these products contain only natural ingredients, and that none of the components of these products is artificial or synthetic.

41.     This is equally true with DGIC's Dreyer's and Edy's Ice Cream labeled as being "All Natural Flavors" since a reasonable consumer understands the use of the term "flavor" in relation to ice cream to be referring to the entirety of the ice cream product (i.e., all of the ingredients of the ice cream).[25]  Thus, DGIC's use of "All Natural Flavors" on its Ice Cream labels indicates to a reasonable consumer that none of the ingredients are synthetic and none of the ingredients are artificial.  In other words, by claiming the DGIC's Ice Cream is an "All Natural Flavors," DGIC raised the bar and both warranted and represented to consumers that these products contain only natural ingredients, and that none of the components of these products is artificial or synthetic.

42.     Consumers lack the meaningful ability to test or independently ascertain the truthfulness of food labeling claims such as "all natural" or "all natural flavors," especially at the point of sale.  Consumers would not know the true nature of the ingredients merely by reading the ingredient label; its discovery requires investigation beyond the grocery store and knowledge of food chemistry beyond that of the average consumer.  Thus, reasonable consumers must and do rely on food companies such as DGIC to honestly report the nature of a food's ingredients, and food companies such as DGIC intend and know that consumers rely upon food labeling statements in making their purchasing decisions.  Such reliance by consumers is also eminently reasonable, since

---

[25] Indeed, DGIC refers to all of its ice cream products as "flavors."  *See* paragraph 16, *supra* and Exhibit attached hereto.

FIRST AMENDED CONSOLIDATED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 3:11-cv-02910-EMC

1   food companies are prohibited from making false or misleading statements on their products' labels

2   under federal law.

3        43.    While DGIC labeled and advertised its Ice Creams as "All Natural" and "All Natural

4   Flavors," the products labeled as "All Natural" and "All Natural Flavors" contained synthetic or

5   artificial ingredients, including but not limited to the ingredients identified above in paragraphs 26

6   through 32.  While the Ice Creams' labels did disclose that these products contained many of the

7   synthetic and artificial substances, the labels did not disclose that these ingredients were synthetic or

8   artificial, and in some cases did not identify that these components existed in the products at all (e.g.,

9   Potassium Carbonate).  These omissions are significant and material given the Ice Creams' "All

10  Natural" and "All Natural Flavors" representations on the Ice Cream products' labels.  Based on the

11  "All Natural" and "All Natural Flavors" representations, one would normally expect that none of the

12  ingredients in the Ice Creams would be synthetic or artificial.

13       44.    Similarly, for DGIC's Dreyer's and Edy's products labeled as being "All Natural

14  Flavors," even if "All Natural Flavors" could be read as a limited representation about the products'

15  flavors (i.e., the ingredients that impart a taste or aroma into the products), at least thirty six (36) of

16  DGIC's "All Natural Flavors" Ice Creams contained synthetic and artificial flavor ingredients,

17  including Propylene Glycol Monostearate and alkalized cocoa processed with Potassium Carbonate.

18  *See* paragraphs 29-30, *supra*.  While the Ice Creams' labels did disclose that these products

19  contained Propylene Glycol Monostearate and cocoa processed with alkali, the labels did not

20  disclose that these ingredients were synthetic and artificial flavors.  These omissions are significant

21  and material given the Ice Creams' "All Natural Flavors" representations on the products' labels.

22  Based on the "All Natural Flavors" representation, one would certainly not normally expect that any

23  of the flavors in the Ice Creams would be synthetic or artificial.

24       45.    DGIC knew that it made the "All Natural" and "All Natural Flavors" representations

25  in regard to its Ice Creams, as one of these statements appears on each one of the Ice Cream

26  products' labels.  DGIC also knew that these claims were false and misleading because it knew what

27  ingredients were contained in each of the Ice Cream products and had the ability to know, and did

28  know, that many of the ingredients in the products are artificial and/or synthetic, and that Propylene

FIRST AMENDED CONSOLIDATED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case
No. 3:11-cv-02910-EMC

1  Glycol Monostearate and alkalized cocoa processed with Potassium Carbonate are artificial and

2  synthetic flavors.   Indeed, all of the synthetic and artificial ingredients at issue in the Ice Cream

3  labeled "All Natural" or "All Natural Flavors" are recognized as synthetic or artificial chemicals by

4  federal regulations.[26]

5       46.    DGIC labeled its Häagen-Dazs flavors as being "All Natural Ice Cream," thereby

6  representing that these Ice Cream products – including the ingredients which make up the ice

7  cream's base as well as the other ingredients which make up the product's characterizing flavor – are

8  entirely natural.  However, according to the ingredients listed on DGIC's Häagen-Dazs "All

9  Natural" ice cream labels, and in direct contrast to DGIC's promises on those labels, the flavors

10  labeled as "All Natural Ice Cream" each contain the artificial flavoring alkalized cocoa processed

11  with Potassium Carbonate, as follows:[27]

12          a.    Banana Split Ice Cream

13          b.    Caramel Cone Ice Cream

14          c.    Chocolate Ice Cream

15          d.    Chocolate Chip Cookie Dough Ice Cream

16          e.    Chocolate Chocolate Chip Ice Cream

17          f.    Chocolate & Dark Chocolate Ice Cream Bars

18          g.    Chocolate Peanut Butter Ice Cream

19          h.    Cookies & Cream Ice Cream

20

21  [26] A table showing DGIC's Dreyer's. Edy's and Häagen-Dazs Ice Creams and the artificial and
synthetic ingredients included in each flavor is attached hereto as Exhibit 10.  A collection of
22  DGIC's Häagen-Dazs "All Natural" ice cream flavors and their corresponding ingredients is
attached hereto as Exhibit 11.
23

24  [27] In addition to the DGIC's Häagen-Dazs flavors identified herein, DGIC's "All Natural" Häagen-
Dazs Amaretto Almond Crunch ice cream, Dulce de Leche ice cream, Coffee & Almond Crunch ice
25  cream bars, Vanilla & Almonds ice cream bars, Vanilla & Dark Chocolate ice cream bars and
Vanilla & Milk Chocolate ice cream bars contain soy lecithin.  Lecithin, when bleached, is synthetic
26  pursuant to federal regulations.  *See* 7 C.F.R. §205.605(b).  Plaintiffs reserve the right to amend this
First Amended Consolidated Complaint if discovery shows that DGIC used bleached lecithin in its
27  Ice Creams to add claims based on these products containing a synthetic ingredient despite being
labeled as "All Natural."
28

FIRST AMENDED CONSOLIDATED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case
No. 3:11-cv-02910-EMC

1

     i.     Dark Chocolate Ice Cream

2

     j.     Five Milk Chocolate Ice Cream

3

     k.     Java Chip Ice Cream

4

     l.     Mint Chip Ice Cream

5

     m.     Peppermint Bark Ice Cream

6

     n.     Rocky Road Ice Cream

7

     o.     White Chocolate Raspberry Truffle Ice Cream

8

     47.     DGIC's Dreyer's and Edy's ice cream flavors and the labeling of said flavors are

9

virtually identical, with the difference being the brand name (Dreyer's vs. Edy's).  The Dreyer's

10

brand is generally marketed in Texas and west of the Rocky Mountains, while the Edy's brand is

11

generally marketed east of the Rocky Mountains.[28]  According to the ingredients listed on DGIC's

12

Dreyer's/Edy's "All Natural Flavors" Ice Cream labels, and in direct contrast to DGIC's promises on

13

those labels, the following flavors labeled as "All Natural Flavors" each contain between 1 and 5

14

recognized artificial and synthetic ingredients identified herein, as follows:

15

16

     a.     Slow Churned Rich & Creamy No Sugar Added Butter Pecan Light Ice Cream:  Glycerin, Mono and Diglycerides and Xanthan Gum.

