MAYER BROWN LLP
Carmine R. Zarlenga (D.C. Bar No. 286244)
czarlenga@mayerbrown.com
1999 K Street, N.W.
Washington, D.C. 20006-1101
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

MAYER BROWN LLP
Dale J. Giali  (Cal. Bar No. 150382)
dgiali@mayerbrown.com
350 South Grand Avenue
25th Floor
Los Angeles, CA  90071-1503
Telephone: (213) 229-9500
Facsimile: (213) 625-0248

Attorneys for Defendant
DREYER'S GRAND ICE CREAM, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SKYE ASTIANA, *et al.*,<br><br>        Plaintiffs,<br><br>    vs.<br><br>DREYER'S GRAND ICE CREAM, INC.,<br><br>        Defendant. | ) Case No. C11-02910 EMC<br>) consolidated with<br>) Case No. C11-3164 EMC<br>)<br>) **MOTION TO DISMISS FIRST AMENDED**<br>) **CONSOLIDATED COMPLAINT**<br>)<br>) Date:  June 29, 2012<br>) Time:  1:30 p.m.<br>) Location: Courtroom 5, 17th Floor<br>)<br>) [Proposed Order Attached] |

701642756.2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 29, 2012, at 1:30 p.m., or as soon thereafter as this matter may be heard, in Courtroom 5, 17th Floor, of this Court, located at 450 Golden Gate Ave., San Francisco, California, defendant Dreyer's Grand Ice Cream, Inc. will and hereby does move the Court for an order dismissing plaintiffs' first amended class action complaint ("FACC") and each of its claims without leave to amend.

This motion is made pursuant to Fed. R. Civ. P. 8, 9(b), 12(b)(1), and 12(b)(6) and is based on the following grounds:

1. Plaintiffs' state law claims as to the vast majority of the challenged products – *i.e.*, those containing the labeling statement "All Natural Flavors" – are expressly preempted by uniform federal labeling standards promulgated by Congress and the U.S. Food and Drug Administration ("FDA") and, therefore, should be dismissed;

2. The FACC fails to state facts sufficient to show plaintiffs are entitled to relief as required by Fed. R. Civ. P. 8 as construed by the United States Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009);

3. Plaintiffs lack standing as required by Article III of the U.S. Constitution;

4. Plaintiffs have not stated an actionable claim under the Magnuson-Moss Warranty Act as they have failed to allege a warranty and failed to allege that the products at issue are defective; and

5. Plaintiffs have no claim for fraud or a legal right to sue separately for restitution.

1    This motion is based on this notice of motion, the attached memorandum of points and

2  authorities, the pleadings and documents on file in this lawsuit, the concurrently filed request for

3  judicial notice ("RJN"), and on other such matters and evidence as may be presented to the Court at the

4  hearing.

5

6  Dated:  May 1, 2012                          MAYER BROWN LLP
                                                Carmine R. Zarlenga
7                                               Dale J. Giali

8

9                                               By:_____/s/ Dale J. Giali_____
                                                        Dale J. Giali
10                                              Attorneys for Defendant
                                                Dreyer's Grand Ice Cream, Inc.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

701642756.2

1

# TABLE OF CONTENTS

2

**Page(s)**

3

MEMORANDUM OF POINTS & AUTHORITIES ..........................................................................1

4

SUMMARY OF ALLEGATIONS AND ARGUMENT ..................................................................1

5

ISSUES TO BE DECIDED (CIVIL L.R. 7-4(A)(3)) ....................................................................8

6

ARGUMENT ....................................................................................................................................8

7

8

I.    PLAINTIFFS' CLAIMS REGARDING THE "ALL NATURAL FLAVORS"
      LABELING STATEMENT ARE EXPRESSLY PREEMPTED BY FEDERAL LAW............8

9

      A.    The "All Natural Flavors" Statement Is Regulated By the FDCA/NLEA......................8

10

      B.    The FDCA/NLEA Contains An Express Preemption Provision Covering The
            "All Natural Flavors" Statement ..................................................................................10

11

12

      C.    Plaintiffs' Impermissibly Conflate The "Natural Flavor" Statement With The
            Entirely-Separate Concept Of A Product's "Characterizing Flavor." ..........................12

13

II.   SETTING ASIDE PREEMPTION, PLAINTIFFS' ALLEGATIONS DO NOT
      ALLEGE A PLAUSIBLE FALSE ADVERTISING THEORY ................................................14

14

15

III.  PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE MATERIALITY OF OR RELIANCE
      ON THE "NATURAL" STATEMENTS.....................................................................................19

16

IV.   PLAINTIFFS LACK STANDING UNDER ARTICLE III TO SUE ON FIFTY-THREE
      OF THE FIFTY-NINE CHALLENGED PRODUCTS. .............................................................22

17

18

V.    PLAINTIFFS HAVE FAILED TO PLEAD A CLAIM UNDER THE MAGNUSON-
      MOSS WARRANTY ACT.........................................................................................................23

19

VI.   PLAINTIFFS' FRAUD AND UNJUST ENRICHMENT CLAIMS ALSO FAIL ...................24

20

CONCLUSION ................................................................................................................................25

21

CERTIFICATE OF SERVICE .......................................................................................................26

22

23

24

25

26

27

28

-i-

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................... 14

*Astiana v. Ben & Jerry's*,
  2011 WL 2111796 (N.D. Cal. May 26, 2011) ........................................................ 2, 3, 4, 11

*Astiana v. Ben & Jerry's Homemade, Inc.*,
  No. C10-4387 (N.D. Cal.) ........................................................................................ 1, 2, 3

*Astiana v. Kashi Company*,
  No. 3:11cv1967 (S.D. Cal.) (filed 2/21/2012) ........................................................ 20

*Baltazar v. Apple, Inc.*,
  2011 WL 3795013 (N.D. Cal. Aug. 26, 2011)........................................................ 19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................................. 10, 14

*Berenblat v. Apple, Inc.*,
  No. 08-4969, 2009 WL 2591366 (N.D. Cal. Aug. 21, 2009) ................................ 24

*Brockey v. Moore*,
  107 Cal. App. 4th 86 (2003)...................................................................................... 15

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
  2011 WL 159380 (N.D. Cal. Jan. 10, 2011), *aff'd*, 2012 WL 1131526 (9th Cir. Apr. 5,
  2012) .......................................................................................................................... passim

*Chacanaca v. Quaker Oaks Co.*,
  752 F. Supp. 2d 1111 (N.D. Cal. 2010) ................................................................... 12

*Colucci v. ZonePerfect Nutrition Company*,
  No. 3:11cv4561 (N.D. Cal.) ...................................................................................... 1

*Consumer Advocates v. Echostar Satellite Corp.*,
  113 Cal. App. 4th 1351 (2003)................................................................................. 14

*Coyle v. Hornell Brewing Co.*,
  2010 WL 2539386 (D. N.J. June 15, 2010) ............................................................ 11

*Coyle v. Hornell Brewing Co.*,
  2011 WL 3859731 (D. N.J. Aug. 30, 2011)............................................................ 20

-ii-

# TABLE OF AUTHORITIES

**Page(s)**

*Degelmann v. Advanced Med. Optics, Inc.*,
    659 F.3d 835 (9th Cir. 2011) ................................................................. 11

*Dvora v. Gen. Mills, Inc.*,
    2011 WL 1897349 (C.D. Cal. May 16, 2011) ................................. 11, 19

*Dysthe v. Basic Research LLC*,
    2011 WL 5868307 (C.D. Cal. June 13, 2011) ................................. 7, 22

*Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*,
    458 U.S. 141 (1982) ................................................................. 10

*First Nationwide Sav. v. Perry*,
    11 Cal. App. 4th 1657 (1992) ................................................ 24

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) ................................................... 14

*Goodman v. Perlstein*,
    1989 WL 83452 (E.D. Pa. July 21, 1989) ................................. 7, 23

*Hill v. Roll Int'l Corp.*,
    195 Cal. App. 4th 1295 (2011) ............................................ 7, 14

*In re Farm Raised Salmon Cases*,
    42 Cal. 4th 1077 (2008) ....................................................... 10

*In re Sears, Roebuck & Co.*,
    2006 WL 1443737 (N.D. Ill. May 17, 2006) ............................. 23

*In re Stac Elecs. Sec. Litig.*,
    89 F.3d 1399 (9th Cir. 1996) .............................................. 10

*In Re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ................................................. 7, 20, 21

*Jogani v. Super. Ct.*,
    165 Cal. App. 4th 901 (2008) .............................................. 24

*Johns v. Bayer Corp.*,
    2010 WL 2573493 (S.D. Cal. June 24, 2010) ........................... 22

*Larsen v. King Arthur Flour Company, Inc.*,
    No. 3:11cv5495 (N.D. Cal.) ................................................... 1

-iii-

701642756.2

# TABLE OF AUTHORITIES

**Page(s)**

*Larsen v. Nonni's Foods LLC,*
No. 4:11cv4758 (N.D. Cal.) ................................................................................. 1

*Larsen v. Trader Joe's Company,*
No. 3:11cv5188 (N.D. Cal.) ................................................................................. 1

*Lavie v. Procter & Gamble Co.,*
105 Cal. App. 4th 496 (2003) ............................................................................. 14

*Lewis v. Casey,*
518 U.S. 343 (1996) ........................................................................................... 22

*Littlehale v. The Hain Celestial Group, Inc.,*
No. 4:11cv06342 (N.D. Cal.) ........................................................................ 1, 20

*Lockwood v. ConAgra Foods,*
597 F.Supp.2d 1028 (N.D. Cal. 2009) ............................................................... 11

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ...................................................................................... 21, 22

*McBride v. Boughton,*
123 Cal. App. 4th 379 (2004) ............................................................................. 24

*McKinniss v. Sunny Delight Beverages Co.,*
2007 WL 4766525 (C.D. Cal. Sept. 4, 2007) ..................................................... 19

*Melchior v. New Line Prods., Inc.,*
106 Cal. App. 4th 779 (2003) ............................................................................. 24

*Milicevic v. Fletcher Jones Imports, Ltd.,*
402 F.3d 912 (9th Cir. 2005) .............................................................................. 23

