1   Janet Lindner Spielberg (SBN 221926)          Joseph N. Kravec, Jr. (admitted *pro hac vice*)
    **LAW OFFICES OF JANET LINDNER**             Wyatt Lison (admitted *pro hac vice*)
2     **SPIELBERG**                                   Maureen Davidson-Welling (*pro hac
3   *vice*)
    12400 Wilshire Boulevard, Suite 400          **STEMBER FEINSTEIN DOYLE**
4   Los Angeles, California 90025                    **PAYNE & KRAVEC, LLC**
    Allegheny Building, 17th Floor               429 Forbes Avenue
5   Tel: (310) 392-8801                          Pittsburgh, PA  15219
    Fax: (310) 278-5938                          Tel: (412) 281-8400
6   Email: jlspielberg@jlslp.com                 Fax: (412) 281-1007
                                                 Email: jkravec@stemberfeinstein.com
7   Michael D. Braun (SBN 167416)                Email: wlison@stemberfeinstein.com
8   **BRAUN LAW GROUP, P.C.**                    Email: mdavidsonwelling@stemberfeinstein.com
    Los Angeles, California 90064
9   Tel: (310) 836-6000                          Nabil Majed Nachawati, II (*pro hac vice*)
    Fax: (310) 836-6010                          **FEARS NACHAWATI LAW FIRM**
10  Email: service@braunlawgroup.com             4925 Greenville Avenue, Suite 715
                                                 Dallas, TX 75206
11                                               Tel: (214) 890-0711
                                                 Fax: (214) 890-0712
12                                               Email: mn@fnlawfirm.com

13  ***PLAINTIFFS' INTERIM CO-LEAD COUNSEL***

14              **IN THE UNITED STATES DISTRICT COURT**
15           **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
16                  **SAN FRANCISCO DIVISION**
17

18  **SKYE ASTIANA, PAMELA RUTLEDGE-**          **CASE NO.:  3:11-cv-02910-EMC**
    **MUHS  and JAY WOOLWINE, on behalf of**    **Consolidated with CASE NO.: 3:11-cv-3164**
19  **themselves and all others similarly situated,**
                                                **CLASS ACTION**
20                      **Plaintiffs,**
21                     v.                        **PLAINTIFFS' MEMORANDUM OF LAW**
                                                **IN OPPOSITION TO MOTION TO**
22  **DREYER'S GRAND ICE CREAM, INC.,**         **DISMISS FIRST AMENDED**
                                                **CONSOLIDATED COMPLAINT**
23                      **Defendant.**
                                                **DEMAND FOR JURY TRIAL**
24
25                                              Date:  July 6, 2012
                                                Time:  1:30PM
26                                              Location:  Courtroom 5, 17th Floor
27
28

---

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................1

II.   STANDARDS OF REVIEW ..............................................................................3

III.  ARGUMENT .......................................................................................................4

    A.  Plaintiffs' All Natural Favors Claims Are Not Expressly Preempted ...............4

        1.  Plaintiffs' Primary Theory Of Liability Is Not Preempted As Plaintiffs
           Are Suing Over The False And Misleading Use Of An Unregulated Term ...............6

        2.  DGIC Impermissibly Resorts To Disputes Of Fact In Support Of Its Preemption
           Arguments As To Plaintiffs' Alternative Theory Of Liability ......................................8

        3.  DGIC Does Not Challenge Plaintiffs' Allegations That DGIC Violated The Ice
           Cream Regulation, Which Is Controlling Here.................................................................9

    B.  Plaintiffs' Claims Are Cognizable ........................................................................11

        1.  Plaintiffs' Claims Based Upon The "All Natural Flavors" Statements On The
           Dreyer's/Edy's Ice Creams Are Fully Plausible ...........................................................11

        2.  Plaintiffs' Claims Based Upon The "All Natural" Statements On The Häagen-Dazs
           Ice Creams Are Meritorious ..........................................................................................13

    C.  Plaintiffs Have Alleged Detrimental Reliance On DGIC's "All Natural" And "All
        Natural Flavorings" Misrepresentations .................................................................16

    D.  This Court Should Not Dismiss Plaintiffs' Magnuson-Moss Warranty Claim ................18

    E.  Plaintiffs May Assert Claims Based Upon Products They Did Not Purchase That
        Are Part Of The Same Product Line, But This Determination Is Made At Class
        Certification And Not On A Rule 12 Motion ........................................................21

    F.  Plaintiffs Have Sufficiently Pled Fraud........................................................................23

    G.  Plaintiffs' Unjust Enrichment Claims Should Not Be Dismissed....................................24

IV.   CONCLUSION....................................................................................................25

Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss First Amended Consolidated Complaint;
CASE NO.:  3:11-cv-02910-EMC

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Arevalo v. Bank of Am. Corp.*, -- F. Supp.2d ---, 2011 WL 1195973
4   (N.D.Cal. Mar. 29, 2011)................................................................................22

5   *Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009) ...........................................................4

6   *Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796
(N.D. Cal. 2011).............................................................................6, 15, 16, 25

7   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................4

8   *Bly-Magee v. California*, 236 F.3d 1014 (9th Cir.2001) ...................................24

9   *Brazil v. Dell Inc.*, C-07-01700, 2008 WL 4912050 (N.D.Cal. Nov. 14, 2008)..........................22

10  *Bruno v. Quten Research Institute*, LLC, SACV 11-00173 DOC,
11  2011 WL 559220 (C.D. Cal. Nov. 14, 2011)...........................................................22

12  *Carrea v. Dreyers Grand Ice Cream, Inc.*, 2011 WL 159380 (N.D.Cal. Jan 10, 2011) ..............23

13  *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111 (N.D.Cal. 2010)...........................6, 7, 24

14  *Chavez v. Blue Sky Natural Beverage Co.*, 340 Fed. Appx. 359, 2009 WL 1956225 (9th
Cir. June 23, 2009)........................................................................4, 14, 17, 23

15  *Clear Channel Outdoor, Inc. v. Bently Holdings California LP,* 2011 WL 6099394
16  (N.D.Cal. Dec. 7, 2011) ...............................................................................25

17  *Cooper v. University of Texas at Dallas*, 482 F.Supp. 187 (N.D.Tex.1979)...............22, 23

18  *Delacruz v. Cytosport, Inc.*, 2012 WL 1215243 (N.D.Cal. Apr. 12, 2012)..................14, 25

19  *Eldridge v. Block*, 832 F.2d 1132 (9th Cir. 1987).........................................25

20  *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998)...................22, 23

21  *Freeman v. ABC Legal Services Inc.*, --- F.Supp.2d ---, 2011 WL 6090699 (N.D.Cal.,
Nov. 10, 2011) ..........................................................................................17

22  *Greenwood v. CompuCredit Corp.*, No. 08-04878 CW, 2010 WL 4807095 (N.D.Cal.
23  Nov. 19, 2010) ..........................................................................................22

24  *Hitt v. Ariz. Bev. Co., LLC*, 2009 WL 449190 (S.D.Cal. Feb. 4, 2009)....................7

25  *In re Farm Raised Salmon Cases*, 42 Cal.4th at 1079 ....................................7

26  *In re Ferrero Litig.*, 2011 WL 5438979 (S.D.Cal. 2011) .................................24

27  *In re Sears, Roebuck & Co.*, 2006 WL 1443737 (N.D.Ill. May 17, 2006)...............20, 21

28  *Jacobson v. AEG Capital Corp.*, 50 F.3d 1493 (9th Cir. 1995)........................17

Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss First Amended Consolidated Complaint;
CASE NO.: 3:11-cv-02910-EMC

*Koh v. S.C. Johnson & Son, Inc.*, C-09-00927, 2010 WL 94265 (N.D. Cal. Jan. 6, 2010) ..........23

*Kwikset Corp. v. Superior Ct.*, 51 Cal.4th 310 (Cal. 2011) .............................................................12

*Lam v. General Mills, Inc.*, 2012 WL 1656731 (N.D.Cal. May 10, 2012).....................................8

*Lockwood v. Conagra Foods, Inc.*, 597 F.Supp.2d 1028 (N.D.Cal. 2009)......................................7

*Marine Midland Bank, N.A.  v. Carroll*, 98 A.D.2d 516, 471 N.Y.S.2d 409
   (N.Y. App. Div. 1984) .................................................................................................................20

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) .................................................................................7

*Milicevic v. Fletcher Jones Imports, Ltd.*, 402 F.3d 912 (9th Cir. 2005) ......................................19

*Oracle Corp. v. SAP AG,* 2008 WL 5234260 (N.D.Cal. Dec. 15, 2008) ......................................25

*Ralston v. Mortgage Investors Group, Inc.*, 5:08-cv-00536-JF, 2011 WL 4081696
   (N.D.Cal. Sept. 12, 2011) ...........................................................................................................22

*Red v. Kroger Co.*, 2010 WL 4262037 (C.D. Cal. Sept. 2, 2010) ....................................................7

*Rosal v. First Fed. Bank of Cal.,* 671 F.Supp.2d 1111 (N.D.Cal. 2009) ........................................3

*Stoner v. Santa Clara County Office of Educ.*, 502 F.3d 1116 (9th Cir. 2007) ..............................4

*United States v. Locke*, 529 U.S. 89 (2000) ......................................................................................5

*Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097 (9th Cir. 2003) ...................................................24

*Vicuna v. Alexia Foods, Inc.*, 2012 WL 1497507 (N.D.Cal.)................................................. passim

*Von Koenig v. Snapple Beverage Corp.*, 713 F.Supp.2d 1066 (E.D.Cal. 2010)..................7, 23, 24

*Warth v. Seldin*, 422 U.S. 490 (1975) .......................................................................................4, 22

*Williams v. Gerber Prod Co.*, 552 F.3d 934 (9th Cir. 2008) ......................................11, 13, 14, 17

*Wyeth v. Levine*, 129 S.Ct. 1187 (2009) ..........................................................................................7

**Statutes**

15 U.S.C. § 2301...............................................................................................................................18

15 U.S.C. § 2301(6)..........................................................................................................................19

15 U.S.C. § 2301(6)(A).........................................................................................................19, 20, 21

15 U.S.C. § 2310(b)..........................................................................................................................19

15 U.S.C. § 2310(d)(1)......................................................................................................................19

21 C.F.R. § 101.22....................................................................................................................4, 5, 8, 9