17

     b.     Slow Churned Rich & Creamy No Sugar Added French Vanilla Light Ice Cream:  Glycerin, Mono and Diglycerides, Propylene Glycol Monostearate and Xanthan Gum.

18

19

     c.     Slow Churned Rich & Creamy No Sugar Added Fudge Tracks Light Ice Cream:  Glycerin, Mono and Diglycerides and Potassium Carbonate.

20

     d.     Slow Churned Rich & Creamy No Sugar Added Mint Chocolate Chip Light Ice Cream:  Glycerin, Monoglycerides and Potassium Carbonate.

21

22

     e.     Slow Churned Rich & Creamy No Sugar Added Neapolitan Light Ice Cream:  Glycerin, Mono and Diglycerides, Potassium Carbonate, Propylene Glycol Monostearate and Xanthan Gum.

23

24

     f.     Slow Churned Rich & Creamy No Sugar Added Triple Chocolate Light Ice Cream:  Glycerin, Mono and Diglycerides, Potassium Carbonate and Xanthan Gum.

25

26

27

[28] Examples of Dreyer's/Edy's brands "All Natural Flavors" ice cream labels and their corresponding ingredients have been attached as Exhibit 12.

28

FIRST AMENDED CONSOLIDATED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 3:11-cv-02910-EMC

g.    Slow Churned Rich & Creamy No Sugar Added Vanilla Light Ice Cream: Glycerin, Monoglycerides, Propylene Glycol Monostearate and Xanthan Gum.

h.    Slow Churned Rich & Creamy No Sugar Added Vanilla Bean Light Ice Cream:  Glycerin and Mono and Diglycerides.

i.    Fun Flavors Butter Pecan Ice Cream:  Propylene Glycol Monostearate and Xanthan Gum.

j.    Fun Flavors Chocolate Peanut Butter Cup Ice Cream:  Monoglycerides, Potassium Carbonate and Propylene Glycol Monostearate.

k.    Fun Flavors Dulce de Leche Ice Cream:  Mono and Diglycerides, Propylene Glycol Monostearate and Xanthan Gum.

l.    Fun Flavors Mocha Almond Fudge Ice Cream:  Monoglycerides, Potassium Carbonate, Propylene Glycol Monostearate and Xanthan Gum.

m.    Fun Flavors Nestle Drumstick Ice Cream:  Monoglycerides, Potassium Carbonate, Propylene Glycol Monostearate and Xanthan Gum.

n.    Fun Flavors Triple Chocolate Peanut Butter Sundae Ice Cream: Monoglycerides, Potassium Carbonate, Propylene Glycol Monostearate and Xanthan Gum.

o.    Fun Flavors Espresso Chip Ice Cream:  Monoglycerides, Potassium Carbonate, Propylene Glycol Monostearate and Xanthan Gum.

p.    Slow Churned Rich & Creamy Butter Pecan Light Ice Cream: Monoglycerides, Propylene Glycol Monostearate and Xanthan Gum.

q.    Slow Churned Rich & Creamy Caramel Delight Light Ice Cream:  Mono and Diglycerides, Propylene Glycol Monostearate and Xanthan Gum.

r.    Slow Churned Rich & Creamy Chocolate Light Ice Cream:  Potassium Carbonate and Xanthan Gum.

s.    Slow Churned Rich & Creamy Chocolate Chip Light Ice Cream:  Potassium Carbonate.

t.    Slow Churned Rich & Creamy Cookie Dough Light Ice Cream: Monoglycerides, Potassium Carbonate, Propylene Glycol Monostearate and Xanthan Gum.

u.    Slow Churned Rich & Creamy Double Fudge Brownie Light Ice Cream: Potassium Carbonate, Propylene Glycol Monostearate and Xanthan Gum.

v.    Slow Churned Rich & Creamy Egg Nog Light Ice Cream:  Monoglycerides, Propylene Glycol Monostearate and Xanthan Gum.

w.    Slow Churned Rich & Creamy French Silk Light Ice Cream:  Potassium Carbonate and Xanthan Gum.

FIRST AMENDED CONSOLIDATED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 3:11-cv-02910-EMC

x.    Slow Churned Rich & Creamy Fudge Tracks Light Ice Cream: Monoglycerides, Potassium Carbonate, Propylene Glycol Monostearate and Xanthan Gum.

y.    Slow Churned Rich & Creamy Mint Chocolate Chip Light Ice Cream: Potassium Carbonate.

z.    Slow Churned Rich & Creamy Mocha Almond Fudge Light Ice Cream: Mono and Diglycerides and Potassium Carbonate.

aa.   Slow Churned Rich & Creamy Neapolitan Light Ice Cream:  Potassium Carbonate and Xanthan Gum.

bb.   Slow Churned Rich & Creamy Nestle Drumstick Light Ice Cream: Monoglycerides, Potassium Carbonate, Propylene Glycol Monostearate and Xanthan Gum.

cc.   Slow Churned Rich & Creamy Peanut Butter Cup Light Ice Cream: Monoglycerides, Potassium Carbonate, Propylene Glycol Monostearate and Xanthan Gum.

dd.   Slow Churned Rich & Creamy Pumpkin Light Ice Cream:  Mono and Diglycerides, Propylene Glycol Monostearate and Xanthan Gum.

ee.   Slow Churned Rich & Creamy Rocky Road Light Ice Cream: Monoglycerides, Potassium Carbonate, Propylene Glycol Monostearate, Tetrasodium Pyrophosphate and Xanthan Gum.

ff.   Slow Churned Rich & Creamy Triple Chocolate Peanut Butter Sundae Light Ice Cream:  Monoglycerides, Potassium Carbonate, Propylene Glycol Monostearate and Xanthan Gum.

gg.   Grand Chocolate Ice Cream:  Potassium Carbonate and Xanthan Gum.

hh.   Grand Chocolate Chip Ice Cream:  Potassium Carbonate and Xanthan Gum.

ii.   Grand Coffee Ice Cream:  Xanthan Gum.

jj.   Grand Double Vanilla Ice Cream:  Mono and Diglycerides.

kk.   Grand French Vanilla Ice Cream:  Xanthan Gum.

ll.   Grand Mint Chocolate Chip Ice Cream:  Potassium Carbonate and Xanthan Gum.

mm.   Grand Neapolitan Ice Cream:  Potassium Carbonate and Xanthan Gum.

nn.   Grand Real Strawberry Ice Cream:  Xanthan Gum.

oo.   Grand Rocky Road Ice Cream:  Potassium Carbonate and Xanthan Gum.

pp.   Grand Vanilla Ice Cream:  Xanthan Gum.

qq.   Grand Vanilla Bean Ice Cream:  Xanthan Gum.