*Mlejnecky v. Olympus Imaging Am. Inc.,*
2011 WL 1497096 (E.D. Cal. Apr. 19, 2011) .................................................... 22

*N.Y. State Rest. Ass'n v. N.Y. City Bd. Of Health,*
556 F.3d 114 (2d Cir. 2009) ................................................................................ 8

*Peviani v. Hostess Brands, Inc.,*
750 F. Supp. 2d 1111 (C.D. Cal. 2010) ........................................................ 11, 12

*Red v. Kroger Co.,*
2010 WL 4262037 (C.D. Cal. Sept. 2, 2010) ................................................. 9, 12

-iv-

701642756.2

**TABLE OF AUTHORITIES**

**Page(s)**

*Rosal v. First Fed. Bank of Cal.,*
    671 F. Supp. 2d 1111 (N.D. Cal. 2009) ................................................................. 24

*Rosen v. Unilever U.S., Inc.,*
    2010 WL 4807100 (N.D. Cal. May 3, 2010) .......................................................... 19

*Sethavanish v. Balance Bar Co.,*
    No. 4:11cv4547 (N.D. Cal.) ..................................................................................... 1

*Sethavanish v. Kashi Co.,*
    No. 3:11cv2356 (S.D. Cal.) ................................................................................ 1, 20

*Sethavanish v. Kashi Company,*
    No. 11cv4453 (N.D. Cal.) (filed 9/7/2011) ............................................................ 20

*Skelton v. Gen. Motors Corp.,*
    660 F.2d 311 (7th Cir. 1981) .................................................................................. 23

*Small v. Fritz Companies, Inc.,*
    30 Cal. 4th 167 (2003) ............................................................................................ 24

*Smith v. Ford Motor Co.,*
    No. 10-17321, 2011 WL 6322200 (9th Cir. Dec. 19, 2011) .................................. 24

*Starr v. Baca,*
    652 F.3d 1202 (9th Cir. 2011) ................................................................................ 14

*Thurston v. Conopco, Inc.,*
    No. 4:10cv4937 (N.D. Cal.) ..................................................................................... 1

*Turek v. Gen. Mills, Inc.,*
    754 F. Supp. 2d 956 (N.D. Ill. 2010) ..................................................................... 12

*Turek v. General Mills, Inc.,*
    662 F.3d 423 (7th Cir. 2011) ............................................................................ 10, 12

*Verzani v. Costco Wholesale Corp.,*
    432 F. App'x 29 (2d Cir. 2011) .............................................................................. 19

*Von Saher v. Norton Simon Museum of Art at Pasadena,*
    592 F.3d 954 (9th Cir. 2010) .................................................................................. 10

*Wang v. OCZ Tech. Grp., Inc.,*
    276 F.R.D. 618 (N.D. Cal. 2011) ........................................................................... 22

-v-

# TABLE OF AUTHORITIES

**Page(s)**

*Wilens v. TD Waterhouse Group, Inc.*,
    120 Cal. App. 4th 746 (2003)............................................................................... 21

*Williams v. Gerber*,
    552 F.3d 934 (9th Cir. 2008)............................................................................... 14

**MISCELLANEOUS**

FDA's Compliance Policy Guides, § 515.800 ........................................................ 18

58 Fed. Reg. 2302 (Jan. 6, 1993) ........................................................................... 18

58 Fed. Reg.  2407 (Jan. 6, 1993) ........................................................................... 18

**REGULATIONS**

7 C.F.R. § 205.605 ................................................................................................... 19

7 C.F.R. § 205.605(b)............................................................................................... 19

21 C.F.R. § 1.1 ........................................................................................................... 8

21 C.F.R. § 100.1(c)(4) ........................................................................................... 10

21 C.F.R. § 101.4 ............................................................................................ 6, 9, 13

21 C.F.R. § 101.9 ..................................................................................................... 17

21 C.F.R. § 101.22 ..................................................................................... 6, 9, 13, 15

21 C.F.R. § 163.110 ............................................................................................... 5, 6

21 C.F.R. § 163.113 ................................................................................................. 18

21 C.F.R. § 182.20 ................................................................................................... 13

**RULES**

Fed. R. Civ. P. 8 .................................................................................................. 8, 14

Fed. R. Civ. P.12(b) ................................................................................................. 22

**STATUTES**

15 U.S.C. § 2301(6) ................................................................................................. 23

701642756.2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

21 U.S.C. § 301...................................................................................................................... 8

21 U.S.C. § 341 ...................................................................................................................... 8

21 U.S.C. § 343 ........................................................................................................ 8, 9, 10, 15

21 U.S.C. § 343-1 ............................................................................................................... 6, 10

Cal. Bus. & Prof. Code § 17200.............................................................................................. 2

Cal. Bus. & Prof. Code § 17500.............................................................................................. 2

Cal. Civ. Code § 1750............................................................................................................. 2

-vii-

701642756.2

1
2
3
4
5
6
7
8
9
10
11
12

## MEMORANDUM OF POINTS & AUTHORITIES

### SUMMARY OF ALLEGATIONS AND ARGUMENT

This consolidated consumer class action[1] is one of more than seventy-five class actions filed against manufacturers of products labeled as "all natural" or "100% natural."[2]  Here, plaintiffs sue Dreyer's Grand Ice Cream, Inc. ("Dreyer's), alleging that every consumer in the United States who, since 2007, bought any one of fifty-nine different ice cream products made by Dreyer's should get his or her money back because the products were mislabeled as "All Natural" or  as containing "All Natural Flavors."[3]  According to plaintiffs, products marketed as "all natural" – even a product like Häagen-Dazs cookies and cream ice cream – are purchased because the products play an important role in a healthy, wholesome and sustainable diet (*see, e.g.*, FACC ¶¶ 34, 37; Dkt. #1, ¶¶ 2, 20, 24); and plaintiffs continue, such products do not meet consumers' expectations if they contain allegedly

13
14
15
16
17

[1] Plaintiff Skye Astiana filed her initial complaint on June 14, 2011.  Dkt. #1.  On June 27, 2011, plaintiffs Pamela Rutledge-Muhs and Jay Woolwine filed their initial complaint.  Dkt. # 1 in Case No. C11-3164.  On August 18, 2011, the two complaints were deemed "related" and *Rutledge-Muhs* was re-assigned to this Court.  Dkt. #17.  On September 30, 2011, the Court consolidated the two cases for all purposes, designating the *Astiana* complaint as the single active complaint.  Dkt. #27.  On March 23, 2012, the Court issued an order allowing for the filing of a consolidated complaint (Dkt. #37), and on March 30, 2012, the three named plaintiffs, on behalf of themselves and a nationwide consumer class, filed the consolidated complaint that is the subject of this motion (Dkt. #42).

18
19
20
21
22
23
24

[2] In addition to this case and the *Astiana v. Ben & Jerry's* case detailed in the text above, Astiana (represented by her same counsel as here) filed class actions alleging "natural" false advertising claims against **Kashi-Kellogg** (*Sethavanish v. Kashi Co.*, No. 3:11cv2356 (S.D. Cal.) (filed 10/12/2011)) and **Hain Celestial/Jason Natural Products** (*Littlehale v. The Hain Celestial Group, Inc.*, No. 4:11cv06342 (N.D. Cal.).  In addition to those four cases, Astiana's attorneys (on behalf of different plaintiffs) have filed class action complaints alleging "natural" false advertising claims against **Breyers Ice Cream** (*Thurston v. Conopco, Inc.*, No. 4:10cv4937 (N.D. Cal.)), **King Arthur Flour** (*Larsen v. King Arthur Flour Company, Inc.*, No. 3:11cv5495 (N.D. Cal.), **Balance Bar** (*Sethavanish v. Balance Bar Co.*, No. 4:11cv4547 (N.D. Cal.)), **Nonni's Foods** (*Larsen v. Nonni's Foods LLC*, No. 4:11cv4758 (N.D. Cal.)), **Trader Joe's** (*Larsen v. Trader Joe's Company*, No. 3:11cv5188 (N.D. Cal.)), and **ZonePerfect Nutrition** (*Colucci v. ZonePerfect Nutrition Company*, No. 3:11cv4561 (N.D. Cal.)).

25
26
27

[3] Dreyer's manufactures and markets ice cream products under, among others, the Häagen-Dazs®, Dreyer's, and Edy's® brands.  Dreyer's and Edy's branded products are, for all relevant purposes, the same products with the same labels, but with different brand names.  FACC, ¶ 47.  Dreyer's is used as the brand name in the western United States and Edy's is used in the eastern United States.  *Id.*

28

MOTION TO DISMISS FIRST AMENDED CONSOLIDATED COMPLAINT
Case No. C11-02910

synthetic ingredients.  Significantly, plaintiffs do not allege that the products are dangerous in any way or that plaintiffs have suffered any physical injury.  As detailed below, the first amended consolidated complaint ("FACC") rests on mistaken premises and an implausible theory of liability.  It should be dismissed with prejudice.[4]

**1.**     ***Plaintiff Astiana Filed This Lawsuit Based On The Erroneous Assumption That Dreyer's Labels Were The Same As Ben & Jerry's.***  To understand how and why the FACC suffers from dispositive deficiencies, it is instructive to place this action in context with a previous case filed by Astiana and her attorneys, *Astiana v. Ben & Jerry's Homemade, Inc.*, No. C10-4387 (N.D. Cal.).  In *Ben & Jerry's*, Astiana filed a nationwide consumer class action (RJN 1) challenging the "All Natural" labeling statement prominently displayed on Ben & Jerry's ice cream products.  RJN 2.  On May 26, 2011, Judge Phyllis Hamilton denied Ben & Jerry's motion to dismiss.  *See Astiana v. Ben & Jerry's*, 2011 WL 2111796 (N.D. Cal. May 26, 2011).[5]

On June 14, 2011 – three weeks after the *Ben & Jerry's* motion to dismiss order – Astiana filed this action.  Her initial complaint against Dreyer's (Dkt. #1) was a virtual copy of the complaint against Ben & Jerry's (No. C10-4387, Dkt. #20) (RJN 1).  Astiana alleged that Dreyer's "packaged, marketed and sold its Ice Cream products as being 'All Natural' . . . [and] prominently makes the claim "All Natural" on the labels of its Ice Cream products . . . despite the fact they contain alkalized cocoa . . . ."  *See* Complaint, Dkt. #1, ¶¶ 1, 2.  Astiana further alleged – indeed, her entire case was built around the allegation – that Dreyer's has "boldly emblazed . . . 'All Natural' . . . ***on each and every***

---

[4] Plaintiffs' complaint alleges claims for violation of the Magnuson-Moss Warranty Act, common law fraud, and for false advertising under California's statutory consumer protection laws, California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*., False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq*., and Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq*.  Plaintiffs also sue for restitution based on quasi-contract/unjust enrichment.