21 C.F.R. § 101.22(h)(1)....................................................................................................................9

21 C.F.R. § 101.22(i) ...........................................................................................8

21 C.F.R. § 101.4 .................................................................................................9

21 C.F.R. § 135.110 ..............................................................................5, 10, 13, 14

21 C.F.R. § 135.110(a) .........................................................................................14

21 C.F.R. § 135.110(f) .............................................................................10, 12, 14

21 C.F.R. § 182.20 ................................................................................................9

21 C.F.R. § 184.1666 ............................................................................................9

21 U.S.C. § 343-1 .................................................................................................7

21 U.S.C. § 343-1(a) .................................................................................4, 6, 7, 8

7 C.F.R. § 205.605(a) ..........................................................................................15

7 C.F.R. § 205.605(b) ...........................................................................................9

NLEA § 6(c)(1), 104 Stat. 2364 ...........................................................................7

60 Fed.Reg. 57076 (Nov. 13, 1995) .....................................................................6

**Other Authorities**

7AA Wright et al., Federal Practice and Procedure (3d 2005) § 1785.1 ....................22

FDA Compliance Policy Guide § 515.800 ...........................................................9

NEWBERG ON CLASS ACTIONS § 2.05 (3d ed.1992)..................................................23

**Rules**

Fed.R.Civ.P. 9(b) ...............................................................................................24

Fed.R.Civ.P. 12(b)(1).............................................................................................4

Fed.R.Civ.P. 23 ..........................................................................................21, 22, 23

Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss First Amended Consolidated Complaint;
CASE NO.:  3:11-cv-02910-EMC

1    **I.    INTRODUCTION**

2            Plaintiffs bring this action on behalf of themselves and a nationwide class of consumers who

3    purchased Dreyer's Grand Ice Cream, Inc. ("DGIC") ice cream products marketed and sold by

4    DGIC under the Häagen-Dazs, Dreyer's and Edy's brand names that were falsely labeled as "All

5    Natural Ice Cream" or "All Natural Flavors," when in fact these products contained unnatural,

6    synthetic or artificial ingredients and flavors.  ¶¶ 1-2.[1]  Specifically, each of the DGIC's Häagen-

7    Dazs brand ice creams at issue were labeled as "All Natural Ice Cream" and contain Cocoa

8    processed with synthetic Potassium Carbonate, and DGIC's Dreyer's and Edy's brands of ice creams

9    were labeled as "All Natural Flavors" despite containing one or more of the following artificial

10   and/or synthetic ingredients/flavors: Cocoa Processed with Potassium Carbonate, Glycerin, Mono-

11   and Diglycerides, Propylene Glycol Monostearate (more commonly known as *anti-freeze*),

12   Tetrasodium Pyrophospate and Xanthan Gum.  *See* ¶ 1.[2]  Each of these ingredients has been decried

13   as artificial or synthetic, and therefore not natural, by federal regulations making DGIC's claim that

14   its ice cream is "All Natural" or "All Natural Flavors" literally false.  *Id*. ¶¶ 27-32.

15           Plaintiffs were harmed by this false and misleading labeling since they purchased DGIC's ice

16   cream products in the belief that the ingredients and flavors in them were "All Natural Ice Cream" or

17   "All Natural Flavors" as the labels represented, but, unbeknownst to them at the time, they did not

18   receive the "All Natural Ice Cream" or "All Natural Flavors" products they paid for.  ¶¶ 8-10.

19   Through the use of this false and misleading labeling, DGIC has been (and continues to be) able to

20   sell these unnatural ice cream products falsely labeled as being "All Natural Ice Cream" or "All

21   Natural Flavors" to thousands of unsuspecting consumers in California and throughout the United

22   States. ¶ 2.

23   ──────────────────────

24   [1]  All "¶__" references are to Plaintiffs' First Amended Consolidated Complaint for Damages,
     Equitable, Declaratory and Injunctive Relief (Dkt. #42) ("FACC"), and at all times emphasis is
25   added and citations are omitted unless otherwise indicated.

26   [2]  Plaintiff Astiana's complaint, filed June 14, 2011 for (Dkt. 1), and Plaintiffs Rutledge-Muhs' and
     Woolwine's complaint, filed June 24, 2011 (No. 4:11-cv-3164, Dtk. 1), only complained about the
27   use of Cocoa Processed with Potassium Carbonate.  Plaintiffs' FACC, filed on March 30, 2012,
28   added claims based upon other artificial and synthetic ingredients.  ¶¶ 1, 2, 27-32.

──────────────────────

1

DGIC's Motion to Dismiss largely argues that this Court should adopt its unpled version of facts that are contrary to what Plaintiffs alleged in the FACC and, in reality, are classic disputes of fact that cannot be resolved in a Rule 12 motion.  For example, Plaintiffs allege that the presence of any synthetic or artificial ingredient in DGIC's ice cream products renders the "All Natural Ice Cream" and "All Natural Flavors" claims false and misleading.  DGIC attempts to counter this allegation by arguing that its "All Natural Ice Cream" and "All Natural Flavors" claims refer only to portions of its product. But, Plaintiffs' FACC supports its allegations by showing that applicable regulations and DGIC's own advertising view the terms "ice cream" and "flavors" as referring to the entire product.  These allegations are well pled and must be accepted as true on a Rule 12 motion.

This factual dispute as well as others also permeates DGIC's argument that the "natural flavor" regulation expressly preempts Plaintiffs' "All Natural Flavor" claims as to Dreyer's and Edy's brand ice creams.[3]   Plaintiffs allege Dreyer's and Edy's brand ice creams included artificial flavors so DGIC did not comply with the "natural flavor" regulation.  This factual dispute must be resolved before the Court could find preemption since it is well settled that express preemption only applies if DGIC has complied with the regulation.  Once again, such factual disputes may not be resolved on a Rule 12 motion.  Moreover, express preemption does not apply as a matter of law since the Food and Drug Administration (FDA) has made it clear that the "natural flavor" regulation is "irrelevant" where the conduct is governed by the "ice cream" regulation, and Plaintiffs have alleged – and DGIC has not disputed – that DGIC's conduct here violates the "ice cream" regulation. The "natural flavor" regulation is also inapplicable as a matter of law since DGIC made a different, broader "All Natural Flavors" claim that is not regulated by the "natural flavor" regulation.

DGIC again resorts to factual disputes in arguing for dismissal based on a purported lack of materiality or detrimental reliance.  However, Plaintiffs each pled they relied on the "All Natural Flavors" and "All Natural Ice Cream" claims in purchasing DGIC's ice creams, those claims were material to them, and that they did not get what they paid for.

---

[3] DGIC does not assert preemption as to claims raised regarding its Häagen-Dazs brand ice cream products.

1     In opposing Plaintiffs' MMWA claims, DGIC conclusorily asserts that the "All Natural" and

2  "All Natural Flavors" statements do not relate to the absence of defect in the product.  However, this

3  argument is flatly contradicted by Plaintiffs' allegations.  *See* FACC ¶ 76 (alleging "All Natural" and

4  "All Natural Flavors" statements "constituted, and were intended to convey to purchasers, a written

5  promise that the ingredients in the products, including the flavor ingredients, were free of a

6  particular type of defect (i.e., that they were not synthetic or artificial)").  DGIC also argues that the

7  MMWA does not cover warranties that the product was free of a ***particular type of defect***, but

8  neither the statute nor DGIC's own cited cases support such a limitation.

9     DGIC erroneously contends that Plaintiffs lack standing for 53 ice cream flavors they did not

10  purchase.  However, the standing doctrine does not prevent Plaintiffs from asserting claims on behalf

11  of others with similar, but not identical, claims.  This is especially true where, as here, the ice creams

12  are all part of the same product line.  Rather than being a standing issue, it is a class certification

13  issue that courts routinely leave for resolution in a Rule 23 motion.

14     DGIC contends that Plaintiffs "failed to sufficiently allege" unjust enrichment, because they

15  "have not alleged any wrongdoing by Dreyer's to suggest it has unjustly retained any benefits at

16  plaintiffs' expense."  This argument is unavailing: it is belied by Plaintiffs' pleadings, and is

17  unsupported by the "All Natural" case law.  Also unavailing is DGIC's two-sentence argument

18  seeking dismissal of Plaintiffs' fraud claims, suggesting Plaintiffs do not allege with particularity

19  any of the elements of fraud.  This argument is hardly compelling, as DGIC fails to provide any

20  explanation of what might be missing, and Plaintiffs have pled the "'who, what, when, where, and

21  how' of the misconduct charged."  Accordingly, based on its factual disputes, incorrect statements of

22  the law and ignorance of the allegations of Plaintiffs' FACC, DGIC's Motion to Dismiss should be

23  denied in its entirety.

24  **II.    STANDARDS OF REVIEW**

25     "A Rule 12(b)(6) motion tests the legal sufficiency of a claim. A claim may be dismissed

26  only 'if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

27  which would entitle him to relief.'"  *Rosal v. First Fed. Bank of Cal.,* 671 F.Supp.2d 1111, 1119

28  (N.D.Cal. 2009).  In considering a motion to dismiss, "allegations of material fact in the complaint

3

1  are taken as true and construed in the light most favorable to the plaintiff." *Stoner v. Santa Clara*

2  *County Office of Educ.*, 502 F.3d 1116, 1120 (9th Cir. 2007).  A district court should only grant a

3  motion to dismiss when plaintiffs have not pleaded "enough facts to state a claim to relief that is

4  plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has

5  facial plausibility when the plaintiff pleads factual content that allows the court to draw the

6  reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129

7  S.Ct. 1937, 1949 (2009).  However, "the motion [to dismiss] is not a procedure for resolving a

8  contest between the parties about the facts or the substantive merits of the plaintiff's case." *Chavez*

9  *v. Blue Sky Natural Beverage Co.*, 340 Fed.Appx. 359, 360 (9th Cir. 2009).

10      On a motion to dismiss for lack of standing pursuant to Fed.R.Civ.P. 12(b)(1), the court

11  "must accept as true all material allegations of the complaint, and must construe the complaint in

12  favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

13  **III.   ARGUMENT**

14      **A.   Plaintiffs' All Natural Flavors Claims Are Not Expressly Preempted**

15      DGIC does not assert preemption as to Plaintiffs' "All Natural" claims relating to its Häagen-

16  Dazs line of Ice Creams.[4]  However, DGIC asserts speciously that Plaintiffs' claims based upon the

17  "All Natural Flavors" statements on its Dreyer's/Edy's Ice Creams are expressly preempted by

18  federal law, namely by 21 C.F.R. § 101.22.  This argument must be rejected for two reasons:  First, it

19  ignores material fact disputes that would need to be resolved in DGIC's favor before preemption

20  could apply, and; second, the argument is unsupported by the law.