---

23

rr.     Grand Vanilla Chocolate Ice Cream:  Potassium Carbonate and Xanthan Gum.

48.     The labeling of products as "All Natural" or "All Natural Flavors" carries implicit health benefits important to consumers – benefits that consumers are often willing to pay a premium for over comparable products that are not "natural."  DGIC has cultivated and reinforced a corporate image that has catered to this "natural" theme and has boldly emblazed the "All Natural" and "All Natural Flavors" claims on its Ice Cream products' labels, despite the fact that these products contain artificial and/or synthetic ingredients.

49.     DGIC has used the "All Natural" and "All Natural Flavors" labels to shape its Häagen-Dazs, Dreyer's and Edy's brands and sell its Ice Creams.  Yet, the existence of artificial and synthetic ingredients in the Ice Creams renders the use of the labels "All Natural" or "All Natural Flavors" false and misleading, and the existence of artificial and synthetic flavors in the Ice Creams renders the use of the label "All Natural Flavors" false and misleading.

## DGIC'S MISLEADING LABELING ALSO VIOLATES FEDERAL AND STATE LABELING LAWS

50.     In additional to DGIC's "All Natural" and "All Natural Flavors" labeling being false and misleading as described above, DGIC's labeling of its "All Natural" and "All Natural Flavors" is misleading in that, at the very least, it violates labeling laws for how ice cream must be labeled to identify whether the flavors in the ice cream product are natural or artificial.

51.     FDA regulations establish that "[t]he name of the food is 'ice cream'" and that for ice cream containing *no* artificial flavors, "the name on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., 'vanilla,' in letters not less than one-half the height of the letters used in the words 'ice cream.'"[29]  *See* 21 C.F.R. §135.110(f)(1) and (f)(2)(i).  In contrast, ice cream products containing artificial flavors must modify the name of the flavor on the principal display panel or panels with "flavored," "artificial" or "artificially flavored," depending on the amount of artificial flavors in the product.  *See* 21 C.F.R. §135.110(f)(2)(ii) and (iii).

---

[29] The ice cream regulations cited herein control how characterizing flavor statements may permissibly be made on the labels of ice cream products.

52.     All fifteen of DGIC's Häagen-Dazs ice cream products identified in paragraph 46 herein contain artificial chocolate flavor in the form of alkalized cocoa processed with Potassium Carbonate.  *See* paragraph 29, *supra*.  Yet, DGIC labeled its DGIC's Häagen-Dazs ice cream products simply using the common or usual name of the characterizing flavor together with the words "ice cream" falsely representing under 21 C.F.R. §135.110(f)(2)(i) that it has no artificial flavors.  DGIC reinforced this representation on its labels by adding the "All Natural" claim.  For example, DGIC's chocolate flavor ice cream is labeled "CHOCOLATE All Natural Ice Cream," despite containing cocoa processed with Potassium Carbonate.  *See* Exhibit 11.  This mislabeling of these DGIC's Häagen-Dazs ice cream products violate 21 C.F.R. §135.110(f)(2)(i), the Sherman Law §110100(a) and other applicable states' laws.  Moreover, these DGIC Häagen-Dazs ice cream products' labels did not include the "flavored," "artificial" or "artificially flavored" language as required by 21 C.F.R. §135.110(f)(2)(ii) and (iii).  DGIC's failure to include the required language to identify its Häagen-Dazs flavors as being artificial violates 21 C.F.R. §135.110(f)(2)(ii) and/or (iii), the Sherman Law §110100(a) and other applicable state laws.  In addition, DGIC's failure to include the required "flavored," "artificial" or "artificially flavored" language reinforces the false and misleading "All Natural" statement on Häagen-Dazs products in violation of 21 U.S.C. §343(a)(1), Sherman Law §110660 and other applicable state laws.

53.     Similarly, thirty six of DGIC's Dryer's/Edy's Ice Cream flavors, identified in paragraph 47 herein, labeled as "All Natural Flavors" contain the synthetic and artificial flavor Propylene Glycol Monostearate and/or synthetic and artificial alkalized cocoa processed with the Potassium Carbonate.  *See* paragraphs 29 and 30, *supra*.  Yet, DGIC labeled its DGIC's Dreyer's/Edy's ice cream products simply using the common or usual name of the characterizing flavor together with the words "ice cream," falsely representing under 21 C.F.R. §135.110(f)(2)(i) that it has no artificial flavors.  For example, Dreyer's/Edy's triple chocolate flavored peanut butter ice cream is labeled as "Triple Chocolate Peanut Butter Sundae…LIGHT ICE CREAM," despite listing artificial cocoa processed with alkali four times in the ingredients, and the artificial flavor Propylene Glycol Monostearate.  *See* Exhibit 12.  DGIC reinforced this representation on its labels by adding the "All Natural Flavors" claim.  This mislabeling of these DGIC's Häagen-Dazs ice

cream products violates 21 C.F.R. §135.110(f)(2)(i), the Sherman Law §110100(a) and other applicable states' laws.  Moreover, these DGIC Dreyer's/Edy's ice cream products' labels did not include the "flavored," "artificial" or "artificially flavored" language as required by 21 C.F.R. §135.110(f)(2)(ii) and/or (iii).  DGIC's failure to include the required language to identify its Dreyer's/Edy's flavors as being artificial violates 21 C.F.R. §135.110(f)(2)(ii) and/or (iii), the Sherman Law §110100(a) and other applicable states' laws.  In addition, DGIC's failure to include the required "flavored," "artificial" or "artificially flavored" language reinforces the false and misleading "All Natural Flavors" statement on  Dreyer's/Edy's products in violation of 21 U.S.C. §343(a)(1), Sherman Law §110660 and other applicable state laws.

## DGIC HAS REFUSED TO CEASE ITS WRONGDOING

54.     DGIC has been notified by Plaintiffs on behalf of themselves and all class members that the DGIC Ice Cream products have been falsely and misleadingly labeled as "All Natural" and "All Natural Flavors" when they in fact contain synthetic and artificial substances.  On May 4, 2011 and July 12, 2011, Plaintiffs' counsel notified DGIC in writing that DGIC's Ice Cream was mislabeled as being "All Natural" (directly or impliedly) despite being made with a synthetic ingredient, potassium carbonate.  The letters demanded that DGIC take the following steps to cure this defect:  remove the "All Natural" statement from its ice cream packaging, provide an accounting of DGIC's profits from the sale of its ice cream products, pay restitution to Plaintiffs and all other putative class members, recall the mislabeled products and agree not to advertise its ice cream products containing potassium carbonate as "All Natural."

55.     DGIC did not respond to Plaintiffs' notices under the CLRA, did not refund monies paid or take any other action to repair or rectify the problems associated with its unlawful behavior detailed above, or promise to do so with respect to those persons, such as Plaintiffs and the Class, who purchased DGIC's Ice Cream since June 2007.