[5] Judge Hamilton's order was based on the labels and allegations before her relating to Ben & Jerry's products – allegations and labels that, as detailed in the text above, are far different than those challenged in this case.  In denying the motion, Judge Hamilton recognized as "somewhat persuasive" Ben & Jerry's argument that plaintiff's theory of liability was implausible.  *Ben & Jerry's*, 2011 WL 2111796, at *4.

*one* of its ice cream products labels . . . and used the 'All Natural' label to shape its brand and sell its product." *Id.*, ¶¶ 24, 25 (emphasis added).

**2.   *Dreyer's Informed Plaintiffs That Dreyer's Labels Are Not Like Ben & Jerry's, Dreyer's Does Not Label Its Products As "All Natural," And The Theories Against Ben & Jerry's Do Not Apply To Dreyer's.*** After the initial complaints were filed, Dreyer's notified plaintiffs that, unlike Ben & Jerry's products and contrary to plaintiffs' allegations, *none* of Dreyer's ice cream products are labeled as "All Natural."

●   ***Dreyer's/Edy's ice cream products*** – which make up forty-four of the fifty-nine products challenged in the FACC (FACC, ¶ 47, Ex. 10) and the only products purchased by plaintiffs Rutledge-Muhs and Woolwine (FACC, ¶¶ 9, 10) – state that the products contain "All Natural *Flavors*," not that they are "All Natural." *Id.* (emphasis added).  Plaintiffs' initial complaints did not reference the phrase "All Natural Flavors."  Unlike the arguably unconditional statement "All Natural" at issue in the *Ben & Jerry's* case, Dreyer's "Natural *Flavors*" statement addresses statutorily-defined flavor additives in the product, and does not address or relate to other ingredients.  In fact, the most reasonable inference from the statement is that there *are* non-natural ingredients in the product outside of flavor additives.  Accordingly, it does not matter, and certainly has no legal significance, that Dreyer's/Edy's products contain non-natural, synthetic ingredients.  Dkt. #1, ¶ 19; FACC, ¶¶ 27-32. Moreover, and again contrary to Ben & Jerry's labels and plaintiffs' allegations against Dreyer's (FACC, ¶ 2), the labeling statement "All Natural Flavors" is anything but prominent on the label; it is in a font size and location that is hardly visible. *See, e.g.*, FACC, Ex. 12, p. 2 (far left, lower corner), p. 24 (far right, lower middle).

●   As for the ***Häagen-Dazs ice cream products***, the label states "All Natural *Ice Cream*" (FACC, Ex. 11) – again a phrase of limitation, *i.e.*, the *ice cream* in the product is natural, but not, for example, the "chocolate chip" mix-in (RJN 3).  Other statements on the Häagen-Dazs label – including those separately breaking out the ingredients of the ice cream from the mix-ins – make it manifest that the "ice cream" component of the product is treated separately from the mix-ins on the product label. *Id.*

-3-

791642756.2

**3.     *Plaintiffs' Specific False Advertising Allegations Against Häagen-Dazs Products Suffer From Additional Deficiencies*.**  The only alleged non-natural ingredient in Häagen-Dazs products is potassium carbonate (FACC, Ex. 10, p. 3 of 3), an alkali agent used in an alkalization process to increase the pH of cocoa, *i.e.*, to make alkalized or "Dutch" cocoa (FACC, ¶ 29).  Plaintiffs do *not* take issue with the *process* of alkalization, itself; they complain only about the alkali agent used in the process.  FACC, ¶ 29 & notes 18, 19, Ex.10, p. 3 of 3; *see also* Dkt. #1, ¶¶ 2, 22, 24, 25, 29b.  In other words, the fact that highly processed chocolate – and specifically alkalized cocoa – is present in the product does *not* offend plaintiffs' notions of "natural."  That fact alone demonstrates the randomness – and irreconcilability as a matter of fact or law – of plaintiffs' allegations challenging the word "natural."  Ice cream, after all, does not exist in nature, nor does alkalized cocoa.  Plaintiffs, however, are fine with alkalized cocoa, chocolate chips, and the ice cream in Häagen-Dazs products.  They take issue solely with the alkali agent used to process alkalized cocoa and they do so because the alkali is not consistent with such things as a "heart-warming," "wholesome," "healthy," "rustic," "chemical free" and "sustainable" diet that will "increase weight loss."  FACC, ¶¶ 2, 34, 36-39, 48 ("implicit health benefits"); *see also* Dkt. #1, ¶¶ 2, 24.  Plaintiffs' allegations are implausible and arbitrary.

**4.     *Plaintiffs' Definitions Of "Natural" Undermine Plaintiffs' Allegations*.**  Plaintiffs' implausible notions of "natural" are as confused as the multiple and varied definitions of "natural" plaintiffs now offer.  FACC, ¶¶ 15, 24 (Webster's definition),  19, 23 ("common parlance"), 18 (FDA policy), 20-22 (USDA policy), 23 & Ex. 6 (scientific community definition), and 25 (National Organic Program); *see also Astiana v. Ben & Jerry's*, No. 4:10-cv-04387, Dkt. #1, ¶ 17 ("natural" synonymous with "no-molecular-change") (RJN Ex. 4).

Plaintiffs eventually allege that a "reasonable consumer's understanding of the term 'natural' comports with federal regulators and common meaning.  That is, a reasonable consumer understands the term 'natural' to mean that none of the ingredients [is] synthetic and none of the ingredients [is] artificial."  FACC, ¶ 40.  But, as the FACC makes clear (compare ¶¶18-19 (FDA) with ¶ 20-21 (USDA)), there is no common "understanding" even amongst "federal regulators."  What is more, both

-4-

of the differing federal agency pronouncements on "natural" recognize that artificial or synthetic ingredients *may* be present in the product. FACC, ¶ 18 (artificial or synthetic ingredients allowed if "normally expected"), ¶ 22 (artificial or synthetic ingredient allowed if it would not significantly change the character of the product and if disclosed). Plaintiffs' "definition" begs the question as to what is "artificial" or "synthetic," which plaintiffs attempt to fix by offering a separate set of confusing definitions for those words. FACC, ¶¶ 23-26.

Plaintiffs' concession (FACC, ¶ 29 & n. 19; Dkt. #1, ¶ 22, 25) that a product marketed as natural can contain alkalized cocoa (albeit with a "natural" alkali), also shows that their laundry list of alleged "natural," "artificial," and "synthetic" definitions are not only unworkable, but are inconsistent with their own claims. For example, alkalized cocoa is not "natural" under plaintiffs' reading of the USDA "natural" definition, which prohibits a "natural" product from including "ingredients [that] are . . . more than minimally processed," and it is inconsistent with the "common parlance" and "scientific community" definitions plaintiffs allege, in which "artificial" means "something not found in nature," as well as with the alleged Webster's definition, which defines "artificial" as "'anything made by human work.'" FACC, ¶¶ 20, 23, 24. Alkalized cocoa is more than minimally processed is not found in nature, and is made by human work. *See, e.g.*, 21 C.F.R. § 163.110; FACC, ¶¶ 21, 29.[6]

**5.** ***Many Changes In The FACC Make Plaintiffs' Allegations More Susceptible To Dismissal.*** Once put on notice of the errors in their allegations, plaintiffs' counsel corrected their description of the product labels but did not account for the impact of these corrections on their legal theories. In trying to maintain that Dreyer's labels support false advertising claims, plaintiffs succeed only in discrediting their own mantra that labels matter. As it turns out, labels matter to plaintiffs only until they are inconvenient, at which point plaintiffs ignore the actual labeling language and substitute their own "implied" meanings. So, for example, "All Natural Flavors" now actually means "All Natural Varieties" (FACC, ¶¶ 16, 41, n.25), and "All Natural Ice Cream" actually means "All Natural

---

[6] It is worth noting that plaintiffs are unable to apply their own definition of natural to a vast array of ingredients in the challenged products. *See, e.g.*, FACC, notes 20, 27.

Ingredients" (FACC, ¶ 46).  Through such semantic sleight of hand, according to plaintiffs, both "All Natural Flavors" and "All Natural Ice Cream" magically mean the same thing (*i.e.*, "the entire ice cream product" contains *only* all natural ingredients).  FACC, ¶ 2.  And regardless that the "All Natural Flavors" statement is in a font size and label location that makes it barely visible on the Dreyer's/Edy's products (*id.*, Ex. 12), to plaintiffs both "All Natural Flavors" (*id.*) and "All Natural Ice Cream" (*id.*, Ex. 11) are equally "prominent[]" and equally "boldly emblazed" on the ice cream products, and both statements are used equally by Dreyer's "to shape its . . . brands and sell its Ice Creams."  *Id.*, ¶¶ 2, 48, 49.  Plaintiffs make even more incredible allegations, such as that "All Natural Flavors" is actually a "far broader and more encompassing" statement than the unqualified word "Natural."  *Id.*, ¶ 17.  But plaintiffs are not permitted to redefine the English language in ways so obviously contrived.