21      DGIC created and used an ***unregulated*** term – "All Natural Flavors" – on its Ice Creams.

22  Yet, in a blatant attempt to avail itself of federal preemption, to which it is not entitled, DGIC asks

23  this Court to treat its "All Natural Flavors" statement as if it had used the different and regulated

24  term "natural flavor."  As a matter of law the term "All Natural Flavors" is not regulated by any

25  _____

26  [4] DGIC has moved to dismiss based upon express preemption. Def. Mem. at 6, 8-13.  However, the
    FDCA's express preemption provision does not apply to federal claims, ¶¶ 70-80.  *See* 21 U.S.C. §

27  343-1(a) ("***no State or political subdivision of a State*** may directly or indirectly establish under any
    authority or continue in effect as to any food in interstate commerce"…) (emph. added). Thus, any

28  preemption argument is inapplicable to Plaintiffs' federal MMWA claim.

1   federal statute and therefore federal preemption principles cannot attach.  *See United States v. Locke*,

2   529 U.S. 89, 109 (2000) (no preemption in the absence of regulation by federal agency).   In

3   arguendo, even if this Court were inclined to entertain DGIC's implausible *post-hoc* explanation that

4   "All Natural Flavors" was a reference to the "natural flavor" regulation, critical factual disputes still

5   prevent dismissal at this juncture.

6       <u>First</u>, there is a material dispute of fact between the parties as to whether "All Natural

7   Flavors" represents a statement that DGIC's "flavors" (meaning the entire Ice Cream product) are

8   "All Natural" (*see* FACC ¶¶ 16, 41), or whether "All Natural Flavors" represents a more limited

9   statement that all of the flavor ingredients in the Dreyer's/Edy's Ice Creams were "all natural" or

10   "natural flavors."  Even assuming DGIC's "All Natural Flavors" statement could be read in the latter

11   manner, the fact that there are two reasonable meanings of this language, one of which is not

12   preempted, creates a question of fact beyond the scope of a motion to dismiss.[5]

13       <u>Second</u>, Plaintiffs have alleged a secondary theory of liability premised upon DGIC's non-

14   compliance with the "natural flavors" regulation, and there is a material dispute between the parties

15   over whether the flavors in the Dreyer's/Edy's Ice Creams are "natural flavors."  In order for 21

16   C.F.R. § 101.22 to preempt Plaintiffs' claims based on this alternative theory, it would require that

17   the flavors in the Ice Creams are natural, which is not true.  In fact, the Dreyer's/Edy's Ice Creams

18   "All Natural Flavors" Ice Creams contain at least two non-"natural flavors:" Cocoa alkalized with

19   Potassium Carbonate and the propylene glycol.  FACC ¶¶ 29-30.

20       <u>Third</u>, while not a factual dispute, DGIC has no answer to Plaintiffs' allegations (*see* FACC

21   ¶¶ 50-53) that its labeling violates the Standard of Identity for "ice cream," 21 C.F.R. § 135.110,

22   which controls over 21 C.F.R. § 101.22, ensuring that this third theory of liability may proceed.

23

24   ----

25   [5] Interestingly, DGIC concedes that, "'flavor' has more than one meaning," that the whole product is
being referred to when DGIC uses the word "flavor" for its ice cream, and that DGIC markets

26   Dreyer's/Edy's Ice Creams in this fashion as Plaintiffs allege.  Def. Mem. at 15, n.16.  DGIC then
argues that the regulated term or phrase is not "flavor," but is "natural flavor."  *Id.*  It appears DGIC

27   is arguing that if the term or phrase used is not precisely the regulated term or phrase, then the
regulation is inapplicable.  Plaintiffs agree and note that DGIC actually used the phrase "All Natural

28   Flavors", not the regulated phrase "natural flavors."

In sum, while DGIC's preemption arguments are meritless (as discussed below), this Court need not delve into an in-depth preemption analysis, as there are critical factual disputes between the parties that must be resolved before preemption could apply.

    1.    Plaintiffs' Primary Theory Of Liability Is Not Preempted As Plaintiffs Are Suing Over The False And Misleading Use Of An Unregulated Term

Plaintiffs' allege that DGIC's "All Natural Flavors" statements are false and misleading, since "the combined use of 'All Natural Flavors' on the labels of DGIC's Ice Cream indicates to the average reasonable person that 'the whole extent or quantity of' the ingredients contained in the ice cream are 'produced or existing in nature; not artificial or manufactured.'" FACC ¶ 16.  DGIC seeks dismissal of Plaintiffs' claims on this theory, erroneously asserting express preemption by 21 U.S.C. § 343-1(a), based upon the "natural flavor" regulation.  Def. Mem. at 8-13.  However, DGIC is not entitled to express preemption based upon its use of this term – "All Natural Flavors" – as it is not defined by federal law.

It is well-established that 21 U.S.C. § 343-1(a) only preempts state law requirements that are "not identical" to specific requirements that have been affirmatively established by statute or regulation.  *See* Final Rule, 60 Fed.Reg. 57076, 57120 (Nov. 13, 1995) ("[T]he only State requirements that are subject to preemption are those that are ***affirmatively different*** from the Federal requirements ***on matters that are covered by section 403A(a) of the act.***") (emph. added). *See, e.g.*, *Chacanaca v. Quaker Oats Co.,* 752 F.Supp.2d 1111, 1119 (N.D.Cal. Oct. 14, 2010) ("plaintiffs' claims need not fail on preemption grounds if the requirements they seek to impose are either identical to those imposed by the FDCA and the NLEA amendments <u>**or**</u> do not involve claims or labeling information of the sort described in" the FDCA and its regulations).

Applying this test, there can be no express preemption here, since the term which Plaintiffs' allege is false and misleading – "All Natural Flavors" – is not regulated or defined by federal law.[6] Other cases in which plaintiffs have sued over the use of unregulated terms have similarly been held not to be preempted.  *See, e.g.*, *Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796, *6-10

---

[6]"All Natural" and "Flavors" are also undefined.  *Id.* at ¶ 18; Def. Mem. at 15, n. 16 (conceding "[t]he regulated terms are "natural flavors" and "artificial flavors," not the word "flavor").

(N.D.Cal. May 26, 2011) (holding "All Natural" claims not expressly preempted); *Von Koenig v. Snapple Beverage Corp.*, 713 F.Supp.2d 1066, 1074-76 (E.D.Cal. 2010) (same); *Lockwood v. Conagra Foods, Inc.*, 597 F.Supp.2d 1028, 1031 (N.D.Cal. 2009) (same); *Hitt v. Ariz. Bev. Co., LLC*, 2009 WL 449190, at *4 (S.D.Cal. Feb. 4, 2009) (same); *Chacanaca*, 2010 WL 4055954, at *9 (holding "wholesome" claims not expressly preempted).

In arguing that it is entitled to preemption, DGIC deliberately glosses over this critical distinction.  Indeed, it cites repeatedly to cases in which plaintiffs' claims were preempted because they sued over the use of an identical federally-defined term.[7]  *See* Def. Mem. at 11-12 and n.12.  However, this is not such a case.  This is an "***All Natural*** Flavors" case, not a "Natural Flavor" case.  While these two terms share some words, that is insufficient to expressly preempt Plaintiffs' claims under 21 U.S.C. § 343-1(a).  Indeed, not only does the presumption against preemption apply "with particular force"[8] in this context, but, in enacting 21 U.S.C. § 343-1(a), "Congress made clear that the preemptive scope of section 343-1 was to sweep no further than the plain language of the statute itself."  *Farm Raised Salmon Cases*, 42 Cal.4th at 1079, 1088.[9]

Both California and the FDCA prohibit "false or misleading" labeling (FACC ¶¶ 94-95): this is the only applicable requirement since "All Natural Flavors" is unregulated.  Thus, consistent with

---

[7] For example, DGIC cites *Red v. Kroger Co.*, 2010 WL 4262037, *4 (C.D.Cal. Sept. 2, 2010), in which the district court explained that "[t]he hurdle that Plaintiffs must overcome…is that FDA regulations have expressly defined the terms 'cholesterol free' and '0g Trans Fat.'"

[8] The presumption against preemption requires that any doubts about preemption be resolved against DGIC.  "In all preemption cases…in which Congress has 'legislated…in a field which the States have traditionally occupied,'…we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'"  *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).  This requires that, if confronted with two plausible interpretations of a statute, courts "have a duty to accept the reading that disfavors pre-emption."  *Wyeth v. Levine*, 129 S.Ct. 1187, 1195 (2009).  "'[C]onsumer protection laws…are subject to the presumption against preemption.'  Laws regulating the proper marketing of food, including the prevention of deceptive sales practices, are likewise within the states' historic police powers.").  *In re Farm Raised Salmon Cases*, 42 Cal.4th 1077, 1088 (Cal. 2008).

[9] Congress confirmed its intention to limit 21 U.S.C. § 343-1's preemptive effect in NLEA § 6(c)(1), 104 Stat. 2364, which states "[t]he [NLEA] shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under [section 343-1] of the [FDCA]."

the FACC, which disclaims any attempt to hold DGIC to a higher standard of conduct than federal law, *id.*, and notwithstanding DGIC's transparently self-serving remarks, Def. Mem. at 12, Plaintiffs "seek to enforce the same standard of conduct" as federal law.  FACC ¶ 95.

> 2.   DGIC Impermissibly Resorts To Disputes Of Fact In Support Of Its
>        Preemption Arguments As To Plaintiffs' Alternative Theory Of Liability

In addition to their claims discussed in the preceding section, Plaintiffs have also pled an alternative theory of liability based upon DGIC's use of "All Natural Flavors" in FACC ¶ 44:

> [E]ven if "All Natural Flavors" could be read as a limited representation about the products' flavors (i.e., the ingredients that impart a taste or aroma into the products), at least thirty six (36) of DGIC's "All Natural Flavors" Ice Creams contained synthetic and artificial flavor ingredients, including Propylene Glycol Monostearate and alkalized cocoa processed with Potassium Carbonate …Based on the "All Natural Flavors" representation, one would certainly not normally expect that any of the flavors in the Ice Creams would be synthetic or artificial.