56.     On March 30, 2012 Plaintiffs sent a supplemental correspondence to DGIC describing Plaintiffs' purchases of its Ice Cream products, based upon these products' labels' assertion that they were "All Natural" or "All Natural Flavors."  This correspondence further notified DGIC that these and other Ice Cream products sold by DGIC and labeled as being "All

FIRST AMENDED CONSOLIDATED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 3:11-cv-02910-EMC

Natural" or "All Natural Flavors" contained Glycerin, Mono and Diglycerides, Potassium Carbonate, Propylene Glycol Monostearate, Tetrasodium Pyrophospate and Xanthan Gum, and that each of these ingredients was not natural.[30]  See Exhibit 13.  This letter reiterated the same cure demands set forth in the May 4, 2011 and July 12, 2011 letters for all of DGIC's Ice Cream products labeled as being "All Natural" or "All Natural Flavors" that contain non-natural ingredients.

57.    Although DGIC has received ample notice that DGIC's Ice Cream products were falsely and misleadingly labeled "All Natural" and "All Natural Flavors" when the products contained synthetic and artificial substances, and although DGIC has had reasonable opportunity to cure or otherwise remedy the harms to Plaintiffs and Class members caused by these defects, DGIC has failed to do so.

### DGIC FRAUDULENTLY CONCEALED ITS WRONGDOING

58.    The DGIC Ice Creams labeled "All Natural" and "All Natural Flavors" contain artificial and synthetic ingredients as identified above.  DGIC did not disclose the identity of Potassium Carbonate on any of its Ice Creams' labels.  A reasonably prudent consumer buying DGIC's Ice Creams would have no reason to suspect that the "All Natural" or "All Natural Flavors" labeled products contained Potassium Carbonate.

59.    Moreover, while the DGIC's "All Natural" and "All Natural Flavors" Ice Creams' labels did include the following in the ingredient list: Glycerin, Mono and Diglycerides, Propylene Glycol Monostearate, Tetrasodium Pyrophospate and Xanthan Gum, those labels did not disclose that any of these ingredients were synthetic or artificial, and therefore not natural.  Nor did DGIC otherwise disclose this information to Plaintiffs and members of the Class.  Indeed, whether Glycerin, Mono and Diglycerides, Potassium Carbonate, Propylene Glycol Monostearate, Tetrasodium Pyrophospate or Xanthan Gum are artificial, synthetic or natural is not something

---

[30] This correspondence also advise DGIC that these and other Ice Cream products sold by DGIC and labeled "All Natural" or "All Natural Flavors" contained Artificial sweeteners, ascorbic acid, blue 1, cellulose gum, invert sugar, maltodextrin, modified starches, partially hydrogenated oils, polydextrose, polysorbate 80, retinyl palmitate, sorbitan monostearate, bleached soy lecithin and yellow 5, and that each of these ingredients may not be natural.

1  Plaintiffs or any other average reasonable consumer buying DGIC's Ice Cream would know since

2  that information is not common knowledge.  That, combined with DGIC's active concealment in

3  representing the DGIC Ice Creams as "All Natural" and "All Natural Flavors" and not disclosing

4  otherwise, gave the average reasonable consumer no reason to suspect that DGIC's representations

5  that the products are "All Natural" or "All Natural Flavors" were not true, and therefore consumers

6  had no reason to investigate whether these ingredients are synthetic or natural.

7       60.    As such, DGIC concealed the non-natural nature of the ingredients in the Ice Creams.

8                                **CLASS ACTION ALLEGATIONS**

9       61.    Plaintiffs bring this action on behalf of themselves and on behalf of all other members

10 of the Class ("Class"), defined as all persons who, on or after June 14, 2007, purchased in the

11 United States DGIC's Ice Creams labeled "All Natural" or "All Natural Flavors" but which

12 contained artificial or synthetic ingredients.  Plaintiffs bring this Class pursuant to Federal Rule of

13 Civil Procedure 23(a), and 23(b)(1), 23(b)(2) and 23(b)(3).

14      62.    Excluded from the Class are: (i) DGIC and its employees, principals, affiliated

15 entities, legal representatives, successors and assigns; and (ii) the judges to whom this action is

16 assigned and any members of their immediate families.

17      63.    Upon information and belief, there are tens of thousands of Class members who are

18 geographically dispersed throughout the United States.  Therefore, individual joinder of all members

19 of the Class would be impracticable.

20      64.    Common questions of law or fact exist as to all members of the Class.  These

21 questions predominate over the questions affecting only individual Class members.  These common

22 legal or factual questions include:

23           a.   Whether DGIC labels its Ice Creams as "All Natural" or "All Natural
                  Flavors;"
24

25           b.   Whether DGIC's "All Natural" and "All Natural Flavors"
                  representations on the labels of its Ice Cream refers to the entire ice
26                cream product, or only to the ingredients that impart flavor;

27           c.   Whether the DGIC Ice Creams that contain Glycerin, Mono and
                  Diglycerides, Potassium Carbonate, Propylene Glycol Monostearate,
28

---

28

Tetrasodium Pyrophospate, Xanthan Gum, or other synthetic or artificial ingredients are "All Natural" or "All Natural Flavors;"

d. Whether the DGIC Ice Creams that contain Propylene Glycol Monostearate, alkalized cocoa, or other synthetic or artificial flavors constitute "All Natural Flavors;"

e. Whether DGIC's "All Natural" labeling of its Ice Cream products is likely to deceive class members or the general public;

f. Whether DGIC's "All Natural Flavors" labeling of its Ice Cream products is likely to deceive class members or the general public;

g. Whether DGIC's representations are unlawful; and

h. The appropriate measure of damages, resitutionary disgorgement or restitution.

65.     Plaintiffs' claims are typical of the claims of the Class, in that Plaintiffs were consumers who purchased DGIC's "All Natural" and "All Natural Flavors" Ice Cream products in the United States that contained artificial or synthetic ingredients during the Class Period.  Plaintiffs, therefore, are no different in any relevant respect from any other Class member, and the relief sought is common to the Class.

66.     Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seek to represent, and they have retained counsel competent and experienced in conducting complex class action litigation, including food mislabeling class actions such as this one.  Plaintiffs and their counsel will adequately protect the interests of the Class.

67.     A class action is superior to other available means for the fair and efficient adjudication of this dispute.  The damages suffered by each individual Class member likely will be relatively small, especially given the relatively small cost of the Ice Creams at issue and the burden and expense of individual prosecution of the complex litigation necessitated by DGIC's conduct. Thus, it would be virtually impossible for Class members individually to effectively redress the wrongs done to them.  Moreover, even if Class members could afford individual actions, it would still not be preferable to class-wide litigation.  Individualized actions present the potential for

FIRST AMENDED CONSOLIDATED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 3:11-cv-02910-EMC

1   inconsistent or contradictory judgments.  By contrast, a class action presents far fewer management

2   difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive

3   supervision by a single court.