Based on these and other deficiencies, the FACC should be dismissed on at least the following grounds:

***Preemption.***   "All Natural Flavors," is governed by comprehensive national uniform labeling standards under federal law that strictly regulate what information may and must be included on the label for foods that have flavor additives.  21 C.F.R. §§ 101.22(h), 101.4.  An express preemption statute prohibits state law claims that attempt to impose labeling requirements that are "not identical" to the federal requirements.  *See* 21 U.S.C. § 343-1.  Plaintiffs' claims attempt to do *exactly* what is prohibited – impose labeling requirements about what may and must appear on the label of a product that contains natural flavor food additives based on general California consumer protection law standards and not the federal labeling requirements – and, therefore, are expressly preempted.  Applying these same principles, Judge White dismissed claims against Dreyer's that were preempted under section 343-1 in a ruling recently affirmed by the Ninth Circuit.  *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 2011 WL 159380, at *3-4 (N.D. Cal. Jan. 10, 2011), *aff'd*, 2012 WL 1131526, at *1 (9th Cir. Apr. 5, 2012) (dismissal of labeling claims with prejudice based on express preemption relating to "0g trans fat" statements on ice cream product labeling).  The same result is warranted here.

***Implausibility.***  Plaintiffs' claims fail because "reasonable consumers" would not likely read the product labels at issue in the manner alleged by plaintiffs or reconcile plaintiffs' numerous,

1   contradictory, and contrived definitions of "natural."  *See, e.g.*, *Hill v. Roll Int'l Corp.*, 195 Cal. App.

2   4th 1295 (2011) (reasonable consumer would not believe that green water droplet on label implied that

3   the product was environmentally superior).

4         ***Lack of Materiality/Reliance on "Natural" Statements.***  Plaintiffs have failed to show that the

5   "natural" labeling statements were material and were relied on by them in their purchasing decisions,

6   primarily based on their purchasing habits – which continued after clear notice of what they are now

7   complaining about – as evidenced by the FACC and complaints filed in other actions.  *See, e.g., In Re*

8   *Tobacco II Cases*, 46 Cal. 4th 298, 326, 306 (2009) (class representative must allege actual reliance on

9   the allegedly deceptive or misleading statements and that it was an immediate cause of the purchasing

10   decision).

11         ***Lack of Article III Standing.***  Plaintiffs may not sue for false advertising regarding products

12   they never purchased, and plaintiffs allege specific purchases of only *six* of the fifty-nine products

13   challenged in this action.  *See, e.g., Dysthe v. Basic Research LLC*, 2011 WL 5868307, at *4 (C.D.

14   Cal. June 13, 2011) ("Plaintiff does not have standing to bring her CLRA, UCL, or warranty claim

15   based on a product that she never purchased").

16         ***Lack of Magnuson-Moss Warranty Claim.***  Plaintiffs fail to state a cause of action under the

17   Magnuson-Moss Warranty Act because they do not plausibly allege that Dreyer's ever warranted the

18   products as defect free and they do not plausibly allege that the products are defective.  *See, e.g.,*

19   *Goodman v. Perlstein*, 1989 WL 83452, at *2 (E.D. Pa. July 21, 1989) (only when statement amounts

20   to promise that product has no flaws does it fit within "defect free" category of "written warranty"

21   under the Act; descriptive representations are not representations as to the absence of defect).

22         ***No fraud claims***.  For all of the reasons that plaintiffs do not state a claim, they certainly do not

23   state a claim for the intentional tort of fraud.

24         ***Lack of Quasi-Contract or Unjust Enrichment Claim.***  Plaintiffs have not stated a claim for

25   restitution under quasi-contract or unjust enrichment because there is no quasi-contract and California

26   does not recognize a stand-alone cause of action for unjust enrichment.  Moreover, the claim is

27   duplicative of plaintiff's other causes of action that allow for restitution.

28

**ISSUES TO BE DECIDED (CIVIL L.R. 7-4(A)(3))**

1.      Are the vast majority of plaintiffs' claims preempted based on comprehensive federal food labeling law?

2.      Do plaintiffs fail to state a plausible claim for relief pursuant to Fed. R. Civ. P. 8?

3.      Do plaintiffs fail to sufficient plead materiality and reliance on the "natural" statements?

4.      Do plaintiffs have Article III standing for products they did not purchase?

5.      Do plaintiffs fail to state a claim under the Magnuson-Moss Warranty Act?

6.      Do plaintiffs fail to state a claim for fraud and unjust enrichment?

**ARGUMENT**

**I.   PLAINTIFFS' CLAIMS REGARDING THE "ALL NATURAL FLAVORS" LABELING STATEMENT ARE EXPRESSLY PREEMPTED BY FEDERAL LAW.**

   **A.   The "All Natural Flavors" Statement Is Regulated By the FDCA/NLEA.**

Congress and the FDA have created a detailed, rigorous, comprehensive, and uniform system for labeling food products through the Food Drug & Cosmetics Act ("FDCA") (21 U.S.C. § 301, *et seq.*), as amended by the Nutritional Labeling & Education Act ("NLEA"), and the implementing regulations promulgated under the FDCA and NLEA (21 C.F.R. § 1.1, *et seq.*).  This federal statutory and regulatory scheme is designed to ensure that food is safe and is labeled in a consistent manner that does not mislead consumers.  *See*, *e.g.*, 21 U.S.C. § 341.

In addition to the now-familiar "Nutrition Facts" box found on food labels, the FDCA also establishes requirements for statements regarding the product appearing outside of that box, including statements "made in the label or labeling of [a] food which expressly or by implication . . . characterize[] the level of any nutrient . . . ."  21 U.S.C. § 343(r).  Section 343(r) provides that statements regarding the nutrient content of a product made outside of the Nutrition Facts box are permitted when, among other circumstances, "the claim uses terms which are defined in regulations of the Secretary."  21 U.S.C. § 343(r)(2)(A)(i); *see also N.Y. State Rest. Ass'n v. N.Y. City Bd. Of Health*, 556 F.3d 114, 119 (2d Cir. 2009) (section 343 "prohibits the use of terms that 'characterize[]' the level of any nutrient in a food unless they conform to definitions established by the FDA").

The FDCA/NLEA and implementing regulations expressly define statements on ice cream labels regarding natural or artificial "flavor" additives present in the ice cream.  *See* 21 C.F.R. § 101.22(a)(1) ("artificial flavor");[7] 21 C.F.R. § 101.22(a) (3) ("natural flavor");[8] *see also* 21 U.S.C. § 343(k); 21 C.F.R. § 101.22(h); 21 C.F.R. § 101.4.  Section 343(k) establishes the federal statutory scheme governing statements about substances created to impart flavor (whether natural or artificial) on labels, including ice cream products.  Regulations promulgated under section 343(k) specifically establish that "the label of a food to which flavor is added shall declare the flavor in the statement of ingredients," and such additive may be declared as "natural flavor" or "artificial flavor."  21 C.F.R. § 101.22(h).

Ingredient information can appear elsewhere on the label unless, in the context of the entire label, it is false or misleading in any particular, *e.g.*, is inconsistent with an FDA definition.  *Cf. Red v. Kroger Co.*, 2010 WL 4262037, at *5 (C.D. Cal. Sept. 2, 2010) (where term is "either expressly defined or permitted under federal regulations, the Court must reject Plaintiff's argument that nutrient content claims using these same terms in a regulation-compliant manner are nonetheless 'false and misleading' and beyond the NLEA's express preemption provision").  In sum, federal law requires that the flavoring additive be declared in the statement of ingredients and expressly permits a similar statement elsewhere on the ice cream labels.  *See also* 21 C.F.R. § 101.4 ("flavorings . . . shall be declared according to the provisions of § 101.22") (21 C.F.R. § 101.4 is promulgated under 21 U.S.C. § 343(e)).

---

[7] "The term *artificial flavor* or *artificial flavoring* means any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof. . . ."  21 C.F.R. § 101.22(a)(1).

[8] "The term *natural flavor* or *natural flavoring* means the essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, seafood, poultry, eggs, dairy products, or fermentation products thereof, whose significant function in food is flavoring rather than nutritional. . . ."  21 C.F.R. § 101.22(a)(3).

**B.    The FDCA/NLEA Contains An Express Preemption Provision Covering The "All Natural Flavors" Statement.**

The NLEA includes an express preemption, which provides no state "may *directly or indirectly* establish . . . *any requirement* for the labeling of food *of the type*" regulated by federal law "that is ***not identical*** to the [federal] requirement." 21 U.S.C. § 343-1 (emphasis added).[9]  This express preemption provision covers not only federal labeling statutes, but also labeling requirements established by the regulations promulgated under the statutes.  *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982).  The obvious purpose of the express preemption "was to create uniform national standards regarding the labeling of food . . . ."  *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1086 (2008); *see also Turek v. General Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011) (Posner, J.) ("It is easy to see why Congress would not want to allow states to impose disclosure requirements of their own on packaged food products, most of which are sold nationwide[,] [as] [m]anufacturers might have to print 50 different labels . . . .").[10]

Plaintiffs run headlong into federal preemption by alleging that Dreyer's "All Natural Flavors" labeling statements are false or misleading under California consumer protection laws.  *See, e.g.,*

---

[9] Both 21 U.S.C. § 343(e) and 21 U.S.C. § 343(k), *i.e.*, the federal statutes governing "flavor" label statements, are specifically enumerated sections covered by this express preemption statute.  21 U.S.C. § 343-1(a)(2) & 1(a)(3).

[10] The "not identical" language means what it says.  *See Turek*, 662 F.3d at 427 ("Even if the disclaimers that the plaintiff wants added would be consistent with the requirements imposed by the Food, Drug, and Cosmetic Act, consistency is not the test [for NLEA preemption]; identity is."); *see also* 21 C.F.R. § 100.1(c)(4) (The "not identical" standard precludes any "State requirement [that] directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food" that are "not imposed by or contained in the applicable [federal] provision" or "[d]iffer from those specifically imposed by or contained in the applicable [federal] provision.").  Accordingly, plaintiffs' allegation that they "do not seek . . . to impose a[] standard of conduct that exceeds that which would violate the FDCA" (FACC, ¶ 95) – even assuming it were true – provides no safe harbor from preemption.  Not exceeding is not enough; the state law labeling standards must be "identical" to avoid preemption.  And, of course, this Court need not accept as true plaintiffs' legal conclusions, unwarranted inferences or allegations contradicting facts subject to judicial notice.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010); *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996).