DGIC does not address this second theory or explain why it would be preempted.  Instead, it simply attacks it indirectly by resort to improper factual disputes.  Here, again, DGIC's arguments must fail.

Express preemption clearly does not bar these claims, since this alternative theory is predicated upon DGIC's failure to comply with the federal definition of "natural flavor," i.e., by representing that ***all*** flavors in the Ice Creams were "natural flavors" as defined by 21 C.F.R. § 101.22, when in fact the Ice Creams included synthetic and artificial flavor ingredients that do not qualify as such.  *See* 21 U.S.C. § 343-1(a) (claims based on "identical" requirements not preempted).[10]

DGIC improperly attacks this theory by resort to factual disputes, which must fail on a 12(b)(6) motion. DGIC disputes Plaintiffs' allegations that Propylene Glycol Monostearate and

---

[10] *See Lam v. General Mills, Inc.*, 2012 WL 1656731, at *4 (N.D.Cal. May 10, 2012) (recognizing that claim could be made that food manufacturer "ran afoul" of flavor regulation). *Lam* concerned the use of a separate term "natural strawberry flavored" which was specifically authorized by the characterizing flavor regulations set forth in 21 C.F.R. § 101.22(i) even when the product had no strawberries.  *Lam* is factually distinguishable, since it concerns a completely different labeling statement and characterizing flavor regulations that do not apply here, since, as discussed, *infra*, at pp. 9-10, they conflict with the Ice Cream regulation.  However, the *Lam* court did recognize that where, as here, a claim is made that a product violates 21 C.F.R. § 101.22, "because their flavors are artificial," that would present a non-preempted claim.  2012 WL 1656731, at *4.

1   Alkalized Cocoa processed with Potassium Carbonate are flavors, or, in particular, artificial flavors.

2   *See* Def. Mem. at 13, n.14.  However, DGIC's assertion that alkalized cocoa is not a flavor is hardly

3   worthy of credence,[11] and its footnoted suggestion that "there is strong regulatory support that

4   alkalized cocoa is, if a 'flavor' at all, a natural flavor," *id.* at 13, n.14 (citing 21 C.F.R. § 182.20),  is

5   demonstrably incorrect.   21 C.F.R. §182.20 says absolutely nothing about whether cocoa, once

6   chemically-altered by "dutching" with synthetic Potassium Carbonate (*see* 7 C.F.R. §205.605(b)), is

7   a "natural flavor."

8        Further, Plaintiffs have specifically pled that these ingredients are artificial flavors.   *See*

9   FACC ¶ 29 ("Alkalized cocoa imparts flavor and is not derived from a spice, fruit or fruit juice,

10  vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat,

11  fish, poultry, eggs, dairy products, or fermentation products thereof, and is thus an artificial flavor.");

12  *id.* at ¶ 30 ("Propylene glycol … is considered a flavor agent in food and is recognized by federal

13  regulation as not occurring naturally") (citing 21 C.F.R. 184.1666).  Indeed, DGIC has also admitted

14  as much.  *See* Declaration of Joseph N. Kravec ("Kravec Decl."), Exh. 1 (showing an example of

15  DGIC's new label listing "Natural Ingredients*" to include all ingredients except for alkalized

16  cocoa, constituting admission by DGIC that is not a natural flavor).[12]   While DGIC may take a

17  litigation position that these flavor ingredients are not "flavors" or "artificial flavors," these are

18  questions of fact which must be resolved at a later juncture, and are not a basis for dismissal now.

19       3.   DGIC Does Not Challenge Plaintiffs' Allegations That DGIC Violated The
          Ice Cream Regulation, Which Is Controlling Here

20

21       In the FACC, Plaintiffs also allege a third theory of liability, based upon DGIC's failure to

22

23  [11] DGIC's assertion is incorrect, as shown by the FDA Compliance Policy Guide § 515.800, which
    DGIC cited in its briefing for another point.  *See* Def. Mem. at 18, n.20.  The policy guide ***does not***

24  address or answer the question of whether cocoa alkalized with potassium carbonate may be called
    "natural" – as DGIC erroneously suggested – but does clearly establish that cocoa is a flavoring.

25  [12] DGIC also asserts that its "labels comply with federal law regarding labeling of 'natural flavors,'"

26  and in support of this point misleadingly suggests that there are no "artificial flavors" in the Ice
    Cream product purchased by Plaintiff Rutledge-Muhs, because the ingredients list for that product

27  doesn't state that there are "artificial flavors."  *See* Def. Mem. at 12, n.13.  However, under 21
    C.F.R. § 101.22, a company "may," but is not required, to list an artificial flavor as "artificial

28  flavor."  *See* 21 C.F.R. § 101.22(h)(1).  A company can also comply with federal regulations if it
    lists the flavor by its common name in the ingredient list.  *See* 21 C.F.R. § 101.4.

9

Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss First Amended Consolidated Complaint;
CASE NO.: 3:11-cv-02910-EMC

1  comply with the "ice cream" regulation. *See* FACC ¶¶ 50-53. DGIC acknowledges this theory, *see*

2  Def. Mem. at 12, but does not actually assert that such allegations are preempted. *See id.* at 12-13.

3  Specifically, Plaintiffs have alleged that, "FDA regulations establish …that for ice cream

4  containing no artificial flavors, 'the name on the principal display panel or panels of the label shall

5  be accompanied by the common or usual name of the characterizing flavor.'" FACC ¶ 51 (citing 21

6  C.F.R. § 135.110(f)(1) and (f)(2)(i). "[I]n contrast, ice cream products containing artificial flavors

7  must modify the name of the flavor on the principal display pane or panels with 'flavored,'

8  'artificial' or 'artificially flavored,' depending on the amount of artificial flavors in the product." *Id*.

9  (citing 21 C.F.R. § 135.110(f)(2)(ii) and (iii)). Plaintiffs further alleged that DGIC breached the "ice

10  cream" regulation since: "thirty six of DGIC's Dryer's/Edy's Ice Cream flavors…labeled as 'All

11  Natural Flavors' contain the synthetic and artificial Propylene Glycol Monostearate and/or synthetic

12  and artificial Alkalized Cocoa processed with Potassium Carbonate…Yet, DGIC labeled its DGIC's

13  Dreyer's/Edy's ice cream products simply using the common or usual name of the characterizing

14  flavor together with the words 'ice cream,' falsely representing under 21 C.F.R. § 135.110(f)(2)(i)

15  that it has no artificial flavors." *Id*. ¶ 53. "DGIC reinforced this representation on its labels by

16  adding the 'All Natural Flavors' claim." *Id.*

17  DGIC acknowledges these allegations in its preemption section, *see* Def. Mem. at 12, but it

18  neither suggests that this theory of liability is preempted, nor does it explain how it might be

19  preempted. *See id.* at 12-13. Instead, DGIC's only response is that Plaintiffs "conflate and confuse

20  'Natural Flavor' with the entirely different concept of a product's 'characterizing flavor.'" *Id.* at 12.

21  However, if anything, DGIC is confused. DGIC must comply with ***all*** applicable regulations, and,

22  as Plaintiffs have pointed out (FACC ¶¶ 50-53), and as is evident from perusal of the Dreyer's/Edy's

23  labels (FACC Exh. 12), DGIC both violated the "ice cream" regulation codified at 21 C.F.R. §

24  135.110, and compounded that violation by adding the false statement "All Natural Flavors."

25  Even if DGIC's argument here could be understood as an argument that the "natural flavor"

26  regulation controls over the "ice cream" regulation, it fails. It is long established that in any conflict

27  between the "natural flavor" regulation and the "ice cream" regulation, the "ice cream" regulation

28

1    controls.  *See* Kravec Decl., Exh. 2, 1983 FDA Advisory Opinion at 6 ("The general flavor

2    regulations are not applicable to this standardized food [ice cream]").

3        Accordingly, as Plaintiffs' claims are not preempted – and indeed, DGIC does not suggest

4    otherwise – Plaintiffs are entitled to proceed on this theory.

5        **B.    Plaintiffs' Claims Are Cognizable**

6        DGIC asserts that Plaintiffs' "false advertising claims fail because a reasonable consumer

7    would not read the products' labels in the manner alleged by plaintiff."  Def. Mem. at 15.   This

8    argument should be rejected with respect to both Plaintiffs' "All Natural Flavors" claims (pertaining

9    to Dreyer's/Edy's Ice Creams), and Plaintiffs' "All Natural" claims (pertaining to Häagen-Dazs Ice

10   Creams), since Plaintiffs' claims are plausible for the reasons discussed below, and as this case does

11   "not amount to the rare situation in which granting a motion to dismiss is appropriate."  *See Williams*

12   *v. Gerber Prod. Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008) (stating "whether a business practice is

13   deceptive will usually be a question of fact not appropriate for decision on demurrer").

14            1.    Plaintiffs' Claims Based Upon The "All Natural Flavors" Statements
                   On The Dreyer's/Edy's Ice Creams Are Fully Plausible

15

16       With respect to the 44 Dreyer's/Edy's Ice Creams (¶ 47), DGIC contends that "[t]here is no

17   basis…for plaintiffs' allegations that a reasonable consumer" would "view the 'All Natural Flavors'

18   statement" or "likely be deceived that it meant that *all* ingredients in the product were natural."

19   Def. Mem. at 15.[13]   However, not only are these arguments are unconvincing, they are flatly

20   contradicted by Plaintiffs' FACC and the latter argument is limited to only one of Plaintiffs' three

21   theories of liability based upon the term "All Natural Flavors."