4        68.   In the alternative, the Class may be certified because DGIC has acted or refused to act

5   on grounds generally applicable to the Class, thereby making appropriate preliminary and final

6   equitable relief with respect to the Class.

7        69.   Plaintiffs bring their claims on behalf of the nationwide Class.  In the alternative,

8   Plaintiffs reserve their right to bring claims on behalf of appropriate sub-Classes or multi-state

9   Classes or a statewide Class, as indicated at paragraph 13 n.3, *supra*.  Plaintiff Astiana bought

10  DGIC's Ice Cream in Oregon during the relevant period.  Should the Court find that Ms. Astiana's

11  may not raise California consumer fraud claims for those purchases made outside of California, she

12  still has standing to bring consumer fraud claims under the laws of Oregon.  *See* Or. Rev. Stat. Ann.

13  §§646.605, *et seq.*[31]  The same is true for Ms. Astiana's common law claims based upon state law.

**FIRST CAUSE OF ACTION**
**(Magnuson Moss Warranty Act, 15 U.S.C. §§2301, *et seq.***
**Violation of Written Warranty Under Federal Law)**

16       70.   Plaintiffs hereby incorporate all other paragraphs of this First Amended Consolidated

17  Complaint and restate them as if they were fully set forth herein.  This claim is brought by Plaintiffs

18  on behalf of themselves and the Class solely for breach of federal law.  This claim is not based on

19  any violation of state law.

20       71.   The MMWA, 15 U.S.C. §§2301, *et seq.*, creates a private federal cause of action for

21  breach of a "written warranty" as defined by the Act.  15 U.S.C. §2301(6) and §2310(d)(1).

22       72.   DGIC's Ice Cream products are "consumer products" as that term is defined by 15

23  U.S.C. §2301(1), as they constitute tangible personal property which is distributed in commerce and

24  which is normally used for personal, family or household purposes.

---

27  [31] Or. Rev. Stat. Ann. § 646.608 sets forth the definitions of unlawful practices, and Or. Rev. Stat.

28  Ann. § 646.638 provides for a private right of action.

FIRST AMENDED CONSOLIDATED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 3:11-cv-02910-EMC

73.     Plaintiffs and members of the Class are "consumers" as defined by 15 U.S.C. §2301(3), since they are buyers of DGIC's Ice Creams for purposes other than resale.

74.     DGIC is an entity engaged in the business of making its food products available, either directly or indirectly, to consumers such as Plaintiffs and the Class.  As such, DGIC is a "supplier" as defined in 15 U.S.C. §2301(4).

75.     Through its labeling, DGIC gave and offered a written warranty to consumers relating to the nature and quality of the ingredients in the DGIC Products.  As a result, DGIC is a "warrantor" within the meaning of 15 U.S.C. §2301(5).

76.     DGIC provided a "written warranty" within the meaning of 15 U.S.C. 2301(6) for the DGIC Ice Creams by identifying the ingredients in the ingredients list on each of the food products, and then prominently affirming and promising in writing on the labeling of the Ice Creams that the Ice Cream products were "All Natural" or "All Natural Flavors" as described in this First Amended Consolidated Complaint.  These affirmations of fact regarding the nature and qualities of the ingredients in the DGIC Ice Creams constituted, and were intended to convey to purchasers, a written promise that the ingredients in the products, including the flavor ingredients, were free of a particular type of defect (i.e., that they were not synthetic or artificial).  As such, these written promises and affirmations were part of the basis of Plaintiffs' and the Class' bargain with DGIC in purchasing the DGIC Ice Cream Products.

77.     DGIC breached the written warranty by failing to provide and supply the DGIC Ice Cream products containing only non-synthetic, non-artificial ingredients and flavors.  Since the ingredients in the DGIC Ice Cream products did not have the requisite qualities and character promised by DGIC's written warranties, the Ice Cream products were therefore not defect free, and did not comply with DGIC's obligation under the written warranty to supply "All Natural" or "All Natural Flavors" ice cream to Plaintiffs and the Class.

78.     DGIC was provided notice and a reasonable opportunity to cure the defects in the DGIC Ice Cream products and remedy the harm to Plaintiffs and the Class, but failed to do so, as set forth above in paragraphs 54-57.

FIRST AMENDED CONSOLIDATED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 3:11-cv-02910-EMC

79.     Plaintiffs and members of the Class were injured by DGIC's failure to comply with its obligations under the written warranties, since Plaintiffs and members of the Class paid for products that did not have the promised qualities and nature, did not receive the non-synthetic, non-artificially flavored defect-free food products that were promised to them and that they bargained for, paid a premium for the DGIC Ice Creams when they could have instead purchased other less expensive alternative ice cream products, and lost the opportunity to purchase and consume other, truly all-natural ice cream that would provide the type of non-synthetic and non-artificial ingredients and flavors promised and warranted by DGIC but which the DGIC's Ice Creams failed to provide or were incapable of providing.

80.     Plaintiffs and the Class therefore for this claim seek and are entitled to recover "damages and other legal and equitable relief" and "costs and expenses (including attorneys' fees based upon actual time expended)" as provided in 15 U.S.C. §2310(d).

### SECOND CAUSE OF ACTION
### (Common Law Fraud)

81.     Plaintiffs hereby incorporate all other paragraphs of this First Amended Consolidated Complaint and restate them as if they were fully set forth herein.

82.     DGIC uniformly misrepresented on the Ice Creams' labels during the Class Period that the ice cream was "All Natural" or "All Natural Flavors," when in fact it contained synthetic ingredients, including, but not limited to: Glycerin, Mono and Diglycerides, Potassium Carbonate, Propylene Glycol Monostearate, Tetrasodium Pyrophospate and Xanthan Gum.  While the Ice Creams' labels did uniformly disclose that the purportedly "All Natural" and "All Natural Flavors" ice creams contained these ingredients,[32] the labels uniformly did not disclose that these ingredients were synthetic or artificial.

83.     Likewise, DGIC uniformly misrepresented on the labels of thirty six (36) Dreyer's/Edy's Ice Cream products during the Class Period that the ice cream constituted "All

---

[32]   The Potassium Carbonate contained in the alkalized cocoa as described herein was not separately listed on DGIC's Ice Cream labels, but was instead identified on the labels as "Cocoa Processed with Alkali."

FIRST AMENDED CONSOLIDATED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 3:11-cv-02910-EMC

Natural Flavors" when, in fact, it contained the artificial flavors Propylene Glycol Monostearate and/or alkalized cocoa.  While the Ice Creams' labels did uniformly disclose that the purportedly "All Natural Flavors" ice creams contained these ingredients, the labels uniformly did not disclose that these ingredients were synthetic and artificial flavors.

84.     Thus, the claims on DGIC's labels that the DGIC Ice Cream products were "All Natural" or "All Natural Flavors" constitute affirmative acts of concealment and non-disclosure since Glycerin, Mono and Diglycerides, Potassium Carbonate, Propylene Glycol Monostearate, Tetrasodium Pyrophospate and Xanthan Gum are synthetic, non-natural ingredients, and Propylene Glycol Monostearate and alkalized cocoa are synthetic and artificial flavors.  DGIC had a duty to disclose this material information in light of its representations on its labels that the DGIC Ice Cream products were "All Natural" or "All Natural Flavors."