---

MOTION TO DISMISS FIRST AMENDED CONSOLIDATED COMPLAINT
Case No. C11-02910

1   FACC ¶¶ 1, 2, 43, 44.[11]  The FACC unquestionably seeks to impose requirements on the use of an

2   "All Natural Flavors" statement that are not identical to federal requirements.  *See, e.g.,* FACC ¶¶ 2,

3   17, 43, 44, 45, 47.  For example,  plaintiffs allege that "a reasonable consumer understands the use of

4   the term 'flavor' in relation to ice cream to be referring to the *entirety of the ice cream product* (*i.e.*, all

5   of the ingredients of the ice cream)" (FACC, ¶ 41) (emphasis added), and, accordingly, that "none of

6   the ingredients in the Ice Creams" bearing an "All Natural Flavors" statement "would be synthetic or

7   artificial" (FACC, ¶ 43).  That alleged understanding is not identical to federal definition of "flavor"

8   and the use of "natural flavor" labeling statements.  *Degelmann v. Advanced Med. Optics, Inc.*, 659

9   F.3d 835, 842 (9th Cir. 2011) ("California's UCL and FAL required something different than what the

10  FDA required [and] . . . , [a]ccordingly, the class' claims are expressly preempted").

11      Numerous courts, including this one, have dismissed claims as expressly preempted under

12  similar circumstances.  *See, e.g., Carrea*, 2011 WL 159380, at *3-4, *aff'd*, 2012 WL 1131526, at *1

13  (dismissal of labeling claims with prejudice based on express preemption re "0 Grams of Trans Fat" on

14  dessert pack labels).  And, in reasoning directly applicable here, the Central District of California

15  recently held that a plaintiff's claims sought to "enjoin the use of the very term permitted by the NLEA

16  and its accompanying regulations" and the "claims must therefore fail because they would necessarily

17  impose a state-law obligation for trans fat disclosure that is not required by federal law."  *Peviani v.*

18  *Hostess Brands, Inc.*, 750 F. Supp. 2d 1111, 1119 (C.D. Cal. 2010).[12]  The same result is warranted

19  here.

20  _____

21  [11] Significantly, in denying the "natural" preemption argument that Ben & Jerry's made, Judge
    Hamilton (citing *Lockwood v. ConAgra Foods*, 597 F.Supp.2d 1028 (N.D. Cal. 2009)) recognized the

22  validity of the "flavors" preemption argument Dreyer's makes here. *Ben & Jerry's*, 2011 WL
    2111796, at *9; *see also* April 6, 2011 Transcript of Proceedings, pp. 9-10 ("[T]his isn't a natural

23  flavor case.  This isn't about the flavor.  This is about the constituent products -- ingredients in the
    products") (RJN 5); *see also Coyle v. Hornell Brewing Co.*, 2010 WL 2539386, at *3 (D. N.J. June 15,

24  2010) ("The FDA has implemented only one regulation concerning the use of the term 'natural,'
    distinguishing natural flavoring from artificial flavoring for the 'labeling of spices, flavorings,

25  colorings, and chemical preservatives'").

26  [12] *See also, e.g., Dvora v. Gen. Mills, Inc.*, 2011 WL 1897349, at *3-6 (C.D. Cal. May 16, 2011)

27  (express preemption where plaintiff sought to impose requirements "not identical" to federal regulatory

28                                                      (Continued...)

1    Plaintiffs anticipated this precise preemption argument.  *See, e.g.*, FACC ¶¶ 4, 94-95.  But, as

2    explained below, plaintiffs' conclusory, self-serving say-so that their claims "seek to enforce the same

3    standard of conduct required by federal law," and that they "expressly disclaim any attempt to hold

4    [Dreyer's] to a higher standard of conduct than what is required under federal law" (*id.*) is ineffectual

5    against, and belied by, the record detailed in this motion.[13]

6    **C.    Plaintiffs' Impermissibly Conflate The "Natural Flavor" Statement With The Entirely-Separate Concept Of A Product's "Characterizing Flavor."**

7

8        In a separate attempt to allege that Dreyer's labels are false or misleading, plaintiffs conflate

     and confuse "Natural Flavor" with the entirely different concept of a product's "characterizing flavor."

9    FACC, ¶¶ 50-53 .  Federal labeling regulations specifically define "natural flavor"  and "artificial

10   flavor."  *See* notes 7, 8, *supra*.  In so doing, the law separates out for special treatment ingredients that

11   are formulated to be a "flavor" additive.  *See* page 9, *supra*.  For such flavor additive ingredients,

12   federal law requires that the label designate the flavor as "natural" or "artificial" per the detailed

13   definitions.  *Id.*  "Flavors" (whether "natural" or "artificial") are additives ***derived*** from a particular

14

15   ───────────────────────

16   (...Continued)

17   scheme); *Red v. Kroger Co.*, 2010 WL 4262037, at *6-7 (C.D. Cal. Sept. 2, 2010) (express preemption
     where plaintiffs were "seek[ing] to enjoin exactly what federal law expressly permits" with regard to

18   labeling statements on food products); *Chacanaca v. Quaker Oaks Co.*, 752 F. Supp. 2d 1111, 1119-21
     (N.D. Cal. 2010) (express preemption where plaintiffs sought to impose food labeling requirements not

19   identical to FDCA and NLEA requirements); *Turek v. Gen. Mills, Inc.*, 754 F. Supp. 2d 956, 962 (N.D.
     Ill. 2010) (dismissal of labeling claims with prejudice because of the "particularly strong preemptive

20   language of the NLEA, its thorough regulation of fiber, and the inconsistent labeling that plaintiff's
     claim would require"), *aff'd*, *Turek*, 662 F.3d at 427 (Posner, J.) ("The disclaimers that the plaintiff

21   wants added to the labeling of . . . defendants' . . . chewy bars are not identical to the labeling
     requirements imposed on such products by federal law, and so they are barred").

22

23   [13] Though not necessary to prevail on this preemption argument, Dreyer's labels comply with federal
     law regarding labeling of "natural flavors."  For example, Rutledge-Muhs alleges she purchased

24   "Dreyer's 'All Natural Flavors' Mint Chocolate Chip Ice Cream."  FACC, ¶ 9.  That product is
     pictured in Exhibit 12 to the FACC at page 21 of 24.  The ingredients listed include two "natural

25   flavor" additives, one used in the chocolaty chips and one used as a stand alone ingredient.  No
     "artificial flavors" (as defined under federal regulations) are listed or contained in the product.  And, of

26   course, many of the other ingredients could be said to "impart flavor" (sugar, salt, corn syrup), but
     none are in the product as a flavor additive as defined under federal law.

27

28

MOTION TO DISMISS FIRST AMENDED CONSOLIDATED COMPLAINT
Case No. C11-02910

1   thing, as opposed to the actual thing itself.  Fresh diced strawberry, for example, is *not* a "flavor"

2   additive as defined under federal law.  But, if the flavoring constituent of a strawberry is extracted

3   from the strawberry to produce a flavor additive, that ingredient may qualify as a "natural flavor"

4   under the law.  Note 8, *supra*.  The question of what imparts flavor in a product is a different question

5   from whether a given ingredient is a defined "flavor" (whether natural or artificial) under federal law.

6   *See* 21 C.F.R. § 101.4 ("Food; designation of ingredients;" explaining that flavoring is governed by 21

7   C.F.R. § 101.22); *see also* 21 C.F.R. § 101.22(a)(1) & (3) (artificial flavors consist solely of those

8   specifically-defined substances that "impart flavor;" natural flavors are those whose "significant

9   function in food is flavoring rather than nutritional).

10         In contrast, the "characterizing flavor" of a product is a separately-defined concept under

11   federal regulations, not specifically related to a product's ingredients, including flavoring additives.

12   Regulations governing "characterizing flavor" allow a manufacturer to explain to consumers, through

13   the name of the product, what the product *tastes* like.  *See* 21 C.F.R. § 101.22(i) (setting forth

14   standards for a label making representations as to the "primary recognizable flavor(s);" the

15   manufacturer desires to "designate the type of flavor in the food other than through the statement of

16   ingredients, such flavor shall be considered the characterizing flavor . . .").  A food product's

17   "characterizing flavor" or "taste" can be (and often is) derived from many ingredients that are *not*

18   flavor additives under the regulations, *e.g.*, fresh diced strawberries.[14]

19

20

21

---

22   [14] It follows, therefore, that a substance that imparts flavor, but is not a "natural flavor" (*e.g.*, fresh
     diced strawberry) is not by default (as plaintiffs argue, FACC, ¶¶ 29, 30) an "artificial flavor."  It is

23   not, as plaintiffs argue, a binary analysis, *i.e.*, an ingredient that imparts flavor is *either* a natural flavor
     *or* an artificial flavor.  Many ingredients that impart flavor are neither.  Accordingly, even assuming

24   (as plaintiffs allege) that alkalized cocoa and propylene glycol monostearate "impart[] flavor" and they
     do not fit under the definition of a "natural flavor," they are not then defaulted to the status of artificial

25   flavors.  *Id*.  What is more, there is strong regulatory support that alkalized cocoa is, if a "flavor" at all,
     a natural flavor.  *See, e.g.*, 21 C.F.R. § 182.20 (§ 182.20 is referenced in the definition of "natural

26   flavors" and itemizes the natural essence or extractives obtained from cocao as a natural flavor).