22   _____

23   [13] DGIC also asserts that there is no reasonable basis for Plaintiffs' allegation that consumers would
     "materially rely upon that mistaken belief."  Def. Mem. at 15.  However, DGIC provides absolutely

24   no argument in support of this point, *see id.*, and, as pled in the FACC, consumers do rely upon front
     of package labeling statements such as the "All Natural Flavors" statements here.  *See* ¶ 16

25   ("Product package labels…are vehicles that convey nutrition information to consumers that they can
     and do use to make purchasing decisions"; citing FDA Commissioner).  Further, such reliance is

26   fully reasonable, since companies are prohibited from making false and misleading statements in the
     labeling of food products.  ¶ 42.  Moreover, Plaintiffs alleged they relied on DGIC's labeling and, to

27   the extent the determination of a reasonable consumer standard is necessary (i.e., it is not under the

28   UCL), that is yet another issue for the trier of fact.  ¶¶ 7-10.

First, DGIC's insistence that it can avoid liability because its false and misleading statements were "hardly visible" (Def. Mem. at 15) should be soundly rejected. As a preliminary matter, this posits a question of fact to be determined by the trier of fact and not on a motion to dismiss. DGIC used the "All Natural Flavors" statements on the front and on the lids of its Ice Creams to provide consumers with information that would influence their purchasing decisions. ¶¶ 39, 42. Such statements are indisputably material to consumers. *See Kwikset Corp. v. Superior Ct.*, 51 Cal.4th 310, 238 (Cal. 2011) ("Simply stated: labels matter…consumers rely on the accuracy of those representations in making their buying decisions") (citations omitted). Having intended consumers to rely upon its front-of-package "All Natural Flavors" statements, DGIC cannot now avoid liability because of the type-size.

Second, DGIC's assertion that reasonable consumers would not interpret the label to mean "*all* ingredients in the product were natural" is meritless. As Plaintiffs alleged in the FACC, "[i]n common parlance, the use of the term 'flavor' in relation to ice cream refers to the ingredient(s) of the ice cream." ¶ 16; *see also id.* at ¶ 41 ("a reasonable consumer understands the use of the term 'flavor' in relation to ice cream to be referring to the entirety of the ice cream product (i.e., all of the ingredients of the ice cream)"). Indeed, the federal standard of identity for "Ice Cream" uses the term similarly. *See* 21 C.F.R. § 135.110(f)(6) ("If two or more flavors of ice cream are distinctively combined in one package, e.g., 'Neapolitan' ice cream, the applicable provisions…shall govern each flavor of ice cream"). DGIC also "markets its Dreyer's, Edy's and Häagen-Dazs varieties of ice cream as 'flavors' on the respective websites for Dreyer's, Edy's and Häagen-Dazs brands."[14] *Id.* at ¶ 16, n.6 (citing websites), Exh. 1 (showing DGIC's "flavor finder" which refers to each of its ice cream varieties as a "flavor"); Exh. 12 (showing labels of DGIC's labels referring to its ice creams

---

[14] DGIC tries to dismiss the "Flavor Finder" evidence cited in Plaintiffs' FACC by reference to its preemption arguments. *See* Def. Mem. at 15 n. 16. However, DGIC did not use the regulated term "natural flavor" on its Ice Creams; rather, it used the unregulated term "All Natural Flavors," to which preemption does not apply. *See* Section A(1), *supra*. DGIC also concedes that " 'flavor' has more than one meaning," that the whole product is being referred to when DGIC uses the word "flavor" for its ice cream, and that DGIC markets Dreyer's/Edy's Ice Creams in this fashion as Plaintiffs allege. Def. Mem. at 15 n.16.

as "fun flavors"). Thus, contrary to DGIC's arguments, Plaintiffs' have pled facts which render their theory, at a minimum, plausible.[15]

Moreover, DGIC does not contend that either of Plaintiffs' alternative theories of liability based upon the "All Natural Flavors" statements is implausible. *See* ¶¶ 44, 50-53 (asserting two additional theories for liability based upon "All Natural Flavors" statements); Def. Mem. at 14-19 (not addressing theories of liability pled in ¶¶ 44 and 50-53). Thus, even if the Court were to conclude that Plaintiffs' primary theory of liability is implausible, Plaintiffs would still be entitled to proceed with their "All Natural Flavors" claims on the alternative theories set forth in ¶¶ 44, 50-53.

### 2. Plaintiffs' Claims Based Upon The "All Natural" Statements On The Häagen-Dazs Ice Creams Are Meritorious

DGIC presents a laundry list of arguments in support of its contention that no reasonable consumer would be deceived by its "All Natural" statements on the 15 identified Häagen-Dazs Ice Creams (¶ 46). *See* Def. Mem. at 16-19. These arguments – ranging from ludicrous to the irrelevant – are meritless.

DGIC first contends that, at least with respect to seven (7) of the Häagen-Dazs flavors, the "All Natural Ice Cream" statements placed front and center on the labels referred only to "the ingredients in the ice cream" and not the "mix-ins," "as established by the ingredient list" on the back panel. Def. Mem. at 16; *see also id.* at 3.[16]   This argument fails as it is unsupported by the governing federal "ice cream" regulation, 21 C.F.R. § 135.110, and is contrary to the Ninth Circuit's holding in *Williams*, 552 F.3d 934.

---

[15] DGIC also points to the Splenda button as a basis to conclude that Plaintiffs' claims are implausible. *See* Def. Mem. at 15 n.15. This argument pertains only to the eight (8) Edy's "Slow Churned No Sugar Added" Ice Creams which have a Splenda button. *See* FACC Exh. 12 at 2-5. Moreover, this argument relies upon facts not contained in the pleadings and which are subject to dispute (i.e.*,* whether Splenda is an artificial sweetener or an artificial flavor, and whether a reasonable consumer would know whether Splenda is artificial or natural), and, in any case, even if established later in this litigation, this argument would not affect the plausibility of Plaintiffs' alternative theories of liability based upon DGIC's use of "All Natural Flavors."

[16] DGIC makes this argument with respect to these Häagen-Dazs flavors: chocolate chip cookie dough, banana split, caramel cone, java chip, mint chip, peppermint bark, and white chocolate raspberry truffle. *See* Def. Mem. at 16, n.17.

---

13

As discussed above, the FDA has established a "standard of identity" for "ice cream and frozen custard." *See* 21 C.F.R. § 135.110. "Ice cream" is a regulated term, which by definition includes not only the milk and cream, but also the flavor ingredients. *See* 21 C.F.R. § 135.110(a) (defining "ice cream")[17]; *Id.* at § 135.110(f) ("the name of the food is 'ice cream'"). Plainly, given the regulatory definition of "ice cream," there is nothing implausible about Plaintiffs' allegation that a reasonable consumer would interpret "All Natural Ice Cream" to mean that the entire ice cream product (including "mix-ins") is "All Natural."

Moreover, DGIC's assertion that it can make a false or misleading statement on the front of the Ice Creams, since consumers can search for contradictory information on the back panel, has been explicitly rejected by the Ninth Circuit in an "All Natural" case:

> We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box…We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception.

*Williams*, 552 F.3d at 939; see also *Delacruz v. Cytosport, Inc.*, 2012 WL 1215243, *6 (N.D.Cal. Apr. 12, 2012) (applying *Williams*). Clearly, DGIC's first argument fails.

Second, DGIC challenges Plaintiffs' claims by suggesting that "reasonable consumers do not likely buy ice cream for its health characteristics" and that "a reasonable consumer and even a 'health nut' would likely prefer a synthetic alkali…over a so-called 'natural' alkali mined from dirt." Def. Mem. at 16. However, such attempts to dispute the facts in the FACC, by relying on un-pled assumptions, cannot provide a basis for dismissal on a Rule 12(b)(6) motion. *Chavez*, 340 Fed.Appx. at 360 ("motion [to dismiss] is not a procedure for resolving a contest between the parties about the facts").

---

[17] 21 C.F.R. § 135.110(a) provides "*[i]ce cream* is a food produced by freezing, while stirring, a pasteurized mix consisting of one or more of the optional diary ingredients specified in paragraph (b)…, and *may contain* one or more of the optional caseinates specified paragraph (c)…, one or more of the optional hydrolyzed milk proteins as provided for in paragraph (d)…, and *other safe and suitable nonmilk-derived ingredients; and excluding other food fats, except such as are natural components of flavoring ingredients used* or are added in incidental amounts to accomplish specific functions."

Third, mischaracterizing Plaintiffs' FACC, DGIC asserts that "it is highly implausible that a reasonable consumer would likely expect the cocoa in a natural ice cream as alkalized with a so-called natural alkali agent," since "Plaintiffs agree … potassium carbonate is the most commonly used of the available alkalis for alkalized cocoa." Def. Mem. at 18-19.  In fact, as Plaintiffs pled, "either Potassium Carbonate or sodium carbonate" is generally used to Dutch cocoa (¶ 29), and, "the other commonly used alkali in making alkalized cocoa – sodium carbonate – is a recognized non-synthetic, natural substance." Id. (citing 7 C.F.R. §205.605(a)).  Given that a "natural" alkalizing agent is widely available, there is no basis for DGIC's contention that reasonable consumers would not believe that the alkalized cocoa in the Ice Creams was made with a "natural" alkalizing agent – consistent with the "All Natural" representations on the front labels.

Fourth, DGIC complains that Plaintiffs' claims are "arbitrary" and "random[]" since Plaintiffs' only object to the inclusion of artificial and synthetic ingredients, and not to the processed character of the ice cream.  Def. Mem. at 4, 18.  This is irrelevant.  Plaintiffs have alleged that DGIC's "All Natural" statements were false and misleading, because "All Natural" means and is understood by reasonable consumers as a promise that a food does not contain any artificial or synthetic ingredients.  ¶¶ 40, 49.  As other courts in this District have held, such allegations are sufficiently plausible to create an issue of fact that cannot be decided on a Rule 12(b)(6) motion. See, e.g., Vicuna v. Alexia Foods, Inc., 2012 WL 1497507, at *2 (N.D.Cal. Apr. 27, 2012) ("whether a reasonable consumer would likely be deceived by the designation 'All Natural' is a 'factual dispute'"; denying motion to dismiss); Astiana, 2011 WL 2111796, at *4.

Similarly, DGIC points to the Department of Agriculture's ("DOA's") National Organics Program ("NOP") regulations, and suggests that Plaintiffs' claims are implausible because potassium carbonate is a synthetic that is permitted in products labeled "organic." See Def. Mem. at 19.  It is irrelevant to Plaintiffs' claims that the DOA promulgated regulations that permit food to be called "organic" even if it contains synthetic ingredients in small quantities.[18]  "Organic" and "All Natural"

---

[18] Plaintiffs did cite to several organics regulations in the FACC, but only to establish the factual proposition that certain of the ingredients in the DGIC Products are recognized as synthetic or

1   are completely separate terms, with distinct meanings and distinct consumer expectations.   The

2   regulatory definition of the former does not dictate the meaning of the latter.