85.     DGIC's "All Natural" and "All Natural Flavors" statements and representations and its affirmative concealments and omissions described herein were material in that there was a substantial likelihood that a reasonable prospective purchaser of the DGIC Ice Creams would have considered them important when deciding whether or not to purchase the ice cream.

86.     DGIC knew or recklessly disregarded the likelihood that the DGIC Ice Cream products were not "All Natural" or "All Natural Flavors," uniformly misrepresented the DGIC Ice Cream products as "All Natural" and "All Natural Flavors" and affirmatively concealed and omitted the truth with the intent and purpose of inducing consumers (*i.e.,* Plaintiffs and the Class) to purchase the Ice Creams.

87.     DGIC failed to disclose, misrepresented and/or concealed the foregoing material facts from Plaintiffs and the Class knowing that these facts may have justifiably induced them to refrain from purchasing the Ice Creams and instead to purchase another manufacturer's ice cream that was actually all natural or made with all natural flavors, or to purchase less expensive non-natural substitute ice cream.

88.     As set forth in paragraphs 7-10 of this First Amended Consolidated Complaint, Plaintiffs relied upon DGIC's "All Natural" and "All Natural Flavors" representations on the Ice Cream products' labels as a material basis for their decisions to purchase DGIC's Ice Creams.

1  Moreover, based on the materiality of DGIC's misrepresentations, concealments, and omissions

2  uniformly made on or omitted from the Ice Cream products' labels, reliance on those

3  misrepresentations, concealments and omissions as a material basis for the decision to purchase the

4  Ice Cream may be presumed or inferred for all members of the Class.

5         89.    DGIC carried out the scheme set forth in this First Amended Consolidated Complaint

6  willfully, wantonly, and with reckless disregard for the interests of Plaintiffs and the Class.

7         90.    By reason of the foregoing, Plaintiffs and members of the Class have been injured by

8  purchasing the DGIC Ice Creams represented to be "All Natural" or "All Natural Flavors" which

9  were not entirely natural and did not contain entirely natural flavors, and/or by paying a premium for

10  those supposedly "All Natural" and "All Natural Flavors" Ice Cream products over less expensive

11  non-natural alternatives.  Plaintiffs and the Class are therefore entitled to recover damages, punitive

12  damages, equitable relief such as restitution and disgorgement of profits, and declaratory and

13  injunctive relief.

14  **THIRD CAUSE OF ACTION**
   **("Unlawful" Business Practices in Violation of**

15  **The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§17200, *et seq*.)**

16         91.    Plaintiffs hereby incorporate all other paragraphs of this First Amended Consolidated

17  Complaint and restate them as if they were fully set forth herein.

18         92.    The UCL defines unfair business competition to include any "unlawful, unfair or

19  fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal.

20  Bus. & Prof. Code §17200.

21         93.    A business act or practice is "unlawful" if it violates any established state or federal

22  law.

23         94.    California's Sherman Law, Article 6, §110660 provides that: "Any food is misbranded

24  if its labeling is false or misleading in any particular."  The Sherman Law, Chapter 2, Article 1,

25  §110100(a) provides that "[a]ll food labeling regulations and any amendments to those regulations

26  adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall

27  be the food labeling regulations of this state."

28

FIRST AMENDED CONSOLIDATED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 3:11-cv-02910-EMC

95.     DGIC violated, and continues to violate the Sherman Law, Article 6, §110660, and hence also violated and continues to violate the "unlawful" prong of the UCL, through its use of the terms "All Natural" and "All Natural Flavors" on the labels of ice cream products that contain artificial or synthetic ingredients including, but not limited to, Glycerin, Mono and Diglycerides, Potassium Carbonate, Propylene Glycol Monostearate, Tetrasodium Pyrophospate and Xanthan Gum.  DGIC's identical conduct that violates the Sherman Law also violates the FDCA §403(a)(1), 21 U.S.C. §343(a)(1) which declares food misbranded under federal law if its "labeling is false and misleading in any particular."  This identical conduct serves as the sole factual basis of each cause of action brought by this First Amended Consolidated Complaint, and Plaintiffs do not seek to enforce any of the state law claims raised herein to impose any standard of conduct that exceeds that which would violate the FDCA.

96.     The MMWA also makes the breach of either a "written warranty" or an "implied warranty" of merchantability a violation of federal law.  15 U.S.C. §2310(d).  DGIC violated, and continues to violate the MMWA as alleged in the First Cause of Action, and hence has also violated, and continues to violate, the "unlawful" prong of the UCL through its use of the terms "All Natural" and "All Natural Flavors" on the labels of the Ice Cream that contain artificial and/or synthetic ingredients including, but not limited to, Glycerin, Mono and Diglycerides, Potassium Carbonate, Propylene Glycol Monostearate, Tetrasodium Pyrophospate and Xanthan Gum, and the use of the term "All Natural Flavors" on the labels of Ice Cream that contained synthetic and artificial flavors Propylene Glycol Monostearate and alkalized cocoa.

97.     Federal and California state regulations mandate that the primary label of ice cream products containing artificial flavors identify the characterizing flavor of the product as "flavored," "artificial" or "artificially flavored," depending on the amount of artificial flavor in the ice cream. *See* 21 C.F.R. §135.110(f)(2) and Sherman Law, §110100(a).  DGIC violated, and continues to violate, both 21 C.F.R. §135.110(f)(2) and Sherman Law §110100(a), and hence has also violated, and continues to violate, the "unlawful" prong of the UCL by failing to identify its ice cream flavors as "flavored," "artificial" or "artificially flavored" when they contain the synthetic and artificial flavors Propylene Glycol Monostearate and alkalized cocoa.

1    98.    By committing the acts and practices alleged above, DGIC has engaged, and

2    continues to be engaged, in unlawful business practices within the meaning of California Business

3    and Professions Code §§17200, *et seq.*

4    99.    Through its unlawful acts and practices, DGIC has obtained, and continues to unfairly

5    obtain, money from members of the Class.  As such, Plaintiffs request that this Court cause DGIC to

6    restore this money to Plaintiffs and all Class members, to disgorge the profits DGIC made on these

7    transactions, and to enjoin DGIC from continuing to violate the UCL or violating it in the same

8    fashion in the future as discussed herein.  Otherwise, the Class may be irreparably harmed and/or

9    denied an effective and complete remedy if such an order is not granted.

10                              **FOURTH CAUSE OF ACTION**
11        **("Unfair" Business Practices in Violation of**
         **The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§17200, *et seq.*)**

12    100.    Plaintiffs hereby incorporate all other paragraphs of this First Amended Consolidated

13    Complaint and restate them as if they were fully set forth herein.

14    101.    The UCL defines unfair business competition to include any "unlawful, unfair or

15    fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.  Cal.

16    Bus. Prof. Code 17200.

17    102.    A business act or practice is "unfair" under the Unfair Competition Law if the

18    reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the

19    harm to the alleged victims.