27

28

II.   **SETTING ASIDE PREEMPTION, PLAINTIFFS' ALLEGATIONS DO NOT ALLEGE A PLAUSIBLE FALSE ADVERTISING THEORY.**

Plaintiff's remaining allegations, meanwhile, simply fail to state a cause of action.  Fed. R. Civ. P. 8 requires complaints to contain a "short plain statement . . . showing that the pleader is entitled to relief."  Under this standard, as the Supreme Court recently confirmed, a complaint must plead "enough facts to state a claim to relief that is *plausible on its face*." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added).  And a claim is plausible on its face only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This analysis provides a critical gatekeeping function, because claims must be sufficiently plausible "such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  Under this standard, as applied to the substantive law of false advertising and the allegations in the FACC, neither plaintiffs' allegations concerning Dreyer's/Edy's products nor Häagen-Dazs products "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The substantive standard that governs here is settled: a complaint does not state a valid false advertising claim unless it makes plausible allegations that the advertising is "likely" to deceive a "reasonable consumer." *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995); *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003); *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1300-01 (2011) (the "reasonable consumer" standard controls false advertising allegations brought under California consumer protection laws); *see also Williams v. Gerber,* 552 F.3d 934, 938 (9th Cir. 2008) ("Appellant's claims under" UCL, FAL and CLRA "are governed by the 'reasonable consumer' test").  Under this standard, plaintiffs' allegations about being *personally* deceived by a label are not legally sufficient to establish a likelihood that a "reasonable consumer" would be deceived.  *Hill*, 195 Cal. App. 4th at 1303-04.  By the same token, the "reasonable consumer" is not the "least sophisticated consumer" or an "unwary consumer," but "[r]ather, California courts consistently have looked to the ordinary consumer within the larger population." *Id.* at 1304 (citing *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 505-06, 510 (2003)).  Here,

1  plaintiff's false advertising clams fail because a reasonable consumer would not read the products'

2  labels in the manner alleged by plaintiff. *See Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (2003)

3  ("[T]he primary evidence in a false advertising case is the advertising itself").

4       As detailed above, the Dreyer's/Edy's products are labeled "All Natural Flavors," *not* "All

5  Natural," "100% Natural" or "natural." What is more, the "All Natural Flavors" statement is perhaps

6  the most inconspicuous statement on the label – given its font size and location, it is hardly visible

7  when looking at the product. *See* FACC, Ex. 12, p. 2 of 24 ("All Natural Flavors" in lower left corner,

8  right below "Splenda" button).[15] There is no basis, let alone a plausible basis, for plaintiffs'

9  allegations that a reasonable consumer would (i) view the "All Natural Flavors" statement, (ii) likely

10 be deceived that it meant that *all* ingredients in the product were natural, and (iii) materially rely upon

11 that mistaken belief as part of the decision to purchase the product.[16]

12 _____

13 [15] Given that "Splenda" is sucralose-based *artificial sweetener*, it is not plausible that a reasonable
   consumer would see the "All Natural Flavors" statement together with the "Splenda" button and

14 conclude, as plaintiffs allege, that the product contains only all natural ingredients.

15 [16] Plaintiffs' primary allegation in support of transforming the "All Natural Flavors" statement into
   "All Natural Ingredients" is a cite to Dreyer's "flavor finder" website page. FACC, ¶ 16 & n. 25,

16 Ex. 1. Plaintiffs allege that Dreyer's uses the word "flavor" on its website generically to refer to each
   of its product varieties and, therefore, by using the statement "All Natural Flavors" on the product

17 label, Dreyer's really must be meaning "All Natural *Variety*" or "All Natural *Product*," *i.e.*, that all
   ingredients are "natural." Plaintiffs' argument is baseless. As an initial matter, if accepted it would

18 swallow federal preemption (*see* pages 8-11, *supra*), because a plaintiff could always allege that a
   labeling statement was being used generically (not per its regulated meaning) and then be subject to

19 false advertising claims under state consumer protection law. Moreover, it is axiomatic that a
   regulated term, especially one with other possible meanings such as "flavor," may be used generically

20 in a non-regulated context without losing its regulated meaning when used in a regulated context. If it
   were otherwise, every regulated word would be off limits for use in any non-regulated purpose. And,

21 or course, Dreyer's "flavor finder" page does not even use a regulated term. The regulated terms are
   "natural flavors" and "artificial flavors," not the word "flavor" or phrase "flavor finder." FACC, Ex. 1;

22 notes 7, 8, *supra*. In fact, the word "flavor" has at least two regulated meanings, the "characterizing
   flavor" (or taste) of a product (FACC, ¶¶ 51-53), and with respect to an ingredient that is a flavor

23 additive (FACC, ¶¶ 29, 30, 44 (quoting but not citing to flavor additives regulation, 21 U.S.C. §
   343(k); 21 C.F.R. § 101.22(h)). Plaintiffs theory prohibits those two meanings. Finally, the use of the

24 word "flavor" in the "flavor finder" website page is exactly what plaintiffs concede; the word is a
   shorthand for "variety" or "product." But, the ice cream varieties themselves (all of which can be

25 located in Dreyer's "flavor finder") establish that "flavor" has more than one meaning. The varieties

26 that can be found via the "flavor finder" include varieties labeled as containing "natural flavors," as

27

28                                                                  (Continued...)

-15-

Häagen-Dazs products are not labeled "All Natural" either.  The product label states "All Natural *Ice Cream*."  FACC, Ex. 11.  What is more, the statement "All Natural Ice Cream" comes *after* – and on a different line and in a different font and size from – the identification of the product's mix-ins.  So, for example, the product says "cookies & cream," and on a separate line below that says "All Natural Ice Cream."  RJN 3; FACC, Ex. 11.  Plaintiffs' theory fails to reconcile the fact that the words "All Natural" do not directly modify the words "cookies & cream," and instead substitute the concept of "Ingredients" for "ice cream" after "All Natural."  This is not a matter of mere semantics.  As established by the ingredient list on Häagen-Dazs products, the label, itself, differentiates – in separate sentences with bolded headings and periods – the ingredients *in the ice cream* from the *non ice cream ingredients* (*i.e.*, the mix-ins).   For example, chocolate chip cookie dough ice cream lists its ingredients as:

> **VANILLA ICE CREAM**:  CREAM, SKIM MILK, SUGAR,  EGG YOLKS, VANILLA EXTRACT.  **COOKIE DOUGH PIECES**: WHEAT FLOUR, SUGAR, BROWN SUGAR (MOLASSES, SUGAR), BUTTER (CREAM, SALT), WATER, FRUCTOSE, CORN SYRUP SOLIDS, CORN OIL, SALT, BAKING SODA, NATURAL FLAVOR. **CHOCOLATY CHIPS**: SUGAR, COCONUT OIL, COCOA PROCESSED WITH ALKALI, COCOA, MILKFAT, SOY LECITHIN, NATURAL FLAVOR.

RJN Ex. 3 (bold in original).  Alkalized cocoa is not one of ingredients in the "ice cream" base of the product and, therefore, the ice cream is "all natural" under even plaintiffs' definition of "natural."[17] Tellingly, plaintiffs' recreations of the ingredient lists on the challenged Häagen-Dazs products (FACC, Ex. 11) *omit* entirely the headings and periods on five of the challenged products that separate

_____

(...Continued)

well as varieties labeled "*artificial* flavors," or "*natural and artificial* flavors," dispelling entirely plaintiffs' theory that Dreyer's uses the word "flavor" in the name "flavor finder" to mean the same thing as the word "flavor" in the phrase "natural flavors."

[17] In addition to chocolate chip cookie dough, this same analysis applies equally to at least the following Häagen-Dazs products challenged in the FACC: banana split, caramel cone, java chip, mint chip, peppermint bark, and white chocolate raspberry truffle.

MOTION TO DISMISS FIRST AMENDED CONSOLIDATED COMPLAINT
Case No. C11-02910

1  the "all natural ice cream" ingredients from the "mix-in" in product where the alkalized cocoa is not an

2  ingredient in the ice cream base, and plaintiffs do not show bolded headings on any.[18]

3       Plaintiffs' allegations challenging Häagen-Dazs fail for the additional reason that their primary

4  false advertising theory is not plausible.  First, plaintiffs allege that ice cream marketed as "natural" is

5  associated with some sort of health benefit and is part of a healthy, wholesome diet.[19]  But reasonable

6  consumers do not likely buy ice cream for its health characteristics or to round out a wholesome diet.

7  Reasonable consumers likely understand that ice cream – whether marketed as "natural" or not – is a

8  delicious dessert treat to be consumed in moderation and not because it is a healthy component of a

9  wholesome diet.  *Cf. Carrea*, 2011 WL 159380, at *5-6, *aff'd*, 2012 WL 1131526, at *1 (various

10 descriptors do not lead reasonable consumers to believe that some ice cream products are healthier

11 than others).

12      Second, plaintiffs allege that the use of a synthetic alkali somehow negates their expectation

13 that a natural ice cream is a healthy and wholesome part of a well-rounded diet.  But there is no basis

14 whatsoever for that allegation and plaintiffs certainly do not provide any.  In fact, given the quality,

15 consistency, economy, and uniform and excellent results associated with a synthetic alkali, a

16 reasonable consumer and even a "health nut" would likely prefer a synthetic alkali made in a clean,

17 controlled environment over a so-called "natural" alkali mined from dirt.  *Cf.* 21 C.F.R. § 101.9(k)(4)

18 _____

19 [18] This is almost assuredly because plaintiffs pulled the ingredient list from the Dreyer's website and not the product packaging itself.  That is inappropriate for at least two reasons.  First, plaintiffs do not

20 allege to have ever visited, let alone relied upon, Dreyer's website.  Second, for each product's nutrition fact panel, including ingredients, the website clearly states that "Please be sure to check the

21 actual product label since the information here may vary by market."  http://haagen-

22 dazs.com/ingredients/ingredient.aspx?id=66&name=chocolate+chip+cookie+dough&seg=ice+cream.

23 [19] Plaintiffs claim to be focused on maintaining healthy, wholesome diets.  They believe natural foods are better and that "labeling of products as 'All Natural' carries implicit health benefits important to

24 consumers."  FACC, ¶¶ 2, 36-39, 48; *see also* Dkt. #1, ¶¶ 2, 24.  According to plaintiffs, "consumers are health conscious and look for wholesome, natural foods to keep a healthy diet."  *Id.*, ¶ 34.

25 Plaintiffs are and have been "very concerned about and tried to avoid consuming foods that are not natural, such as foods using synthetic or artificial chemical ingredients."  *Id.*, ¶ 7, 9, 10.  Further, they

26 claim they have paid a premium for foods that are all natural and have refrained from buying their counterparts that were not all natural.  *Id*.

27

28

1  (FDA considers food misbranded if label suggests that "a natural vitamin . . . is superior to an added or

2  synthetic vitamin").