3       Finally, while DGIC cites to a string of false advertising cases that it asserts were dismissed

4   "because plaintiffs' theory [sic] liability was not plausible," *see* Def. Mem. at 19, none of those

5   dismissals were in "All Natural" cases or concerned the issue presently before this Court.   By

6   contrast, analogous "All Natural" cases have been permitted to go forward.   *See, e.g.*, *Vicuna*, 2012

7   WL 1497507, at *2, *Astiana*, 2011 WL 2111796, at *4.

8   **C.     Plaintiffs Have Alleged Detrimental Reliance On DGIC's "All Natural" And**
        **"All Natural Flavors" Misrepresentations**

9

10      DGIC seeks to dismiss Plaintiffs' claims under *Iqbal* and *Twombly*, suggesting Plaintiffs fail

11  to allege the reasons that "All Natural" and "All Natural Flavors" statements were material to them.

12  Def. Mem. at 19-20.   A fair reading of the FACC shows that DGIC's argument is without merit.

13  Each Plaintiff alleges that they try to avoid consuming foods that are not natural, and are willing to

14  pay more money for a natural product.   ¶¶ 7, 9-10.   Each Plaintiff also alleged that they specifically

15  relied on DGIC's "All Natural" and "All Natural Flavors" representations in deciding to purchase

16  DGIC's ice cream products.   ¶¶ 8-10.   Despite DGIC's musing that Plaintiffs' reasons why they

17  relied on its "All Natural" and "All Natural Flavors" might be inconsistent with the decision to

18  purchase ice cream in the first place – a supposition that is irrelevant since courts recognize that

19  labels matter to consumers (*see, supra*, p. 12), Plaintiffs have certainly alleged the reason DGIC's

20  misrepresentations were material to them, and that they relied on these statements to their detriment.

21      DGIC further challenges the plausibility of Plaintiff Astiana's detrimental reliance on its "All

22  Natural" and "All Natural Flavors" representations based on a host of irrelevant "facts" not pleaded

23  in the FACC.   *See* Def. Mem. at 20-22.   These arguments – which pertain only to Plaintiff Astiana –

24  provide no basis to dismiss Plaintiffs Rutledge-Muhs or Woolwine's claims.   Moreover, in

25  substance, they are no more than a factual dispute about whether a reasonable consumer could rely

26

27  _____

28  artificial substances.  *See* ¶¶ 27-33.  They did not rely upon the NOP regulations to establish the
    meaning of "All Natural."

16

CROLL

1    on DGIC's "All Natural" and "All Natural Flavors" claims, again, not a basis for dismissal at this

2    juncture. *Chavez*, 340 Fed.Appx. at 360; *Williams*, 552 F.3d at 938  ("whether a business practice is

3    deceptive will usually be a question of fact not appropriate for decision on demurrer").

4         DGIC invents "facts" from whole cloth based on the timing of when Ms. Astiana filed

5    several similar lawsuits alleging other companies misrepresented their products as being "All

6    Natural" to challenge the facts as alleged in the FACC regarding Ms. Astiana's reliance on DGIC's

7    "All Natural" and "All Natural Flavors" claims.[19]  Def. Mem. at 20-21.  Specifically, DGIC argues

8    Ms. Astiana cannot plausibly state she relied on DGIC's labels after bringing another action against

9    a different ice cream manufacturer which mislabeled its products as being "All Natural" despite

10   containing Cocoa Processed with Potassium Carbonate.  Def. Mem. at 20-21.  However, as Plaintiffs

11   allege, none of DGIC's ice cream identifies the Potassium Carbonate used to alkalize its cocoa and

12   DGIC could have used a natural alkalizing agent instead of Potassium Carbonate.[20]  FACC ¶¶ 29,

13   43.  As it is eminently reasonable for a consumer to trust that food companies are not lying to them

14   on their packaging (FACC ¶42), without knowing what alkalizing agent DGIC used in its products

15

16   _____

17   [19] In addition to DGIC simply being wrong about the timing of Ms. Astiana's purchases, the Court
     cannot find Plaintiffs' allegations to be implausible under Rule 12 based on facts not alleged in the
18   FACC.  *See Freeman v. ABC Legal Services Inc.*, --- F.Supp.2d ---, 2011 WL 6090699, *8
     (N.D.Cal., Nov. 10, 2011) (Chen, D.J.) (holding Court must accept plaintiff's allegations as true
19   under Rule 12(b)(6), and thus plaintiff's allegation that she was not served with lawsuit and that the
     defendant unlawfully falsified proofs of service of summons was sufficient to overcome a motion to
20   dismiss despite *prima facie* evidence of valid service).  If the Court takes judicial notice of the
     documents DGIC submitted (Dkt. 44) – a version of DGIC's Häagen-Dazs product label that may
21   not resemble the product Ms. Astiana purchased (Dkt. 44-02), copies of complaints filed in other
     cases against non-parties to this action (Dkt. 44-01 and 44-02), and a transcript from an oral
22   argument in another case (Dkt. 44-05) – the Court must treat DGIC's motion as a motion for
     summary judgment and cannot dismiss Plaintiffs action without finding that no genuine dispute as to
23   any material fact exists and that DGIC is entitled to judgment as a matter of law.  *Jacobson v. AEG
     Capital Corp.*, 50 F.3d 1493, 1496 (9th Cir. 1995) (holding  motion to dismiss under Rule 12(b)(6)
24   must be treated as a motion for summary judgment if the Court takes judicial notice of extrinsic
     records and transcripts from another federal action).  As explained *infra*, there is a genuine dispute of
25   material fact regarding Ms. Astiana's purchase, making summary judgment inappropriate.
26
27   [20] DGIC does not deny that the Potassium Carbonate used to alkalize its cocoa, or that any of the
     other ingredients identified in the FACC as being artificial or synthetic are, in fact, artificial or
28   synthetic.

1    when she purchased them, it was reasonable for Ms. Astiana to believe and rely on DGIC's labeling

2    that its products were "All Natural" and contained only "All Natural Flavors" as she alleged.

3          DGIC propounds a similarly specious argument that Ms. Astiana could not have plausibly

4    relied on DGIC's misrepresentations by manufacturing an inaccurate timeline based on "facts" not

5    alleged in the FACC based on when she filed other lawsuits complaining about the use of Glycerin

6    in products labeled as being "All Natural." Def. Mem. at 20-21. DGIC's plausibility argument is

7    completely belied by Ms. Astiana's actual conduct.

8          Ms. Astiana's original complaint against DGIC, filed June 14, 2011, complained only about

9    DGIC's use of Cocoa Processed with Potassium Carbonate. Dkt. 1, ¶¶ 1, 2, 6, 19-22. It was not

10   until the FACC was filed on March 30, 2012, that Plaintiffs first complained about DGIC's use of

11   synthetic Glycerin in its ice cream labeled "All Natural" and "All Natural Flavors." FACC ¶¶ 1, 2,

12   27. The FACC was filed over five months after Ms. Astiana purchased products containing

13   Glycerin subject to the lawsuit DGIC references, which was actually filed one week after the FACC.

14   Moreover, much like Cocoa Processed with Alkali, Glycerin could be made naturally or

15   synthetically so no reasonable consumer would know if a company used the synthetic or natural

16   version by simply reading a product's label. FACC ¶ 27. Accordingly, Ms. Astiana plausibly relied

17   on the "All Natural" labeling of the products she purchased, and her claims against DGIC here are

18   more than plausible given that DGIC used non-natural ingredients and flavors in its ice cream. If

19   anything, the timing of the actions themselves create a dispute of material fact regarding Ms.

20   Astiana's reliance on DGIC's labels, making summary judgment under Rule 56 inappropriate and

21   underscoring why such extrinsic facts cannot provide a basis for dismissal under Rule 12(b)(6).

22      **D.   This Court Should Not Dismiss Plaintiffs' Magnuson-Moss Warranty Claim**

23         DGIC contends Plaintiffs have failed to allege that it "provided a warranty as defined in the"

24   MMWA, 15 U.S.C. § 2301 *et seq*., because DGIC's "All Natural" and "All Natural Flavors"

25   labeling statements "are not representations as to the absence of defect" and do not "amount[] to a

26   promise that the product has no flaws." Def. Mem. at 23, 24. This argument fails as it is neither

27   supported by the text of the statute, nor the relevant case law.

28

18

The MMWA creates a federal cause of action for breach of a "written warranty". *See* 15 U.S.C. § 2310(b) and (d)(1). *Milicevic v. Fletcher Jones Imports, Ltd.*, 402 F.3d 912, 917 (9th Cir. 2005). A "written warranty" is defined to include (among other definitions):

> any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free…

15 U.S.C. § 2301(6)(A). DGIC's "All Natural" and "All Natural Flavors" statements fall squarely within this definition of "written warranty."[21] *See* FACC ¶¶ 70-80. Specifically, Plaintiffs have pled: "DGIC provided a 'written warranty' within the meaning of 15 U.S.C. § 2301(6) for the DGIC Ice Creams by identifying the ingredients in the ingredients list on each of the food products, and then prominently affirming and promising in writing on the labeling of the Ice Creams that the Ice Cream products were 'All Natural' or 'All Natural Flavors.'" *Id.*, ¶ 76. Clearly, when a food is the "consumer product" at issue, the ingredients are the component ***materials***, and statements about the identity and character of those component ***materials***, such as "All Natural" or "All Natural Flavors," constitute affirmations that "relate[] to the nature of the ***material*** or workmanship" within the meaning of 15 U.S.C. § 2301(6)(A). Further, as Plaintiffs alleged, DGIC's "All Natural" and "All Natural Flavors" statements "constituted, and were intended to convey to purchasers, a written promise that the ingredients in the products, including the flavor ingredients, were free of a particular type of defect (i.e., that they were not synthetic or artificial)." FACC ¶ 76.

In opposing Plaintiffs' MMWA claims, DGIC conclusorily asserts that the "All Natural" and "All Natural Flavors" statements do not relate "to the absence of defect in the product." Def. Mem. at 23. However, this argument is flatly contradicted by Plaintiffs' allegations. *See* FACC ¶ 76 (alleging "All Natural" and "All Natural Flavors" statements "constituted, and were intended to

---

[21] An "All Natural" promise on a food label is also recognized as creating an express warranty under California state law. *See Vicuna*, 2012 WL 1497507, *2 ("Here, plaintiffs have adequately stated a claim that the designation "All Natural" constituted a description of the potato products, or a statement of fact about the potato products, and that the warranty was breached by the inclusion of an ingredient that was arguably synthetic").

convey to purchasers, a written promise that the ingredients in the products, including the flavor ingredients, were free of a particular type of defect (i.e., that they were not synthetic or artificial)").