20    103.    DGIC has and continues to violate the "unfair" prong of the UCL through its

21    misleading description of its products as "All Natural" or "All Natural Flavors" when indeed one or

22    more ingredients in each of the DGIC's Ice Cream products is synthetic or artificial.  Likewise,

23    DGIC has and continues to violate the "unfair" prong of the UCL through it misleading description

24    that its Ice Cream contains "All Natural Flavors" when they contain synthetic and artificial flavors

25    Propylene Glycol Monostearate and alkalized cocoa.  The gravity of the harm to members of the

26    Class resulting from such unfair acts and practices outweighs any conceivable reasons, justifications

27    and/or motives of DGIC for engaging in such deceptive acts and practices.  By committing the acts

28

FIRST AMENDED CONSOLIDATED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 3:11-cv-02910-EMC

1  and practices alleged above, DGIC has engaged, and continues to be engaged, in unfair business

2  practices within the meaning of California Business and Professions Code §§17200, *et seq*.

3        104.    Through its unfair acts and practices, DGIC has obtained, and continues to unfairly

4  obtain, money from members of the Class.  As such, Plaintiffs request that this Court cause DGIC to

5  restore this money to Plaintiffs and all Class members, to disgorge the profits DGIC has made on its

6  Ice Cream products, and to enjoin DGIC from continuing to violate the Unfair Competition Law or

7  violating it in the same fashion in the future as discussed herein.  Otherwise, the Class may be

8  irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

9                         **FIFTH CAUSE OF ACTION**
                **("Fraudulent" Business Practices in Violation of**
10  **The Unfair Competition Law ("UCL"), Bus. & Prof. Code §§17200, *et seq*.)**

11        105.    Plaintiffs hereby incorporate all other paragraphs of this First Amended Consolidated

12  Complaint and restate them as if they were fully set forth herein.

13        106.    The UCL defines unfair business competition to include any "unlawful, unfair or

14  fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.  Cal.

15  Bus. & Prof. Code §17200.

16        107.    A business act or practice is "fraudulent" under the Unfair Competition Law if it

17  actually deceives or is likely to deceive members of the consuming public.

18        108.    DGIC's acts and practices of mislabeling its Ice Creams as "All Natural" or "All

19  Natural Flavors" despite the fact they contained synthetic and artificial ingredients has the effect of

20  misleading consumers into believing the products are something they are not.

21        109.    Similarly, DGIC's acts and practices of mislabeling its Ice Creams as "All Natural

22  Flavors" despite the fact they contain the synthetic and artificial flavors Propylene Glycol

23  Monostearate and alkalized cocoa has the effect of misleading consumers into believing the products

24  are something they are not.

25        110.    As a result of the conduct described above, DGIC has been, and will continue to be,

26  unjustly enriched at the expense of Plaintiffs and members of the Class. Specifically, DGIC has been

27  unjustly enriched by the profits it has obtained from Plaintiffs and the Class from the purchases of

28  the Ice Creams.

FIRST AMENDED CONSOLIDATED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case
No. 3:11-cv-02910-EMC

111. Through its unfair acts and practices, DGIC has improperly obtained, and continues to improperly obtain, money from members of the Class. As such, Plaintiffs request that this Court cause DGIC to restore this money to Plaintiffs and all Class members, to disgorge the profits DGIC has made on the Ice Cream, and to enjoin DGIC from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future as discussed herein. Otherwise, the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

### SIXTH CAUSE OF ACTION
#### (False Advertising in Violation of
#### California Business & Professions Code §§17500, *et seq*.)

112. Plaintiffs hereby incorporate all other paragraphs of this First Amended Consolidated Complaint and restate them as if they were fully set forth herein.

113. DGIC uses advertising on its packaging to sell its Ice Creams. DGIC is disseminating advertising concerning its goods which by its very nature is deceptive, untrue, or misleading within the meaning of California Business & Professions Code §§17500, *et seq.* because those advertising statements contained on DGIC's labels are misleading and likely to deceive, and continue to deceive, members of the putative Class and the general public.

114. In making and disseminating the statements alleged herein, DGIC knew or should have known that the statements were untrue or misleading, and that it acted in violation of California Business & Professions Code §§17500, *et seq.*

115. The misrepresentations and non-disclosures by DGIC of the material facts detailed above constitute false and misleading advertising and therefore constitute a violation of California Business & Professions Code §§17500, *et seq.*

116. Through its deceptive acts and practices, DGIC has improperly and illegally obtained money from Plaintiffs and members of the Class. As such, Plaintiffs request that this Court cause DGIC to restore this money to Plaintiffs and members of the Class, and to enjoin DGIC from continuing to violate California Business & Professions Code §§17500, *et seq.*, as discussed above. Otherwise, Plaintiffs and those similarly situated will continue to be harmed by DGIC's false and/or misleading advertising.

FIRST AMENDED CONSOLIDATED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 3:11-cv-02910-EMC

117.    Pursuant to California Business & Professions Code §17535, Plaintiffs seek an order of this Court ordering DGIC to fully disclose the true nature of its misrepresentations.  Plaintiffs additionally request an order requiring DGIC to disgorge its ill-gotten gains and/or award full restitution of all monies wrongfully acquired by DGIC by means of such acts of false advertising, plus interest and attorneys fees so as to restore any and all monies which were acquired and obtained by means of such untrue and misleading advertising, misrepresentations and omissions, and which ill-gotten gains are still retained by DGIC.  Plaintiffs and the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

118.    Such conduct is ongoing and continues to this date. Plaintiffs and the Class are therefore entitled to the relief described below.

**SEVENTH CAUSE OF ACTION**
**(Violation of the Consumers Legal Remedies Act,**
**California Civil Code §§1750, *et seq.*)**

119.     Plaintiffs hereby incorporate all other paragraphs of this First Amended Consolidated Complaint and restate them as if they were fully set forth herein.

120.    This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§1750, *et seq*. (the "CLRA").

121.    Plaintiff and each member of the proposed Class are "consumers" within the meaning of Civil Code §1761(d).

122.    The purchases of DGIC's Ice Creams by consumers constitute "transactions" within the meaning of Civil Code 1761(e) and the Ice Cream offered by DGIC constitute "goods" within the meaning of Civil Code §1761(a).

123.    DGIC has violated, and continues to violate, the CLRA in at least the following respects:

    a.   in violation of Civil Code §1770(a)(5), DGIC represented that the transaction had characteristics which it did not have;

    b.   in violation of Civil Code §1770(a)(7), DGIC represented that its goods (i.e., the Ice Cream products) were of a particular standard, quality or grade, which they were not; and

    c.   in violation of Civil Code §1770(a)(9), DGIC advertised its goods (i.e., the Ice Cream products) with the intent not to provide what it advertised.

FIRST AMENDED CONSOLIDATED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 3:11-cv-02910-EMC

124.    Plaintiffs and the members of the Class request that this Court enjoin DGIC from continuing to engage in the unlawful and deceptive methods, acts and practices alleged above, pursuant to California Civil Code §1780(a)(2).  Unless DGIC is permanently enjoined from continuing to engage in such violations of the CLRA, future consumers of DGIC's Ice Cream products will be damaged by its acts and practices in the same way as have Plaintiffs and the members of the proposed Class.