3      Third, in many contexts, defining "natural" is one of degree.  For example, if the word

4  "natural" follows one of plaintiffs' definitions – *i.e.*, that something is "artificial" if it is "not found in

5  nature" (FACC, ¶ 23) – then no ice cream could be called "natural."  The same could be said for many

6  things that reasonable consumers likely would consider natural, including table sugar, flour, butter,

7  cheese, or pasteurized milk.

8      The U.S. Food and Drug Administration ("FDA") recognizes the difficulty of defining

9  "natural" and has decided not to attempt a definition:

10          From a food science perspective, it is difficult to define a food product
           that is "natural" because the food has probably been processed and is no
11          longer the product of the earth.  That said, FDA has not developed a
           definition for use of the term natural or its derivatives . . . .

12  FDA, FDA Basics, http://www.fda.gov/AboutFDA/Transparency/Basics/ucm214868.htm (page last

13  updated April 4, 2012) (FACC, Ex. 3).

14      Though it has never defined "natural," in 1993 the FDA offered an advisory policy regarding

15  use of the term: "natural" means that "nothing artificial or synthetic has been included in, or has been

16  added to, a food *that would not normally be expected to be in the food*."  *See* 58 Fed. Reg. 2302, 2407

17  (Jan. 6, 1993).  By its own informal policy, then, the FDA expressly recognizes that some synthetic

18  ingredients – i.e., those not fitting into the category of things "that would not normally be expected to

19  be in the food" – may be present in products labeled all natural.  Conversely, if an ingredient would be

20  expected to be in the food, a "natural" labeling statement may be appropriate whether or not the

21  ingredient is synthetic.

22      Plaintiffs agree that the presence of alkalized cocoa in ice cream marketed as "natural" is

23  expected,[20] that potassium carbonate is the most commonly used of the available alkalis for alkalized

24

25  [20] Federal law is in accord.  The federal "standard of identity" for cocoa (21 C.F.R. § 163.113) permits
    the use of alkali, among other ingredients, and when used it does not alter the "natural" status of the
26  cocoa when it is being used as a flavor.  *See, e.g.*, FDA's Compliance Policy Guides, § 515.800 (cocoa
    that meets the standard of identity set forth at 21 C.F.R. § 163.113 is natural).
27

28

1  cocoa, and the potassium carbonate used as an alkali in Dreyer's products is synthetic.  FACC, ¶ 29 &

2  n.18.  Given these alleged facts, it is highly implausible that a reasonable consumer would likely

3  expect that the cocoa in a natural ice cream was alkalized with a so-called natural alkali agent.

4  Certainly, plaintiffs offer no factual support for their conclusory allegations to that effect.  In fact, it is

5  far more likely that a synthetic alkali would be expected in a product that contains alkalized cocoa.

6  After all, something "commonly used," as plaintiffs concede, also would be "normally expected," as

7  the FDA "natural" advisory policy provides.

8      This point is underscored by the National Organic Program found at 7 C.F.R. § 205.605, which

9  sets out the criteria under which foods can be certified as "organic."  Plaintiffs are quick to point out

10  that potassium carbonate is listed as a synthetic in the federal regulations (FACC, ¶ 29), but they fail to

11  disclose that potassium carbonate is a synthetic that is "*allowed* as an ingredient in or on processed

12  products labeled as 'organic' . . . ."  7 C.F.R. § 205.605(b) (emphasis added).  Plaintiffs do not explain

13  how the same alkali certified for use in an "organic" product under federal law somehow is an alkali

14  that a reasonable consumer likely would not expect to be in a "natural" product containing alkalized

15  cocoa.

16      Applying California law, courts have dismissed numerous false advertising complaints

17  because plaintiffs' theory liability was not plausible.  *See Carrea*, 2011 WL 159380, at *5-6, *aff'd*,

18  2012 WL 1131526, at *1; *Rosen v. Unilever U.S., Inc.*, 2010 WL 4807100, at *5-6 (N.D. Cal. May 3,

19  2010); *McKinniss v. Sunny Delight Beverages Co.*, 2007 WL 4766525, at *4-5 (C.D. Cal. Sept. 4,

20  2007); *Verzani v. Costco Wholesale Corp.*, 432 F. App'x 29 (2d Cir. 2011); *Baltazar v. Apple, Inc.*,

21  2011 WL 3795013, at *5-6 (N.D. Cal. Aug. 26, 2011); *Dvora*, 2011 WL 1897349, at *8.  Plaintiffs'

22  allegations should be treated no differently.

23  **III.   PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE MATERIALITY OF OR RELIANCE
           ON THE "NATURAL" STATEMENTS.**

24      In two separate ways, plaintiffs fail to plausibly allege that the challenged "natural" statements

25  were material to or were relied upon in plaintiffs' purchasing decision.  First, while plaintiffs generally

26  allege that the statements were significant and material to their purchasing decisions (FACC, ¶¶ 7, 9,

27  10), and separately provide the specific reasons *why* a "natural" statement would be material in the

28

-19-

1   purchasing decision (*id.*, ¶¶ 2, 34, 36-39, 48), plaintiffs never specifically allege which of the reasons

2   applies to them.  This is significant because many of the numerous "materiality" reasons that plaintiffs

3   allege are entirely incompatible with the decision to buy an ice cream product, *e.g.*, "increase weight

4   loss."  FACC, ¶ 37.[21]

5          Second, plaintiffs continued their purchases of "natural" products with alleged artificial

6   ingredients – including those at issue in this action – well *after* they were on notice of the exact

7   problem identified in the FACC.  For example, as late as September 2011, one full year *after* she filed

8   her lawsuit against Ben & Jerry's, Astiana was purchasing Dreyer's products that she alleged were

9   marketed as "all natural" but contained cocoa processed with alkali – the same ingredient she

10  challenged in her Ben & Jerry's lawsuit.  FACC, ¶ 7; *see also* RJN 4.  Alkalized cocoa was listed on

11  the ingredient list of the products Astiana purchased.  FACC, ¶ 2.  Likewise, as late as September and

12  October 2011 – four months after suing Dreyer's and more than a year after suing Ben & Jerry's –

13  Astiana purchased products marketed as "natural" but containing the alleged non-natural ingredient

14  glycerin, one of the ingredient she challenges here.  FACC ¶ 22.  She then filed a federal consumer

15  class action lawsuit for false advertising.  *See Littlehale v. The Hain Celestial Group*, No. 4:11cv6342

16  (N.D. Cal.) (filed 4/6/2012), Dkt. #29,  ¶¶ 13, 75www, 77m & n (RJN 6).[22]  Under this record,

17  plaintiffs are unable to show, as required, "that [Dreyer's] misrepresentation is an 'immediate cause' of

18  the plaintiff's conduct by showing that in its absence the plaintiff 'in all reasonable probability' would

19  not have engaged in the injury-producing conduct."  *In re Tobacco II Cases*, 46 Cal. 4th 298, 326

20  _____

21  [21] Plaintiffs recognize this very issue in one their attachments to the FACC, where the FDA makes
    clear that consumers (including, of course, plaintiffs here) who equate foods marketed as "natural" as

22  having a certain healthiness would be mistaken and, specifically, that ice cream marketed as "natural"
    should not be considered "healthy" if high in fat and saturated fat.  FACC, Ex. 2.

23  [22] *See* similar allegations in the numerous complaints Astiana has filed in the *Kashi-Kellogg* actions.

24  *Sethavanish v. Kashi Company*, No. 11cv4453 (N.D. Cal.) (filed 9/7/2011), Dkt #1, ¶¶ 2, 8, 25- 33
    (until September 2011, purchased products marketed as "all natural" and containing glycerin);

25  *Sethavanish v. Kashi Company*, No. 3:11cv2356 (S.D. Cal.) (filed 10/12/2011), Dkt. #1, ¶¶ 2, 8, 26- 34
    (until October 2011, purchased products marketed as "all natural" and containing glycerin) (Astiana

26  later attempted to change some of these purchasing allegations; *see Astiana v. Kashi Company*, No.
    3:11cv1967 (S.D. Cal.) (filed 2/21/2012), Dkt. #49, ¶ 8).

27

28

MOTION TO DISMISS FIRST AMENDED CONSOLIDATED COMPLAINT
Case No. C11-02910

1    (2009) (citation and quotation marks omitted); *Coyle v. Hornell Brewing Co.*, 2011 WL 3859731, at *1

2    (D. N.J. Aug. 30, 2011) (plaintiff could not be adequate class representative in false advertising action

3    where she hired attorney seven months before her complaint was filed and where she alleged that "a

4    mere three weeks prior to filing her Complaint . . . she was deceived into purchasing [the product] that

5    had been labeled 'All Natural'").[23]

6        If Astiana really is so concerned about purchasing only those products that meet her notions of

7    "natural" (FACC, ¶ 7) – and if she was aware for a year, as is established in her complaint against Ben

8    & Jerry's, that ice cream marketed as "natural" contained alkalized cocoa – why was she not paying

9    closer attention to the ingredient list on the Dreyer's products, which clearly disclosed alkalized cocoa?

10   *See* FACC, ¶¶ 2, 29 (labels disclose alkalized cocoa), Ex. 4 ("the label provides consumers with

11   information to decide whether to purchase the food [and] . . . for the food product at issue . . . , the

12   consumer would know from the label whether the product contained HFCS"); *see also id.*, ¶ 34

13   ("package labels, including nutrition labels, are vehicles that convey nutrition information to

14   consumers that they can and do use to make purchasing decisions"); RJN 3.[24]  Simply put, plaintiffs'

15   allegations are insufficient – indeed, are directly undermined – on the issues of materiality and

16   reliance.  *See In Re Tobacco II Cases*, 46 Cal. 4th at 306 ("a class representative proceeding on a claim

17   of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the

18   allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the

19   _____

20   [23] According to the FACC, Astiana purchased "Dreyer's . . . Chocolate and Rocky Road . . . every two

21   months . . . while [she] was an Oregon resident," which was until "September 2011" – *i.e.*, she was
     purchasing the products she now challenges *three months after* initiating this lawsuit.  FACC, ¶ 7

22   (contrast with specific end dates on purchases of Häagen-Dazs, *id.*).  Rutledge-Muhs and Woolwine
     appear to still be purchasing the challenged products.  FACC, ¶¶ 9, 10 (both are alleged to be *current*

23   California residents and both allege that "while . . . California resident[s]" they purchase products
     "every other month" or "every month," respectively).