DGIC also erroneously asserts dismissal is warranted as "[o]nly when a statement amounts to a promise that the product has no flaws does it fit within the 'defect free' category of a 'written warranty," Def. Mem. at 24, but no such limitation is found in the statute or the available case law.

Contrary to DGIC's assertion, the MMWA expressly permits a plaintiff to bring claims based upon a written warranty pertaining to "the material **_or_** workmanship." 15 U.S.C. § 2301(6)(A) (emph. added).  Plainly, Congress intended to make actionable warranties that did not amount to a promise that the entire product was free of all defects.  *See, e.g.*, *Marine Midland Bank, N.A. v. Carroll*, 98 A.D.2d 516, 517-519, (N.Y.App.Div. 1984) (holding "Pre-Delivery Inspection Requirements … indicating that ***certain key parts*** in and attached to the vehicle had been inspected, tested and found to function as intended" constituted "written warranty").

Moreover, DGIC's argument is refuted by the very case that it cites in support of this proposition.  *See* Def. Mem. at 24 (citing *Goodman v. Perlstein*, 1989 WL 83452 (E.D.Pa. July 21, 1989).  In *Goodman*, the district court considered the question whether a written appraisal certificate accompanying the sale of diamonds constituted a "written warranty" under the MMWA.  *Id.* at *2. There, the plaintiffs sought to bring claims based upon written representations in the appraisal certificates of the insured value of the diamonds that had been sold to them, which they asserted were inflated.  The district court held that the appraisal certificate stating how much each diamond was worth was not a "written warranty" because the statements at issue in the certificates were "merely pecuniary." *Id.*  Simply put, statements of value (e.g., "this is worth $100") do not pertain to ***defects in materials or workmanship***.  Yet, directly refuting DGIC's argument here, the district court then stated that a "written warranty" would have been formed by a statement that "a particular diamond had no flaws" or "that the stone was rock-solid" or "impervious to chipping." *Id*. Thus, the court in *Goodman* agreed that the MMWA makes actionable ***both*** claims based upon warranties against all flaws, and claims based upon warranties against a particular flaw.

DGIC also cites *In re Sears, Roebuck & Co.*, 2006 WL 1443737 (N.D.Ill. May 17, 2006) in support of its contention that Plaintiffs' cannot state a claim that the DGIC Ice Creams were defect

20

free.  Def. Mem. at 24.  However, *Sears* is factually distinguishable, as the representations in *Sears* did not pertain to defects *in materials or workmanship*.  There, the district court held that "Made in USA" claims (i.e., claims pertaining to geography of origin) did not fit within the "defect free" prong of 15 U.S.C. § 2301(6)(A).  Like the "merely pecuniary" statements at issue in *Goodman*, the geographic representations at issue in *Sears* do not pertain to defects *in the materials or workmanship* since the product at issue was an identical product made through an identical process that could be made in the USA or elsewhere.  By contrast, in this case, the component materials (i.e., the ingredients) and manufacturing processes (i.e., "materials and workmanship") will be different if synthetic and artificial ingredients or "all natural" ingredients are used in DGIC's Ice Creams.

In sum, Plaintiffs' claims fall within the definition of "written warranty" adopted by Congress in the MMWA, and DGIC has cited no authority to suggest otherwise.

**E.  Plaintiffs May Assert Claims Based Upon Products They Did Not Purchase That Are Part Of The Same Product Line, But This Determination Is Made At Class Certification And Not On A Rule 12 Motion**

DGIC erroneously contends that Plaintiffs may not assert claims based upon the fifty-three ice cream flavors they did not purchase, because such claims are barred by the standing doctrine. Def. Mem. at 22-23.  However, the standing doctrine does not prevent Plaintiffs from asserting claims on behalf of others with similar, but not identical, claims.  As shown below, because Plaintiffs have standing vis-à-vis DGIC based upon the Ice Creams they purchased, the determination of whether the claims for the purchased Ice Creams are similar to the ones they did not purchase is a class certification inquiry that courts routinely defer until the Rule 23 class certification stage.  This is especially true where, as here, the ice cream flavors not purchased by Plaintiffs are part of the same product line and make the same "All Natural" and "All Natural Flavors" claims as the ice cream flavors purchased by Plaintiffs.  FACC ¶¶ 7-10, 46-47.

DGIC's sole argument is that Article III standing requires a showing of "injury-in-fact," *see* Def. Mem. at 22, which Plaintiffs cannot establish for "products they never purchased." *Id*. at 22.  In fact, however, Fed.R.Civ.P. 23 – not the standing doctrine – controls whether Plaintiffs may assert claims on behalf of others with similar, but not identical, claims.

21

Although DGIC cites a few cases applying the minority rule, the vast majority of courts and commentators agree that once a plaintiff has established individual standing vis-à-vis a defendant, Rule 23 and not the standing doctrine controls the scope of claims that may be asserted:

> The Court agrees with Plaintiff that treatises and the vast majority of persuasive authority indicate that Defendants' legal argument is flawed.  District courts in California routinely hold that the issue of whether a class representative "may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation." *Greenwood v. CompuCredit Corp.*, No. 08-04878 CW, 2010 WL 4807095, at *3 (N.D.Cal. Nov. 19, 2010); *Arevalo v. Bank of Am. Corp.*, -- F. Supp.2d ---, 2011 WL 1195973, at *4 (N.D.Cal. Mar. 29, 2011). Treatises and other circuits reach the same conclusion. *See Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) (holding that, because plaintiff had standing to sue for injury arising from his own benefit plan, his ability to represent class members with different benefit plans should be analyzed under Rule 23, not standing); 7AA Wright et al., Federal Practice and Procedure (3d 2005) § 1785.1.

*Bruno v. Quten Research Institute, LLC*, 2011 WL 5592880, at *3 (C.D.Cal. Nov. 14, 2011).  *See also Ralston v. Mortgage Investors Group, Inc.*, 2011 WL 4081696, at *3 (N.D.Cal. Sept. 12, 2011) ("the question whether [representative parties] may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation"); *Brazil v. Dell Inc.*, 2008 WL 4912050, at*5 (N.D.Cal. Nov. 14, 2008) ("Once standing is established, the requirements of Rule 23(a) 'effectively limit the class claims to those fairly encompassed by the named plaintiff's claims'").

The reasoning underpinning the majority rule is grounded in the Supreme Court's standing jurisprudence, as the Court of Appeals for the Sixth Circuit explained in *Fallick*:

> The Supreme Court made clear in *Warth* that '[i]n its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' *between himself and the defendant* within the meaning of Article III. This is the threshold question in every federal case, determining the power of the court to entertain the suit.' *Warth,* 422 U.S. at 498, 95 S.Ct. 2197 (emphasis added).

> Threshold individual standing is a prerequisite for all actions, including class actions…A potential class representative must demonstrate individual standing vis-à-vis the defendant; he cannot acquire such standing merely by virtue of bringing a class action...As this Court has made clear, however, "once an individual has alleged a distinct and palpable injury to himself he has standing to challenge a practice even if the injury is of a sort shared by a large class of possible litigants."…Once his standing has been established, whether a plaintiff will be able to represent the putative class, including absent class members, depends solely on whether he is able to meet the additional criteria encompassed in Rule 23 of the Federal Rules of Civil Procedure. *See Cooper v. University of Texas at Dallas*, 482

22

1   F.Supp. 187 (N.D.Tex. 1979); HERBERT B. NEWBERG & ALBA CONTE, NEWBERG
2   ON CLASS ACTIONS § 2.05 (3d ed.1992).

3   162 F.3d at 422-23 (some cit. om.).   The court then held that "once the district court correctly
4   determined that Fallick had standing…the court should then have analyzed whether Fallick satisfied
5   the criteria of Rule 23 with respect to the absent class members" in other ERISA plans.  *Id.* at 423.

6       As in *Fallick*, the Plaintiffs here have established their individual standing vis-à-vis DGIC,
7   since they purchased the Ice Creams in reliance on DGIC's "All Natural" and "All Natural Flavors"
8   labeling claims and were injured thereby.[22]   FACC ¶¶ 7-10.   Thus, Article III is satisfied, and
9   Plaintiffs have standing to challenge DGIC's practice of falsely labeling its products as "All Natural"
10  and "All Natural Flavors" when those products contained synthetic and artificial ingredients and
11  flavors – "even if the injury is of a sort shared by a large class of possible litigants." *Fallick*, 162
12  F.3d at 422.  This ends the standing inquiry.  If DGIC wishes to contest the scope of the products at
13  issue, the appropriate vehicle for resolution of that dispute is a Rule 23 motion.[23]  *See, e.g., Koh v.*
14  *S.C. Johnson & Son, Inc.*, 2010 WL 94265, at *3 (N.D.Cal. Jan. 6, 2010) ("there is no brightline rule
15  that different product lines cannot be covered by a single class…Thus, the court will defer ruling on
16  the issue until the class certification stage and denies defendant's motion to dismiss").

17      **F.     Plaintiffs Have Sufficiently Pled Fraud**

18      DGIC's two-sentence argument seeking dismissal of Plaintiffs' fraud claims, suggesting
19  Plaintiffs do not allege, "with particularity no less, any of the elements of fraud." Def. Mem. at 24.
20  This argument is hardly compelling, as DGIC provides no explanation of what might be missing,

[22] DGIC does not challenge Plaintiffs' Article III standing based upon the six ice cream flavors they purchased, and any such contention would be fruitless.  ¶¶ 7-10 (alleging injury in detail).  Similar allegations have been routinely found sufficient to establish Article III standing.  *See Chavez*, 340 Fed.Appx. 359 (finding plaintiff had standing based on soda purchases); *Carrea v. Dreyers Grand Ice Cream, Inc.*, 2011 WL 159380 (N.D.Cal. Jan 10, 2011) (finding plaintiff had standing based upon ice cream purchases); *Von Koenig*, 713 F.Supp.2d at 1066 (same).