125.    As set forth in paragraphs 54-57, prior to filing this action, Plaintiffs notified DGIC in writing of the particular violations of Civil Code §1770 and demanded that DGIC repair or otherwise rectify the problems associated with its illegal behavior detailed above, which actions are in violation of Civil Code §1770.  DGIC failed to adequately respond to Plaintiffs' demands within 30 days of Plaintiffs' notices pursuant to Civil Code 1782(b) as DGIC did not refund moneys paid by Plaintiffs or the Class, or take any other action to repair or rectify the problems associated with its illegal behavior as set forth herein, or promise to do so with respect to those persons, such as Plaintiffs and the Class, who purchased DGIC's supposedly "All Natural" and "All Natural Flavors" Ice Creams that contained non-natural, synthetic ingredients.

126.    Plaintiffs hereby request damages as provided for in Civil Code §1780 for those Ice Cream products DGIC was given notice about:

a.    Actual damages in excess of the jurisdictional limits of this Court;

b.    statutory damages allowable under Civil Code §1780;

c.    punitive damages;

d.    any other relief which the Court deems proper; and

e.    court costs and attorneys' fees.

### EIGHTH CAUSE OF ACTION
#### (Restitution Based On Quasi-Contract/Unjust Enrichment)

127.    Plaintiffs hereby incorporate all other paragraphs of this First Amended Consolidated Complaint and restate them as if they were fully set forth herein.

---

FIRST AMENDED CONSOLIDATED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 3:11-cv-02910-EMC

128.    DGIC's conduct in enticing Plaintiffs and the Class to purchase its Ice Cream products through its false and misleading packaging as described throughout this First Amended Consolidated Complaint is unlawful because the statements contained on its product labels are untrue.  DGIC took monies from Plaintiffs and Class members for Ice Creams promised to be "All Natural" or "All Natural Flavors," even though the Ice Cream products it sold are not all natural as specified throughout this First Amended Consolidated Complaint, and contained artificial and synthetic ingredients (including flavors) as specified throughout this First Amended Consolidated Complaint.  DGIC has been unjustly enriched at the expense of Plaintiffs and the Class as result of its unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on DGIC to restore these ill-gotten gains to Plaintiffs and the Class.

129.    As a direct and proximate result of DGIC's unjust enrichment, Plaintiffs and the Class are entitled to restitution or restitutionary disgorgement in an amount to be proved at trial.

**PRAYER**

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the other members of the Class, and for the Causes of Action so applicable on behalf of the general public, request an award and relief as follows:

A.    An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiffs be appointed Class Representatives and Plaintiffs' counsel be appointed Counsel for the Class.

B.    Restitution in such amount that Plaintiffs and all Class members paid to purchase DGIC's Ice Creams, or paid as a premium over non-natural alternatives, or restitutionary disgorgement of the profits DGIC obtained from those transactions, for Causes of Action for which they are available.

C.    Compensatory damages for Causes of Action for which they are available.

D.    Statutory damages allowable under Civil Code §1780.

E.    Punitive Damages for Causes of Action for which they are available.

FIRST AMENDED CONSOLIDATED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 3:11-cv-02910-EMC

1    F.    A declaration and order enjoining DGIC from advertising its ice cream misleadingly,

2    in violation of California's Sherman Food, Drug and Cosmetic Law and other applicable laws and

3    regulations as specified in this First Amended Consolidated Complaint.

4    G.    An order awarding Plaintiffs their costs of suit, including reasonable attorneys' fees

5    and pre- and post-judgment interest.

6    H.    An order requiring an accounting for, and imposition of, a constructive trust upon all

7    monies received by DGIC as a result of the unfair, misleading, fraudulent and unlawful conduct

8    alleged herein.

9    I.    The prayers for relief requested herein as they pertain to the First Cause of Action (¶¶

10   70-80, herein) do not and shall not be read to exceed the "[d]amages and other legal and equitable

11   relief" and "costs and expenses (including attorneys' fees based upon actual time expended)" as

12   provided in 15 U.S.C. §2310(d).

13   J.    Such other and further relief as may be deemed necessary or appropriate.

14                          **DEMAND FOR JURY TRIAL**

15        Plaintiffs hereby demand a trial by jury on all causes of action and/or issues so triable.

16

17   Dated:  March 30, 2012                          s/Joseph N. Kravec, Jr.
                                                     Joseph N. Kravec, Jr. (*pro hac vice*)
18

19   Janet Lindner Spielberg (SBN 221926)        Maureen Davidson-Welling (*pro hac vice*)
     **LAW OFFICES OF JANET LINDNER**            Wyatt A. Lison (*pro hac vice*)
20     **SPIELBERG**                             **STEMBER FEINSTEIN DOYLE**
     12400 Wilshire Boulevard, #400                **PAYNE & KRAVEC, LLC**
21   Los Angeles, California  90025             Allegheny Building, 17th Floor
     Tel:  (310) 392-8801                        429 Forbes Avenue
22   Fax:  (310) 278-5938                        Pittsburgh, PA  15219
     Email: jlspielberg@jlslp.com                Tel:  (412) 281-8400
23                                               Fax:  (412) 281-1007
                                                 Email: jkravec@stemberfeinstein.com
24   Michael D. Braun (SBN 167416)              Email: mdavidsonwelling@stemberfeinstein.com
     **BRAUN LAW GROUP, P.C.**                   Email: wlison@stemberfeinstein.com
25   10680 West Pico Boulevard, Suite 280
     Los Angeles, California  90064
26   Tel:  (310) 836-6000
     Fax:  (310) 836-6010
27   Email: service@braunlawgroup.com

28

---

42

FIRST AMENDED CONSOLIDATED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case
No. 3:11-cv-02910-EMC

Daniel Roman Tamez
**GNAU AND TAMEZ LAW GROUP LLP**
1010 Second Avenue
Suite 1750
San Diego, CA 92101
Tel:  (619) 446-6736
Fax: (619) 793-5214
Email: danieltamez@sdinjuryattorney.com

Nabil Majed Nachawati , II (*pro hac vice*)
**FEARS NACHAWATI LAW FIRM**
4925 Greenville Avenue, Suite 715
Dallas, TX 75206
Tel: (214) 890-0711
Fax: (214) 890-0712
Email: mn@fnlawfirm.com

Ronald Dean Gresham
**PAYNE MITCHELL LAW GROUP, LLP**
2911 Turtle Creek Boulevard
Suite 1400
Dallas, TX 75219
Tel:  (214) 252-1888
Fax: (214) 252-1889
Email: dean@paynemitchell.com

Roger L. Mandel
**LACKEY HERSHMAN LLP**
3102 Oak Lawn Avenue, Suite 777
Dallas, TX 75219
Tel:  (214) 560-2201
Fax: (214) 560-2203
Email: rlm@lhlaw.net

FIRST AMENDED CONSOLIDATED COMPLAINT for Damages, Equitable, Declaratory and Injunctive Relief; Case No. 3:11-cv-02910-EMC