24   [24] Like alkalized cocoa (FACC, ¶ 29), high fructose corn syrup ("HFCS") can come in either a

25   synthetic or non-synthetic form.  Accordingly, the FDA's recognition that the disclosure of HFCS
     (without indicating which type) provides consumers with sufficient information, undermines plaintiffs'

26   assertion (FACC, ¶¶ 29, 33, 42) that Dreyer's does not provide sufficient information to consumers by
     its disclosure of the type of alkali that is used in its "Cocoa Processed with Alkali."

27

28

element of reliance in ordinary fraud actions"); *Wilens v. TD Waterhouse Group, Inc.*, 120 Cal. App. 4th 746, 754 (2003) ("Relief under the CLRA is specifically limited to those who suffer damage, making causation a necessary element of proof").

## IV.   PLAINTIFFS LACK STANDING UNDER ARTICLE III TO SUE ON FIFTY-THREE OF THE FIFTY-NINE CHALLENGED PRODUCTS.

To establish standing necessary to assert a claim for relief, plaintiffs must allege they have suffered "injury-in-fact." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  The injury-in-fact requirement obligates a plaintiff to demonstrate the "invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 561 (citations and quotations omitted).  In the context of class actions, the named plaintiff may not rely on injuries the putative class may have suffered and instead the law demands that "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (internal quotations omitted).

On this basis alone, the claims as to the fifty-three unpurchased products must be dismissed as plaintiffs do not have Article III standing to sue for false advertising regarding products they never purchased.  *See* FACC, ¶¶ 7, 9, 10 (plaintiffs specifically allege purchases of only six discrete products: Häagen-Dazs chocolate, Häagen-Dazs chocolate peanut butter, Dreyer's chocolate, Dreyer's rocky road, Dreyer's mint chip, and Dreyer's chocolate peanut butter cup).  Courts within this district dismiss, on standing grounds, claims in consumer class actions that purport to premise relief on products the named plaintiff has not purchased.  *See, e.g., Dysthe v. Basic Research LLC*, 2011 WL 5868307, at *4 (C.D. Cal. June 13, 2011) ("Plaintiff does not have standing to bring her CLRA, UCL, or warranty claim based on a product that she never purchased") (summary judgment), *citing Johns v. Bayer Corp.*, 2010 WL 2573493, at *3 (S.D. Cal. June 24, 2010) (motion to dismiss); *see also Carrea*, 2011 WL 159380, at *3 (N.D. Cal. Jan. 10, 2011) (no standing where plaintiff did not purchase products); *Mlejnecky v. Olympus Imaging Am. Inc.,* 2011 WL 1497096, at*4 (E.D. Cal. Apr. 19, 2011) (dismissing claims regarding a camera model she had never purchased – even though plaintiff alleged that it had the same underlying defects as a model she did purchase and defendant used the same

1  advertisement for all Stylus cameras); *Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618, 632-33 (N.D.

2  Cal. 2011) (in declining to grant motion to strike on a similar argument, court acknowledged that

3  "[plaintiff's] inability to allege injury based on products that he did not purchase may ultimately

4  subject those claims to proper dismissal pursuant to a Rule 12(b) motion or motion for summary

5  judgment").

6        Again, this is not a matter of mere semantics.  As Exhibits 11 and 12 to the FACC establish,

7  the challenged products have different ingredients and different labels and there is no legal or factual

8  basis to assume (and plaintiffs certainly offer none) that consumer purchases of the different products

9  are all based on the same idiosyncratic purchasing habits of plaintiffs and their idealized notions of the

10  meaning and importance of a "natural" statement on the label.

11  **V.      PLAINTIFFS HAVE FAILED TO PLEAD A CLAIM UNDER THE MAGNUSON-MOSS WARRANTY ACT.**

12        Plaintiffs' Magnuson-Moss Warranty claim (FACC, ¶¶ 70-80) is deficient because plaintiffs

13  have not (and cannot) allege Dreyer's has provided a warranty as defined in the Act.  The Act provides

14  that a "written warranty" is a promise that the nature of a product's material or workmanship is (1)

15  "defect free," or (2) "will meet a specified level of performance over a specified period of time," or (3)

16  is a promise to "refund, repair, replace, or take other remedial action . . . in the event that such product

17  fails to meet the specifications set forth in the undertaking."  15 U.S.C. § 2301(6).[25]  Here, plaintiffs

18  contend that the "affirmations of fact regarding the nature and qualities of the ingredients . . . were

19  intended to convey . . . a written promise that the ingredients in the products, including the flavor

20  ingredients, were *free of a particular type of defect* (*i.e.*, that they were not synthetic or artificial)."

21  FACC, ¶ 76 (emphasis added).

22        But descriptive representations as to a product's characteristics, such as "natural" are not

23  representations as to the absence of defect in the product and are not actionable under the Act.

24

25  ─────────────────

26  [25] The Act does not provide "a federal private cause of action for breach of all written express warranties."  *Skelton v. Gen. Motors Corp.*, 660 F.2d 311, 316 (7th Cir. 1981); *see also Milicevic v.*

27  *Fletcher Jones Imports, Ltd.,* 402 F.3d 912, 917 (9th Cir. 2005).

28

1   *Goodman v. Perlstein*, 1989 WL 83452, at *2 (E.D. Pa. July 21, 1989).  Only when a statement

2   amounts to a promise that the product has no flaws does it fit within the "defect free" category of a

3   "written warranty" under the Act.  *Id.*  Plaintiffs do not allege any facts that would support the

4   conclusion that Dreyer's promised a defect free product or, separately, that the presence of synthetic

5   and/or artificial ingredients in the products renders the products defective.  *See In re Sears, Roebuck &*

6   *Co.*, 2006 WL 1443737, at *3-4 (N.D. Ill. May 17, 2006) (representation that Craftsman tools were

7   "Made in USA" did not constitute a "written warranty" under the Act).

8   **VI.   PLAINTIFFS' FRAUD AND UNJUST ENRICHMENT CLAIMS ALSO FAIL.**

9           Plaintiffs' causes of action for fraud and for restitution based on quasi contract or unjust

10   enrichment should be dismissed for the same reasons stated above, *i.e.*, Dreyer's has not breached any

11   obligations to plaintiffs and Dreyer's has not been unjustly enriched.  As for fraud, plaintiffs do not

12   come close to alleging, with particularity no less, any of the elements of fraud.  *Small v. Fritz*

13   *Companies, Inc.*, 30 Cal. 4th 167, 173-74 (2003) (elements of fraudulent misrepresentation: (a)

14   misrepresentation; (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance;

15   (d) justifiable reliance; and (e) resulting damage).

16           Unjust enrichment is not typically recognized as a stand-alone claim under California law.

17   *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003); *accord Smith v. Ford Motor*

18   *Co.*, No. 10-17321, 2011 WL 6322200, at *3 (9th Cir. Dec. 19, 2011); *Rosal v. First Fed. Bank of Cal.*,

19   671 F. Supp. 2d 1111, 1133 (N.D. Cal. 2009); *Jogani v. Super. Ct.*, 165 Cal. App. 4th 901, 911 (2008).

20   "Unjust enrichment is not a cause of action . . . or even a remedy, but rather a general principle,

21   underlying various legal doctrines and remedies.  *McBride v. Boughton*, 123 Cal. App. 4th 379, 387

22   (2004).  Thus, "a claim for unjust enrichment cannot stand alone without a cognizable claim under a

23   quasi-contractual theory or some other form of misconduct."  *Berenblat v. Apple, Inc.*, No. 08-4969,

24   2009 WL 2591366, at *6 (N.D. Cal. Aug. 21, 2009).

25           To be sure, an unjust enrichment claim may be attached to a cognizable quasi-contract theory

26   (*Berenblat*, 2009 WL 2591366 at *6), but plaintiffs have singularly failed to sufficiently allege such a

27   claim.  To sustain a claim for restitution based on quasi-contract, plaintiffs must show 1) that defendant

28

1  received a benefit at plaintiffs' expense, and 2) it would be unjust for defendant to retain that benefit.

2  *Ghirardo*, 14 Cal. 4th at 51; *accord, First Nationwide Sav. v. Perry*, 11 Cal. App. 4th 1657, 1663

3  (1992).  For the same reasons that plaintiffs' false advertising claims fail to state a cognizable claim,

4  plaintiffs have not alleged any wrongdoing by Dreyer's to suggest it has unjustly retained any benefits

5  at plaintiffs' expense.

**CONCLUSION**

6
7       For the foregoing reasons, defendant Dreyer's Grand Ice Cream, Inc. respectfully requests that

   its motion to dismiss the first amended consolidated complaint be granted with prejudice and without

8  leave to amend.

9

10 Dated:  May 1, 2012                    MAYER BROWN LLP
11                                          Carmine R. Zarlenga
                                            Dale J. Giali
12

13

14                                     By: _____/s/ *Dale J. Giali*_____
                                            Dale J. Giali
15                                     Attorneys for Defendant
                                       Dreyer's Grand Ice Cream, Inc.
16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2          I hereby certify that on May 1, 2012, I caused the foregoing **MOTION TO DISMISS FIRST**

3  **AMENDED CONSOLIDATED COMPLAINT** and accompanying **REQUEST FOR JUDICIAL**

4  **NOTICE** to be electronically filed with the Clerk of the Court.  I understand that the Court will

5  provide electronic notification of and access to such filing to the counsel of record in this matter who

6  are registered on the CM/ECF.

7

8   Dated:  May 1, 2012                    By:_____ /s/ *Dale J. Giali*_____

9                                          Dale J. Giali, MAYER BROWN LLP
                                           Attorneys for Defendant
10                                         DREYER'S GRAND ICE CREAM, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

701642756.2