[23] Indeed, DGIC contends "the challenged products have different ingredients and different labels and there is no legal or factual basis to assume…that consumer purchases of the different products are all based upon the same idiosyncratic purchasing habits of plaintiffs…" Def. Mem. at 23. ***These are classic Rule 23 arguments*** that have nothing to do with the requirements for Article III standing.

despite Plaintiffs pleading the "'who, what, when, where, and how' of the misconduct charged"
satisfying Fed.R.Civ.P. 9(b).  *Vess v. Ciba-Geigy Corp.*, *USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Indeed, Plaintiffs pled: the "All Natural" and "All Natural Flavors" statements were false
("**what**") (¶¶ 1); the statements were made by DGIC ( "**who**") (¶ 1); the statements were made on
the labels of the 59 Ice Creams flavors ("**where**") (¶¶ 46-47) ; the statements were made "throughout
the Class Period [June 14, 2007 through the present]" ( "**when**") (¶¶ 1-2); and the statements were
deceptive because DGIC's Ice Creams "contained artificial and/or synthetic ingredients and flavors"
including Propylene Glycol Monostearate, cocoa alkalized with Potassium Carbonate, Glycerin,
Mono and Diglycerides, Tetrasodium Pyrophospate, and Xantham Gum, which reasonable
consumers would not expect in "All Natural" or "All Natural Flavors" products ("**how**") (¶¶ 1, 40-
41, 43).  Plaintiffs' FACC appends exemplars of the labels at issue, providing DGIC with notice of
exactly which representations they are alleging are deceptive. FACC Exhs. 11-12.  Plaintiffs also
pled that DGIC knew of the falsity of these statements (¶ 45), that DGIC intended to induce reliance
(¶¶ 42, 86-87), that consumers, including Plaintiffs, justifiably relied on these statements (¶¶ 7-10,
42-43), to their detriment.  ¶¶ 7-10, 90.  Plaintiffs also pled additional supporting facts.  ¶¶ 1-2, 15-
60.  Notably, the purpose of Fed.R.Civ.P. 9(b) is simply to ensure a complaint is "'specific enough
to give defendants notice of the particular misconduct ... so that they can defend against the charge
and not just deny that they have done anything wrong,." *Bly-Magee v. California*, 236 F.3d 1014,
1019 (9th Cir. 2001).  Plaintiffs have pled their claims with sufficient particularity to meet this
standard.  Indeed, similar allegations were held sufficient under Rule 9(b) in recent labeling cases.[24]

### G.    Plaintiffs' Unjust Enrichment Claims Should Not Be Dismissed

DGIC contends that Plaintiffs "failed to sufficiently allege" unjust enrichment, because they
"have not alleged any wrongdoing by Dreyer's to suggest it has unjustly retained any benefits at

---

[24] *See Vicuna*, 2012 WL 1497507 at *2  ("the gist of the claims sounding in fraud is that plaintiffs
were deceived by the designation "All Natural" on the packages…they purchased….This is
sufficient to put Alexia on notice of the claims asserted against it"); *Ries v. Hornell Brewing Co.*,
2011 WL 1299286, at *4 (N.D.Cal. 2011) (allegations sufficient where labels attached to complaint);
*In re Ferrero Litig.*, 2011 WL 5438979, at *3 (S.D.Cal. 2011) (allegations sufficient to satisfy Rule
9(b)); *Chacanaca*, 752 F.Supp.2d at 1126 (same); *Von Koenig,* 713 F.Supp.2d at 1077-78 (same).

plaintiffs' expense." Def. Mem. at 24-25. This argument is unavailing: it is belied by Plaintiffs' pleadings, and is unsupported by the "All Natural" case law.

Plaintiffs pled a claim for "Restitution Based On Quasi-Contract/Unjust Enrichment" to recover monies unjustly received by DGIC from Plaintiffs for the Ice Creams as a result of its false "All Natural" and "All Natural Flavors" labeling. ¶¶ 127-129. DGIC does not challenge that a claim for unjust enrichment based on quasi-contract exists,[25] but insists that Plaintiffs' claim fails as a matter of law "[f]or the same reasons that plaintiffs' false advertising claims fail to state a cognizable claim." Def. Mem. at 24. In essence, DGIC asserts that no benefit was unjustly obtained, based upon its implausibility and materiality arguments discussed in Sections B and C, *supra*.

DGIC's argument should be rejected. As discussed above, and as pled in the FACC, labeling statements are material to consumers, who are entitled to and do rely on them. *See* Section C, *supra*. Further, as discussed above, Plaintiffs' theory of liability is viable. *See* Section B, *supra*. Indeed, unjust enrichment claims have been permitted to go forward in analogous "All Natural" food labeling cases. *See Astiana,* 2011 WL 2111796 at *11 (denying motion to dismiss in "All Natural" case)*; Vicuna,* 2012 WL 1497507 (same); *see also Delacruz*, 2012 WL 1215243, *11 (similar). Plaintiffs have pled that DGIC unjustly obtained a benefit based upon the "All Natural" and "All Natural Flavors" labeling. While DGIC might dispute the facts pled, that is no basis for dismissal of Plaintiffs' unjust enrichment claims under Rules 12(b)(1) or 12(b)(6).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court deny DGIC's Motion to Dismiss in its entirety. Should the Court find any deficiencies in the FACC warranting dismissal, Plaintiffs request leave to amend. Leave to amend is freely given unless the complaint could not possibly be cured by the addition of facts. *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987).

---

[25] As DGIC concedes, claims for restitution based upon quasi-contract are legally cognizable (Def. Mem. at 24). *See, e.g., Clear Channel Outdoor, Inc. v. Bently Holdings California LP,* 2011 WL 6099394, at *9 (N.D.Cal. Dec. 7, 2011) (Chen, J.); *Oracle Corp. v. SAP AG,* 2008 WL 5234260, *9 (N.D.Cal. Dec. 15, 2008). Contrary to DGIC's suggestion, the fact this claim may ultimately be "duplicative of plaintiff's [sic] other causes of action that allow for restitution," (Def. Mem. at 7) is no basis for dismissal at this early stage. *See Oracle Corp.*, 2008 WL 5234260 at *9.

25

DATED:  June 1, 2012                        Respectfully Submitted,


                                             s/ Joseph N. Kravec, Jr.
                                              Joseph N. Kravec, Jr. (*pro hac vice*)

                                            Wyatt A. Lison (*pro hac vice*)
                                            Maureen Davidson-Welling (*pro hac vice*)
                                            **STEMBER FEINSTEIN DOYLE**
                                               **PAYNE & KRAVEC, LLC**
                                            429 Forbes Avenue
                                            Allegheny Building, 17th Floor
                                            Pittsburgh, PA 15219
                                            Tel:  (412) 281-8400
                                            Fax:  (412) 281-1007
                                            Email:   jkravec@stemberfeinstein.com
                                                     wlison@stemberfeinstein.com
                                                     mdavidsonwelling@stemberfeinstein.com

                                            Michael D. Braun (Bar No. 167416)
                                            **BRAUN LAW GROUP, P.C.**
                                            10680 W. Pico Blvd., Suite 280
                                            Los Angeles, CA 90064
                                            Phone:   (310) 836-6000
                                            Fax:       (310) 836-6010
                                            E-Mail:   service@braunlawgroup.com

                                            Janet Lindner Spielberg (Bar No. 221926)
                                            **LAW OFFICE OF JANET LINDNER**
                                            **SPIELBERG**
                                            12400 Wilshire Blvd., Suite 400
                                            Los Angeles, CA 90025
                                            Phone: (310) 392-8801
                                            Fax:      (310) 278-5938
                                            E-Mail:  jlspielberg@jlslp.com


                                            Nabil Majed Nachawati, II (*pro hac vice*)
                                            **FEARS NACHAWATI LAW FIRM**
                                            4925 Greenville Avenue, Suite 715
                                            Dallas, TX 75206
                                            Tel: (214) 890-0711
                                            Fax: (214) 890-0712
                                            Email: mn@fnlawfirm.com


                                            ***PLAINTIFFS' INTERIM CO-LEAD***
                                            ***COUNSEL***

Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss First Amended Consolidated Complaint;
CASE NO.:  3:11-cv-02910-EMC

*ADDITIONAL PLAINTIFFS' COUNSEL:*

Daniel Roman Tamez
**GNAU AND TAMEZ LAW GROUP LLP**
1010 Second Avenue
Suite 1750
San Diego, CA 92101
Tel: (619) 446-6736
Fax: (619) 793-5214
Email: danieltamez@sdinjuryattorney.com

Ronald Dean Gresham
Jennifer Weber Johnson
**GRESHAM, PC.**
2311 Cedar Springs Road
Suite 200
Dallas, TX 75219
Tel:  (214) 420-9995
Fax: (214) 526-5525
Email: dgresham@greshampc.com
          jjohnson@greshampc.com

Roger L. Mandel
**LACKEY HERSHMAN LLP**
3102 Oak Lawn Avenue, Suite 777
Dallas, TX 75219
Tel:  (214) 560-2201
Fax: (214) 560-2203
Email: rlm@lhlaw.net

Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss First Amended Consolidated Complaint;
CASE NO.:  3:11-cv-02910-EMC

**PROOF OF SERVICE**

STATE OF PENNSYLVANIA          )
                               )   ss.:
COUNTY OF ALLEGHENY            )

     I am employed in the County of Allegheny, State of Pennsylvania.  I am over the age of 18 and not a party to the within action.   My business address is 429 Forbes Avenue, Allegheny Building, 17th Floor, Pittsburgh, PA  15219.

     On June 1, 2012, using the Northern District of California's Electronic Case Filing System, with the ECF ID registered to Joseph N. Kravec, Jr., I filed and served the document(s) described as:

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO MOTION TO DISMISS FIRST AMENDED CONSOLIDATED
COMPLAINT**

**[X]**    **BY ELECTRONIC TRANSMISSION USING THE COURT'S ECF SYSTEM:**   I caused the above document(s) to be transmitted by electronic mail to those ECF registered parties listed on the Notice of Electronic Filing (NEF) pursuant to Fed.R.Civ.P. 5(d)(1) and by first class mail to those non-ECF registered parties listed on the Notice of Electronic Filing (NEF).   *"A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing.   The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P. 5(d)(1).   A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."*

     I declare that I am admitted *pro hac vice* in this action.

     I declare under penalty of perjury under the laws of the United States that the above is true and correct.

     Executed on June 1, 2012, at Pittsburgh, Pennsylvania.

                             s/Joseph N. Kravec, Jr.
                             Joseph N. Kravec, Jr.