1  MAYER BROWN LLP
   Carmine R. Zarlenga (D.C. Bar No. 286244)
2  czarlenga@mayerbrown.com
   1999 K Street, N.W.
3  Washington, D.C. 20006-1101
   Telephone: (202) 263-3000
4  Facsimile: (202) 263-3300

5  MAYER BROWN LLP
   Dale J. Giali  (Cal. Bar No. 150382)
6  dgiali@mayerbrown.com
   350 South Grand Avenue
7  25th Floor
   Los Angeles, CA  90071-1503
8  Telephone: (213) 229-9500
   Facsimile: (213) 625-0248
9
10 Attorneys for Defendant
   DREYER'S GRAND ICE CREAM, INC.

11

12              **UNITED STATES DISTRICT COURT**

13            **NORTHERN DISTRICT OF CALIFORNIA**

14                **SAN FRANCISCO DIVISION**

15 SKYE ASTIANA, *et al.*,              ) Case No. C11-02910 EMC
                                        ) consolidated with
16              Plaintiffs,             ) Case No. C11-3164 EMC
                                        )
17     vs.                              ) **REPLY IN SUPPORT OF MOTION TO**
                                        ) **DISMISS FIRST AMENDED**
18 DREYER'S GRAND ICE CREAM, INC.,      ) **CONSOLIDATED COMPLAINT;**
                                        ) **DECLARATION OF DALE J. GIALI IN**
19              Defendant.              ) **SUPPORT**
                                        )
20 _____    ) Date:  July 6, 2012
                                        ) Time:  1:30 p.m.
21                                        Location: Courtroom 5, 17th Floor

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page(s)

I.   THE ARGUMENTS DETAILED IN DREYER'S MOTION RAISE APPROPRIATE
     GROUNDS FOR DISMISSAL AT THE PLEADING STAGE ................................................. 1

II.  PLAINTIFFS' STATE LAW CLAIMS CHALLENGING "ALL NATURAL
     FLAVORS" ARE PREEMPTED ...................................................................................... 4

     A.   So-Called "Factual Disputes" Do Not Undermine Preemption ................................... 4

     B.   For Preemption Purposes, There Is No Legal Significance To Inclusion Of The
          Word "All" Before "Natural Flavors" ...................................................................... 5

     C.   The Preemption Determination Is Not Dependent On Compliance With Federal
          Labeling Law .......................................................................................................... 7

     D.   The Ice Cream "Standard of Identity" Does Not Affect This Case, Let Alone
          The Preemption Analysis ......................................................................................... 9

III. PLAINTIFFS' PURCHASES PRIOR TO AND AFTER SUING DREYER'S NEGATE
     THE REQUIRED ELEMENTS OF MATERIALITY AND RELIANCE ............................ 12

IV.  PLAINTIFFS DO NOT HAVE STANDING REGARDING PRODUCTS NOT
     BOUGHT ....................................................................................................................... 13

V.   PLAINTIFFS HAVE NOT ALLEGED A MAGNUSON-MOSS ("MMWA") CLAIM ....... 15

CONCLUSION .......................................................................................................................... 15

DECLARATION OF DALE GIALI .............................................................................................. 16

CERTIFICATE OF SERVICE ...................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Arevalo v. Bank of Am. Corp.,*
   2011 WL 1195973 (N.D. Cal. Mar. 29, 2011) ........................................................ 13, 14

*Ashcroft v. Iqbal,*
   556 US 662 (2009) ................................................................................................................. 2

*Astiana v. Ben & Jerry's Homemade, Inc.,*
   2011 WL 2111796 (N.D. Cal. May 26, 2011) ........................................................... 7

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ............................................................................................................. 1

*Branch v. Tunnel,*
   14 F.3d 449 (9th Cir. 1994) ........................................................................................... 1

*Brazil v. Dell, Inc.,*
   2008 WL 4912050 (N.D. Cal. Nov. 14, 2008) .................................................... 14

*Brockey v. Moore,*
   107 Cal. App. 4th 86 (2003) ......................................................................................... 9

*Bruno v. Quten Research Institute, LLC,*
   2011 WL 5592880 (C.D. Cal. Nov. 14, 2011) .................................................... 14

*Chacanaca v. Quaker Oats Co.,*
   752 F. Supp. 2d 1111 (N.D. Cal. Oct. 24, 2010) ........................................... 6, 7

*Coyle v. Hornell Brewing Co.,*
   No. 08-2797 (D. N.J.) ........................................................................................................ 6

*Fallick v. Nationwide Mut. Ins. Co.,*
   162 F.3d 410 (6th Cir. 1998) ..................................................................................... 14

*Greenwood v. CompuCredit Corp.,*
   2010 WL 4807095 (N.D. Cal. Nov. 19, 2010) .................................................... 14

*Hal Roach Studios, Inc. v. Richard Feiner & Co.,.,*
   896 F.2d 1542 (9th Cir. 1989) ....................................................................................... 1

*Hairston v. South Beach Bev. Co., Inc.,*
   2012 WL 1893818 (C.D. Cal. May 18, 2012) ........................................... 2, 6, 15

-ii-

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

*Hill v. Roll Int'l Corp.*,
    195 Cal. App. 4th 1295 (2011)...............................................................................4

*Hitt v. Ariz. Bev. Co., LLC*,
    2009 WL 449190 (S.D. Cal. Feb. 4, 2009) .........................................................7

*In re Stac Elecs. Sec. Litig.*,
    89 F.3d 1399 (9th Cir. 1996)................................................................................1

*Jacobson v. AEG Capital Corp.*,
    50 F.3d 1493 (9th Cir. 1995)................................................................................1

*Johns v. Bayer Corp.*,
    2010 WL 476688 (S.D. Cal. Feb. 9, 2010) .......................................................14

*Koh v. S.C. Johnson & Son, Inc.*,
    2010 WL 94265 (N.D. Cal. Jan. 6, 2010) .........................................................14

*Lam v. General Mills, Inc.*,
    2012 WL 1656731 (N.D. Cal. May 10, 2012) ....................................................3

*Lockwood v. Conagra Foods, Inc.*,
    597 F. Supp. 2d 1028 (N.D. Cal. 2009)...............................................................7

*Pappas v. Naked Juice Co.*,
    2012 WL 1925598 (C.D. Cal. May 14, 2012) ...................................................15

*Radzanower v. Touche Ross & Co.*,
    426 U.S. 148 (1976)............................................................................................11

*Ralston v. Mortgage Investors Group, Inc.*,
    2011 WL 4081696 (N.D. Cal. Sep. 12, 2011)....................................................14

*Ries v. Hornell*,
    2011 WL 1299286 (N.D. Cal. Apr. 4, 2011) ......................................................6

*Rooney v. Cumberland Packing Corp.*,
    2012 WL 1512106 (S.D. Cal. Apr. 16, 2012)......................................................2

*Summit Technology, Inc. v. High-Line Medical Instrument Co., Inc.*,
    922 F.Supp. 299 (C.D. Cal. 1996)........................................................................1

*Turek v. Gen. Mills, Inc.*,
    662 F.3d 423 (7th Cir. 2011)................................................................................5

28

-iii-

# TABLE OF AUTHORITIES

**Page(s)**

*Von Koenig v. Snapple Beverage Corp.*,
   713 F. Supp. 2d 1066 (E.D. Cal. 2010) ............................................................... 7

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
   592 F.3d 954 (9th Cir. 2010) ............................................................................... 1

*Williams v. Gerber*,
   552 F.3d 934 (9th Cir. 2008) ........................................................................... 3, 4

*Wyeth v. Levine*,
   129 S. Ct. 1187 (2009) ...................................................................................... 12

**STATUTES**

21 U.S.C. § 341 .................................................................................................... 12

21 U.S.C. § 343-1 ...................................................................................... 5, 8, 12

**OTHER AUTHORITIES**

21 C.F.R. § 101.22 ................................................................................ 5, 8, 9, 11, 12

21 C.F.R. § 135.110 ................................................................................ 9, 12, 13

Plaintiffs' opposition is a welter of circular arguments and fundamental misunderstandings about the applicable law and motion to dismiss jurisprudence. In this reply, defendant Dreyer's Grand Ice Cream, Inc. focuses on the major errors in plaintiffs' opposition.[1]

# I. THE ARGUMENTS DETAILED IN DREYER'S MOTION RAISE APPROPRIATE GROUNDS FOR DISMISSAL AT THE PLEADING STAGE.

Plaintiffs erroneously argue throughout their opposition that if they alleged it in the FACC, it is off limits on a motion to dismiss. *See, e.g.*, Opp. 9:8, 11:19-20, 11:n.13, 12:12, 19:21. They repeat ad nauseam (Dreyer's unofficial count stopped at 20 discrete references) a related and likewise erroneous point – that self-defined "fact disputes" also are off limits on a motion to dismiss. *See, e.g., id.*, 2:2-3, 2:5, 5:8, 6:2, 8:12-13, 9:17-18. Combining the two points, plaintiffs reach the convenient conclusion that nearly the entirety of the FACC is immune from attack simply by citing to their allegations. The law, of course, dictates no such result.

Although the Court must accept well-pled factual allegations as true when ruling on a motion to dismiss, it need not accept as true implausible allegations, unwarranted or unreasonable inferences, allegations contradicting facts subject to judicial notice, or legal conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010); *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996); *Summit Technology, Inc. v. High-Line Medical Instrument Co., Inc.*, 922 F.Supp. 299, 304 (C.D. Cal. 1996). To be legally sufficient, plaintiffs' factual allegations must "state a claim to relief that is plausible on its face" and "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at

---

[1] Plaintiffs did not file opposition to Dreyer's request for judicial notice. Contrary to plaintiffs' argument (Opp., n.19), the Court may on a motion to dismiss consider material submitted as part of the complaint and matters subject to judicial notice, without converting the motion into one for summary judgment. *Branch v. Tunnel*, 14 F.3d 449, 454 (9th Cir. 1994); *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555, n.19 (9th Cir. 1989). The case cited by plaintiffs (*Jacobson v. AEG Capital Corp.*, 50 F.3d 1493 (9th Cir. 1995)), related to motion to dismiss proceedings in which "the district court took judicial notice of . . . extensive records" and the Ninth Circuit decided to treat the motion as a summary judgment on appeal, without determining that the district court erred in taking judicial notice of the materials in a motion to dismiss proceeding.

555, 570.  A claim is plausible on its face only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 US 662, 678 (2009) (plaintiff required to specify "'grounds'" of their "entitlement" to relief, which requires more than "labels and conclusions" and for which "a formulaic recitation of the elements of a cause of action will not do").

Many courts have applied these principles to dismiss false advertising cases at the pleading stage based on the same grounds Dreyer's raises in its motion, i.e., preemption (Motion, 19), plausibility (Motion, 7, 11 & n.12), standing (Motion, 22), etc.  This includes cases focusing on "natural" claims, a fact refuting plaintiffs' insinuation (Opp., 16:4-5) that "natural" cases are somehow an exception to the general rules of pleading.

For example, the Central District of California recently dismissed a putative consumer class action alleging false advertising under California consumer protection laws relating to "all natural" labeling statements on SoBe beverage products.  *Hairston v. South Beach Bev. Co., Inc.*, 2012 WL 1893818 (C.D. Cal. May 18, 2012).  Plaintiff alleged the labeling statement was deceptive because the products contained non natural ingredients, including "xanthan gum" (an ingredient challenged in this case, FACC, ¶ 32).  In dismissing the complaint with prejudice, the court concluded

> that no reasonable consumer would read the "all natural" language as modifying the "with vitamins" language and believe that the added vitamins are supposed to be "all natural vitamins."  Moreover, to the extent there is any ambiguity, it is clarified by the detailed information contained in the ingredient list, which explains the exact contents of Lifewater . . . The Court concludes that Plaintiff's selective interpretation of individual words or phrases from a product's labeling cannot support a CLRA, FAL or UCL claim. . . . [¶] Accordingly, the Court concludes that the challenge to the "all natural" language on Defendants' Lifewater is not deceptive as a matter of law.

*Id*. at *5;[2] *see also, Rooney v. Cumberland Packing Corp.*, 2012 WL 1512106 (S.D. Cal. Apr. 16, 2012) (dismissing without leave claims challenging "Sugar in the Raw" as not natural, unprocessed sugar).

---

[2] The *Hairston* holding is entirely supportive of Dreyer's argument that "All Natural Ice Cream" refers to the ice cream base and not the mix-ins.  Motion, 16.

1      Likewise, this Court – in a case challenging an analogous "strawberry naturally flavored"

2  statement – recently issued a decision fully supportive of Dreyer's preemption argument and against an

3  argument (like plaintiffs make here) equating the words "flavors" and "ingredients:"

4         General Mills contends that Lam's claims are preempted because
           statements that the Fruit Snacks are . . . "naturally flavored" are
5         expressly permitted by FDA regulations promulgated under 21 U.S.C. §
           343(k). . . . [¶] Lam . . . argues that the . . . "naturally flavored" labels are
6         false and misleading because Fruit Snacks are flavored with "unnatural,
           non-fruit ingredients." . . . [¶] [U]nder 21 C.F.R. § [101.22(i)], a product
7         may be labeled as . . . "naturally flavored," even if it does not contain . . .
           natural ingredients. . . . [¶] Lam points to a number of cases concerning
8         the use of the labels "natural" and "all natural" to describe a product's
           ingredients.  ***These cases are inapposite since they deal with the
9         labeling of a product's __ingredients__, not the labeling of its __flavors__***.
           Here, the labeling challenged by Lam—which is related to the Fruit
10        Snacks flavor—is expressly permitted by FDA regulations.  This was not
           the case in the authority relied upon by Lam. . . . [¶]  For these reasons,
11        the Court finds that Lam's claims are preempted to the extent they are
           predicated on the "naturally flavored" and "fruit flavored" labels.

12  *Lam v. General Mills, Inc.*, 2012 WL 1656731, at *4 (N.D. Cal. May 10, 2012) (citations and footnotes

13  omitted; emphasis added).

14      For these reasons, plaintiffs' auto-pilot-like reliance on *Williams v. Gerber*, 552 F.3d 934, 938

15  (9th Cir. 2008) (Opp. 11, 13, 14, 17), for the general proposition that a motion to dismiss may not be

16  appropriate in false advertising litigation does nothing to advance plaintiffs' response to the relevant,

17  record-specific arguments presented by Dreyer's motion.  *Williams* teaches that it is entirely proper for

18  a judge to assess the legal sufficiency of false advertising allegations and, in appropriate

19  circumstances, dismiss the complaint at the pleading stage.  *Williams*, 552 F.3d at 939.

20      The record here is far different than the one presented in *Williams*.  Contrasting the two records

21  is instructive and fully supportive of Dreyer's.  First, the *Williams* court did not consider preemption.

22  *Id.* at 937.  Moreover, in *Williams*, a single label was challenged that used "the words 'Fruit Juice'

23  juxtaposed alongside images of fruits such as oranges, peaches, strawberries, and cherries," but "the

24  product contained *no* fruit juice from *any* of the fruits pictured on the packaging . . . ."  *Id.* at 936

25  (emphasis added).  On that record, the court ruled that the legal sufficiency of allegations of *actual*

26  misleading statements and images on the front label, with a *correction* in small print on the side label,

27  could not be determined as a matter of law on a motion to dismiss.  *Id.* at 939.

28

1        This case is not *Williams*, and for the numerous reasons detailed in Dreyer's motion and this

2   reply, it is entirely appropriate for the Court to consider and dismiss plaintiffs' claims at the pleading

3   stage.  *See also, e.g., Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295 (2011) (false advertising claims

4   under California consumer protection laws challenging Fiji Water properly dismissed on demurrer

5   because plaintiff's theory of liability not plausible).

6   **II.     PLAINTIFFS' STATE LAW CLAIMS CHALLENGING "ALL NATURAL FLAVORS"**

7   **ARE PREEMPTED.**

8        "Natural flavors" – both its meaning and use on food labels – is expressly regulated by federal

9   labeling law (Motion, 8) that is covered by NLEA preemption (*id.*, 10).  Plaintiffs state law claims

10  attempt to impose requirements that are not identical to the federal requirements (*id.*, 11) and are,

11  therefore, preempted (*id.*, 10-11).  Plaintiffs offer several disparate arguments against federal

12  preemption, but each fails.

13       **A.     So-Called "Factual Disputes" Do Not Undermine Preemption.**

14       For the reasons stated in Section I above, plaintiffs' general refrain that its allegations "at a

15  minimum" (Opp., 13) raise "factual disputes" that prohibit dismissal is incorrect.  Plaintiffs' "factual

16  disputes" argument is particularly weak against preemption.  Plaintiffs argue the existence of factual

17  disputes on issues such as whether certain ingredients are "flavors," whether the ingredients alleged to

18  be "flavors" are "natural" or "artificial," whether the word "flavor" has the same meaning as

19  "ingredients," whether the word "All" in "All Natural Flavors" takes the statement out of the federal

20  regulations, and whether issues about the statement "natural flavor" should be interpreted under the

21  same rubric as a "characterizing flavor."  Opp., 8-11.  But these so-called factual disputes are nothing

22  more than the core questions to be resolved under federal labeling law – they do not undermine

23  preemption, they are the issues that show the claims are preempted.  The whole point of preemption is

24  that the factual issues that exist – including the exact types of issues raised by plaintiffs – must be

25  assessed and determined under labeling requirements identical with federal law.  If it were otherwise, a

26  preemption determination could never be made at the outset of litigation, as a plaintiff always can (and

27  does) allege factual issues regarding the underlying facts.

28

1    **B.      For Preemption Purposes, There Is No Legal Significance To Inclusion Of The**

2    **Word "All" Before "Natural Flavors."**

3           Plaintiffs attempt to make much of the inclusion of the word "All" before "Natural Flavors" in

4    arguing – with the help of some selective micro-parsing – that it converts the phrase used by Dreyer's

5    into the "unregulated term . . . "***All Natural*** Flavors." Opp., 4, 7 (emphasis in original).  But, the plain

6    language of the preemption statute, as well as the practice of the FDA, do not allow plaintiffs' exercise

7    in semantics to change the preemption result.

8           The language of the preemption statute itself is dispositive of plaintiffs' "All" argument.  The

9    statute preempts "***any*** requirement" regarding "labeling" that is "***of the type***" covered by federal law

10   and "not identical to" federal law.  21 U.S.C. § 343-1.  The state law requirements that plaintiffs are

11   trying to impose are without question "***of the type***" governed by 21 C.F.R. § 101.22(a)(3), whether the

12   word "All" is included on the label or not, and, accordingly, the preemption statute applies.  The

13   Seventh Circuit recently recognized the particularly strong preemptive language of the NLEA" in

14   affirming preemption.  *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 426-27 (7th Cir. 2011).  Moreover,

15   recent FDA regulatory activity confirms that the FDA does not recognize a difference between a

16   labeling statement of "natural" vs. "*all* natural."[3]  And courts do not allow a plaintiff to "game" the

17

18   _____

19   [3]  *Compare, e.g.,*

20       • FDA Warning Letter to Oak Tree Farm Dairy, Inc. (August 16, 2001) at 1 ("All Natural"
         statement on lemonade product)

21         http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2001/ucm178712.htm

22       • FDA Warning Letter to Bagels Forever, Inc. (July 22, 2011) at 2 (bagel product labeled as "All
         Natural")

23         http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2011/ucm265756.htm *and*

24       • FDA Warning Letter to Alexia Foods, Inc. (Nov. 16, 2011) at 1 (potato and mushroom product
         labeled as "All Natural")

25         http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2011/ucm281118.htm

         *with*

26       • FDA Warning Letter to Shemshad Food Products, Inc. (Mar. 11, 2011) at 4 (lime juice product
         labeled as "natural")

27         http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2011/ucm247908.htm *and*

28                                                                                        (Continued...)

1   preemption analysis by emphasizing certain labeling statements over others.  *See, e.g., Chacanaca v.*

2   *Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1119-21 (N.D. Cal. Oct. 2010) (preemption as to "0 g trans

3   fat" statement even where made alongside other statements, including "made with whole grain oats,"

4   "good source," and "wholesome," not all of which were subject to federal preemption); *Hairston*, 2012

5   WL 1893818, at *3-4 (plaintiff could not avoid preemption regarding the regulated fruit name and

6   vitamin name on labels by arguing that labeling statements related solely to unregulated "all natural"

7   statement or by arguing that fruit name and vitamin name claims were included only as "support" for

8   "all natural" claim).  Permitting a plaintiff to avoid preemption in this manner would "undermine the

9   purpose of the federal labeling standards which includes avoiding a patchwork of different state

10   standards."  *Hairston*, 2012 WL 1893818, at *3 (*citing Ries v. Hornell*, 2011 WL 1299286 (N.D. Cal.

11   Apr. 4, 2011), for the holding that while plaintiffs' "all natural" claim was not preempted, the related

12   "fruit name" claim for the beverage products was still preempted).  There is no basis for plaintiffs'

13   argument that their label challenges here should be allowed to proceed differently.

14       What is more, the FACC itself undermines the "All" argument.  As plaintiffs allege (FACC, ¶

15   15), "all" simply means "the whole extent or quantity of," a meaning that does not and could not

16   modify in any legally significant way the definition of "Natural Flavors" – i.e., whether one is referring

17   to "All" or "less than All," the meaning of "Natural Flavors" (whatever it is) is the same.  Indeed,

18   when trying to support another of their semantic arguments – i.e., equating the phrase "All Natural

19   *Flavors*" with "All Natural *Ingredients*" – plaintiffs concede that "All" has *no* legally significant

20   meaning to a reasonable consumer when placed before "Natural Flavors:"

21   

22   (...Continued)

23   • FDA Warning Letter to Lebanese Arak Corp. (Sept. 28, 2011) at 3 (lemon juice product labeled
      as "natural")

24      (http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2011/ucm274047.htm

25   Likewise, in *Coyle*, referenced by plaintiffs in their complaint (*see* FACC, ¶¶ 18, 19 & Ex. 4), the court
     sought FDA's guidance on meaning of the single word "natural" with respect to a false advertising

26   claim challenging the labeling statement "*100%* Natural," with no distinction between the two.  *See*
     *Coyle v. Hornell Brewing Co.*, No. 08-2797 (D. N.J.) (Dkt. #72, ¶ 2) (emphasis added).

27   

28

[A] reasonable consumer understands the term "natural" to mean that none of the ingredients are synthetic and none of the ingredients are artificial.  When the term "natural" is broadened to "*All* Natural" . . . , there is no question that a reasonable consumer understands the term "All Natural" to mean that none of the ingredients are synthetic and none of the ingredients are artificial . . . . *[B]oth* [terms] warranted and represented to consumer that these products contain only natural ingredients, and that none of the components of these products is artificial and synthetic . . . . [¶] *This is equally true with DGIC's Dreyer's and Edy's Ice Cream labeled as being "All Natural Flavors* . . . ."

FACC, ¶¶ 40, 41 (emphasis added).

The various cases plaintiffs cite (Opp., 6-7) are readily distinguishable, because the labeling statements challenged in those cases were unquestionably unregulated by federal law, and, therefore, unquestionably not subject to preemption.  *See, e.g., Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796, at *1 (N.D. Cal. May 26, 2011) (products labeled "all natural," an unregulated term); *Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1070 (E.D. Cal. 2010) (same); *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1029 (N.D. Cal. 2009) (same); *Hitt v. Ariz. Bev. Co., LLC*, 2009 WL 449190, at *1-2 (S.D. Cal. Feb. 4, 2009) (same); *Chacanaca*, 752 F. Supp. 2d at 1114 (products labeled "wholesome," an unregulated term).  None of these cases involved a "natural flavors" or "all natural flavors" labeling statement, a distinction that Judge Hamilton found determinative on the preemption question in *Astiana v. Ben & Jerry's*.  Motion, n.11.

## C.    The Preemption Determination Is Not Dependent On Compliance With Federal Labeling Law.

Plaintiffs expose a fundamental misunderstanding of preemption jurisprudence in arguing that "it is well settled that express preemption only applies if [Dreyer's] has complied with the regulation," and that Dreyer's alleged "failure to comply with the federal definition of 'natural flavor'" means that express preemption does not bar the claims here.  Opp., 2:13-15, 8:14-15.  Preemption is not dependent on compliance with the law.  Preemption depends on whether plaintiffs are attempting to impose "***any*** requirement" regarding "labeling" that is "***of the type***" covered by and "not identical to" federal law. 21 U.S.C. § 343-1.  Compliance with federal law is neither referenced in section 343-1 nor a requirement of preemption.

1      In any event, and even though compliance is not required for preemption, plaintiffs' arguments

2  that Dreyer's does not comply with federal labeling law are wrong as a matter of law.  Plaintiffs argue

3  such things as (i) "flavor" under the federal regulations means an "ingredient[] that impart[s] a taste or

4  aroma into the product," allowing plaintiffs to self-define any ingredient as a "flavor," and (ii) that

5  "flavor" has no specialized meaning and is synonymous with the word ingredient, i.e., reasonable

6  consumers understand the word "flavor" to mean all "ingredients" in ice cream, allowing plaintiffs to

7  argue that "All Natural Flavors" means "the whole extent or quantity of the ingredients contained in

8  the ice cream" are natural.  FACC, ¶ 41, 44; Opp., 5, 6, 8:8-9, 12.[4]  Setting aside that these two

9  arguments are internally inconsistent, they are flatly incompatible with federal labeling law, which

10  expressly defines flavors.  21 C.F.R. § 101.22(a)(1) & (3).  The detailed definitions make clear both

11  that not everything that imparts flavor is a "flavor" and that "flavor" does not mean "ingredient."

12      Likewise, plaintiffs allege that "propylene glycol" and "potassium carbonate" are artificial

13  flavors, but provide no basis for the allegation.  While any ingredient may impart taste/flavor, plaintiffs

14  do not show how these ingredients are in the product as a flavor additive that meets the regulatory

15  definition.  Plaintiffs also do not even attempt to explain what "flavor" these ingredients are (Propylene

16  glycol flavor?  Potassium carbonate flavor?).[5]  The regulations make clear that merely imparting flavor

17  is not sufficient to declare an ingredient a "flavor" as defined at 21 C.F.R. § 101.22(a).  Indeed, if

18  "imparting flavor" was the requirement, almost all ingredients would be "flavors," as many (indeed,

19  most) ingredients in a product impart some sort of flavor.  Plaintiffs implicitly understand this point

20  when they allege (FACC, ¶ 27) that glycerin is a non natural ingredient that is a "sweetener," i.e., it

21  clearly is an ingredient that would impart taste or flavor to a product.  But, plaintiffs do *not* allege that

22  glycerin is a "flavor."

_____

24  [4] Plaintiffs' attempted imposition of their own incorrect definition of "flavor" not only establishes

25  plaintiffs' threshold misunderstanding of the applicable regulations, but makes it clear that plaintiffs *are* attempting to impose a state-law requirement that is not identical to federal law.

26  [5] As plaintiffs readily concede (FACC, ¶ 29), potassium carbonate is used merely to adjust the pH of

27  cocoa, and that it is the *cocoa* that imparts flavor, not the alleged non natural potassium carbonate.

28

**D.     The Ice Cream "Standard of Identity" Does Not Affect This Case, Let Alone The Preemption Analysis.**

Plaintiffs cite to the "ice cream and frozen custard" "standard of identity," found at 21 C.F.R. § 135.110, claiming that it is their "third theory of liability," and, if all else fails, it survives.  Opp., 5, 9-11.  For numerous reasons, the ice cream standard of identity is not plaintiffs' "magic bullet."

*First*, the ice cream standard of identity has no relevance to plaintiffs' theory of liability.  The ice cream standard of identity details FDA's requirements of a product before it can be labeled "ice cream."  Plaintiffs do not allege that any of the challenged products are labeled "ice cream" without meeting the standard of identity for ice cream.[6]  The ice cream standard of identity also addresses the "name" of the product, including how a "characterizing flavor" may be stated in the name when *artificial* flavors are present.  21 C.F.R. § 135.110(f).  Plaintiffs do not sue regarding the *name* of any of the challenged products, either.[7]  There are no allegations, for example, that plaintiffs materially relied on the *name* of the product in their purchasing decision or that their expectations based on the *name* were somehow frustrated because the *name* of the product misled them.[8]

---

[6] In fact, seven of the challenged products are not labeled "ice cream" at all, and are not governed by the ice cream standard of identity.  Each of the "fun flavors" challenged by plaintiffs are "frozen dairy desserts."  *See* FACC, Ex. 12 (pages 6 of 24 to 9 of 24).  Plaintiffs erroneously include the words "ice cream" when listing the products in their allegations (FACC 47i – 47o), but it is the label that governs, not plaintiffs' erroneous allegations.  *See, e.g., Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (2003) ("the primary evidence in a false advertising case is the advertising itself").

[7] Plaintiff Rutledge-Muhs alleges she purchases mint chocolate chip ice cream.  FACC, ¶ 9.  As the label of that product shows (FACC, Ex. 12, p. 21 of 24), the product is called "Rich & Creamy Grand Ice Cream Mint Chocolate Chip."  There is no reference to "flavors" in the name.  The challenged statement ("All Natural Flavors") appears far to the side the product name in inconspicuous print.  FACC, Ex. 12, p. 21 of 24.  The Dreyer's/Edy's product names can be contrasted with the name of the challenged Häagen-Dazs products:

chocolate chip
cookie dough
ALL NATURAL ICE CREAM

RJN, Ex. 3.

[8] It, therefore, is not remarkable that (as plaintiffs note, 10:2, 11:3-4) Dreyer's did not separately address in its motion an issue that was irrelevant to attacking the complaint, i.e., federal preemption of state law claims implicating labeling requirements addressed in the ice cream standard of identity.

(Continued...)

Rather, plaintiffs challenge the labeling statement "All Natural Flavors," which is not part of the product name, and is not discussed in, governed by, or required by the ice cream standard of identity. To be sure, plaintiffs conclusorily allege violation of the ice cream standard (FACC, ¶¶ 50-53), but the factual allegations of the FACC relate solely to the "All Natural Statement" labeling statement and do not reference the name of the products in any way. *See, e.g.*, FACC, ¶¶ 2 (p. 2), 6, 8, 9, 10 (p. 7), 39, 48, 61, 64 & Ex. 13 (CLRA demand letter); *see also* Opp. 2 ("Plaintiffs each pled they relied on the 'All Natural Flavors' and 'All Natural Ice Cream' claims in purchasing DGIC's ice cream, those claims were material to them, and that they did not get what they paid for"), Opp. 16 ("Each Plaintiff also alleged that they specifically relied on DGIC's 'All Natural' and 'All Natural Flavors' representations in deciding to purchase DGIC's ice cream products").

**Second**, for the same reason plaintiffs' primary theory of liability fails, so does their ice cream standard of identity theory. Even assuming plaintiffs allege the Dreyer's/Edy's products violate the ice cream standard of identity because the product names do not disclose the presence of artificial flavors, for the same reasons Dreyer's labels do not violate the federal regulations regarding the use of the phrase "All Natural Flavors," Dreyer's does not violate the naming requirements in the standard of identity. Plaintiffs anticipate this very argument – i.e., that the standard of identity allegations add *nothing* to their allegations once filtered through the definitions or "natural flavors" and "artificial flavors" – by arguing that the ice cream standard of identity supersedes and controls over the definitions of "natural flavors" or "artificial flavors" where those definitions conflict with the ice cream standard of identity. Opp., 5:22, 10:26-11:2. From this argument, plaintiffs can assert that the federal definitions of "natural flavors" and "artificial flavors" "are not applicable" to ice cream and, therefore, Dreyer's has no preemption argument. The argument is specious.

---

(...Continued)

Given that plaintiffs – only now in their opposition brief – appear to be relying on the standard of identity in ways not evident from the actual factual allegations of the FACC, Dreyer's addresses preemption relating to standard of identity later in this reply (pages 11-12, *infra*), and shows that state law claims imposing requirements "of the type" set out in the ice cream standard of identity are preempted.

As an initial matter, there is no conflict between the ice cream statement of identity and 21 C.F.R. § 101.22(a) on the only issue of importance, i.e., the definitions of "natural flavors" and "artificial flavors." The ice cream standard of identity provides *no* definition of natural and artificial flavors and there is no basis for plaintiffs' allegation that the ice cream standard of identity does not follow the definitions set out in 21 C.F.R. § 101.22(a). Tellingly, plaintiffs do not (because they cannot) identify where the Court or Dreyer's can locate the definitions for natural and artificial flavors that govern ice cream in the absence of the ones found at 21 C.F.R. § 101.22(a).[9]

The "conflict" referenced by plaintiffs between the ice cream standard of identity and 21 C.F.R. § 101.22, and that is the subject of the 1983 advisory opinion attached to plaintiffs' opposition (Opp., 11:1-2 & Ex. 2), has nothing to do with this case. The issue addressed in the 1983 letter relates to the *name* of an ice cream product, and specifically whether the *characterizing flavor* referenced in the *name* should follow the characterizing flavor rules of the ice cream standard of identity or the rules in the flavor regulation.[10] As to that discrete issue, the advisory opinion concludes that the ice cream standard of identity prevails.

***Third***, and in any event, even assuming plaintiffs' state law claims are based on the ice cream standard of identity, those claims are subject to preemption under section 21 U.S.C. § 343-1(a)(1), as

---

[9] And, of course, if some sort of conflict did exist, a well-recognized canon of statutory construction dictates that the definitions found in 21 C.F.R. § 101.22(a) would apply because they clearly are more specific on the issue (defining artificial and natural flavors) than the ice cream standard of identity. *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976) (court faced with conflict between broad, general statute and another statute that deals more specifically with a particular issue, will treat the more specific statute as controlling in its realm).

[10] Though of no relevance to this case, the specific conflict related to the amount of artificial flavoring present in the product that would require a reference in the product name that the ice cream is "artificially flavored." Again, for both the characterizing flavor rule found at 21 C.F.R. § 101.22(i) and in the ice cream standard of identity (21 C.F.R. § 135.110(f)(2)), the definitions of "natural flavors" and "artificial flavors" are those found at 21 C.F.R. § 101.22(a)(1) & (3). Because Dreyer's products labeled as "All Natural Flavors" do not contain any artificial flavors (again, as defined in 21 C.F.R. § 101.22(a)(1)) there is no requirement under the ice cream standard of identity for Dreyer's to reference that the product contains natural flavors (21 C.F.R. § 135.110(f)(2)(i)) and certainly no requirement that it reference artificial flavors.

1   prohibited "requirement[s] for a food which is the subject of a standard of identity established under

2   section . . . 21 U.S.C. § 341."  Plaintiffs concede that 21 C.F.R. 135.110 is the ice cream "standard of

3   identity" (*see e.g.*, Opp., 5:21, 12:16, 14:1), and 21 C.F.R. 135.110, itself, confirms that it is a standard

4   of identity established under 21 U.S.C. § 341.  There is no question that the ice cream standard of

5   identity (21 C.F.R. 135.110) falls with the preemptive force of 21 U.S.C. § 343-1.  Accordingly, at best

6   for plaintiffs, their "third theory of liability" (Opp., 9:21) is preempted in the same manner as their

7   "primary" theory (*id.*, 6:1) and their "alternative theory" (*id.*, 8:7).[11]

8   **III.   PLAINTIFFS' PURCHASES PRIOR TO AND AFTER SUING DREYER'S NEGATE**

9   **THE REQUIRED ELEMENTS OF MATERIALITY AND RELIANCE.**

10   Though plaintiffs purport to dispute the prior and subsequent purchases detailed in Dreyer's

11   motion (Motion, 20-21), they do not undermine the record Dreyer's sets out directly from complaints

12   filed by plaintiffs in this and other cases.  In short, plaintiffs have made purchases both before and after

13   suing Dreyer's that undermine entirely their allegations that they relied to their detriment on Dreyer's

14   "All Natural Ice Cream" and "All Natural Flavors" labeling.[12]

15   One specific example detailed in Dreyer's motion relates to glycerin.  Motion, 20.  Plaintiffs

16   are suing Dreyer's because products marketed as "All Natural Flavors" contain glycerin.  FACC, ¶ 27.

17   As Dreyer's points out in its motion, however, Ms. Astiana sued The Hain Celestial Group, Inc. on

18   April 6, 2012 alleging that it, too, markets products as "natural" that contain glycerin.  *See* RJN Ex. 6.

---

[11] Finally, plaintiffs point to "the presumption against preemption," contending that it "appl[ies] 'with particular force' in this context."  Opp., 7, n.8.  But federal law is clear that whatever presumption may exist against preemption must give way to a "clear and manifest purpose of Congress" to preempt.  *Wyeth v. Levine*, 129 S. Ct. 1187, 1195 (2009).  The NLEA's preemption provision (21 U.S.C. § 343-1) is nothing if not a manifestation of a clear intent to preempt.

[12] In addition to plaintiffs' prior and post purchases, Dreyer's also pointed out in its motion that plaintiffs list many reasons why consumers find "natural" claims to be material – including because natural foods help in weight loss – but never allege which of the many reasons were specifically material *to them* in their purchasing decision.  Motion, 19-20.  Dreyer's is entitled to know this important information at the pleading stage.  In response, plaintiffs rely on the single, conclusory statement – unadorned by citation to the complaint – that they "have certainly alleged the reason DGIC's misrepresentations were material to them, and that they relied on these statements to their detriment."  Opp., 16:19-20.

Ms. Astiana's April 6, 2012 complaint against Hain Celestial alleges that Ms. Astiana purchased the "natural" products containing glycerin as late as September and October of 2011, four months *after* she sued Dreyer's.  Plaintiffs respond to this point by arguing that Ms. Astiana did not "first complain" about glycerin in *this* action until the March 30, 2012 FACC, that her purchases of Hain Celestial products were five months prior, and that the Hain Celestial complaint was filed on April 6, 2012, a week after the FACC.  Though a bit convoluted, plaintiffs' "defense" of Ms. Astiana's purchases seems to prove Dreyer's point.  Ms. Astiana either purchased Dreyer's products after actual notice of the "natural/glycerin" issue from Hain Celestial purchases, or purchased Hain Celestial products after actual notice via Dreyer's purchases.  Either way, Ms. Astiana purchased a product marketed as "natural" with glycerin as an ingredient knowing that the product may well not be "natural" under her notions of "natural," establishing that she did not materially rely to her detriment on the "natural" labeling.  In any event, and contrary to plaintiffs' assertion, Ms. Astiana actually first complained to Dreyer's about glycerin in a product marketed as "natural" ***in July of 2011***, not in the March 30, 2012 FACC.  *See* attached Decl. of Dale J. Giali.  That means that when she purchased the offending Hain Celestial products in September and October 2011, she was well aware that products marketed as "natural" may well contain synthetic glycerin.  Plaintiffs also repeat their allegation that plaintiffs would not know if the glycerin used in Dreyer's products was of a natural or synthetic type, and that without knowing which was used, it was reasonable for Ms. Astiana to assume it was the natural type regardless of her other lawsuits.  Opp., 17:10-18:2.  But, that is exactly the point – because she had already sued companies under the exact same theory, it is *not* reasonable that she assume all ingredients in a product marketed as "natural" complied with her notions of natural.  Moreover, the FDA has rejected this exact theory of liability.  Motion, 21 & n.24.

## IV.    PLAINTIFFS DO NOT HAVE STANDING REGARDING PRODUCTS NOT BOUGHT.

Plaintiffs do not dispute that they did not purchase fifty-three of the products they sue on.  Rather, plaintiffs assert the issue should be addressed on class certification.  Plaintiffs are wrong.  One of plaintiffs' cited cases, *Arevalo*, directly supports Dreyer's, as there the court dismissed plaintiffs' claims relating to a banking product they had not purchased based on lack of standing, specifically

1  rejecting an invitation to treat the issue as one of class certification. *Arevalo v. Bank of Am. Corp.*,

2  2011 WL 1195973, at *5 (N.D. Cal. Mar. 29, 2011). *Greenwood* is not applicable as it addressed a

3  challenge to the standing of *unnamed* class members, and did not consider whether named plaintiffs

4  had standing. *Greenwood v. CompuCredit Corp.*, 2010 WL 4807095, at *3 (N.D. Cal. Nov. 19, 2010).

5  In *Fallick*, the court held that "the crux of plaintiff's complaint concerns the methodology used to

6  determine benefits" that defendant health insurer admitted was used *across all health plans*. The court

7  was not confronted with different products with different alleged deceptive advertising (as is the case

8  here), but a single fraudulent practice. *See Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th

9  Cir. 1998); *see also Ralston v. Mortgage Investors Group, Inc.,* 2011 WL 4081696, at *3 (N.D. Cal.

10  Sep. 12, 2011) (same). The decision in *Koh* is likewise distinguishable, because defendant engaged in

11  "greenwashing" its cleaning products by displaying an identical "Greenlist" legend on the label of

12  every product. *Koh v. S.C. Johnson & Son, Inc.*, 2010 WL 94265, at *1 & *2  (N.D. Cal. Jan. 6, 2010).

13  Similarly, *Brazil v. Dell, Inc.* related to a supposed fraudulent discount rate offered uniformly across

14  multiple products. 2008 WL 4912050, at *1 (N.D. Cal. Nov. 14, 2008).  To the extent *Bruno v. Quten*

15  *Research Institute, LLC*, 2011 WL 5592880 (C.D. Cal. Nov. 14, 2011), stands for the proposition that

16  plaintiffs may sue for differing false advertising theories regarding discrete products they did not buy,

17  it is inconsistent with the cases *Bruno* itself cites (*Greenwood*, *Arevalo* and *Fallick*), was decided

18  wrongly, and should not be followed here.

19        Plaintiffs' claims do not fit within the cases recognizing standing regarding products not

20  purchased, because plaintiffs false advertising claims address many discrete products, with differing

21  labels and differing challenged labeling statements, e.g., Häagen-Dazs (multiple different varieties of

22  super premium ice cream product with labeling statement "All Natural Ice Cream," FACC, Ex. 11);

23  Slow Churned (multiple different varieties of light ice cream product with inconspicuous labeling

24  statement "All Natural Flavors," *id.*, Ex. 12, p. 2, et seq.); Fun Flavors (multiple different varieties of

25  frozen dairy dessert product with inconspicuous labeling statement "All Natural Flavors," *id.*, p. 6, et

26  seq.); and Grand (multiple different varieties of premium ice cream product with inconspicuous

27  labeling statement "All Natural Flavors," *id.*, p. 19, et seq.).  Plaintiffs' allegations fit squarely within

28

1  the holding of *Johns v. Bayer Corp.*, 2010 WL 476688 (S.D. Cal. Feb. 9, 2010) and the other cases

2  cited at pages 22-23 of Dreyer's Motion.

3  **V.     PLAINTIFFS HAVE NOT ALLEGED A MAGNUSON-MOSS ("MMWA") CLAIM.**

4           The descriptive representations at issue here – "All Natural Flavors" and "All Natural Ice

5  Cream" – are not representations as to an absence of defect.  Plaintiffs cannot even come up with a

6  single definition of "natural" (Motion, 4-5), let alone a definition that equates with the required defect

7  free warranty.  *See Hairston,* 2012 WL 1893818, at *5-6 ("all natural with vitamins" claim under

8  MMWA dismissed with prejudice); *Pappas v. Naked Juice Co.*, 2012 WL 1925598, at *2 (C.D. Cal.

9  May 14, 2012) ("All Natural Fruit Boosts," "All Natural," and "All Natural Fruit" claims under

10  MMWA dismissed with prejudice).  As the *Hairston* Court held, an "all natural" statement "neither

11  promises a defect-free product, nor guarantees a level of performance over a specified time period."

12  *Hairston*, 2012 WL 1893818, at *6.[13]

                                **CONCLUSION**

13           For the foregoing reasons, defendant Dreyer's Grand Ice Cream, Inc. respectfully requests that

14  its motion to dismiss the first amended consolidated complaint be granted with prejudice and without

15  leave to amend.

16  Dated:  June 15, 2012                    MAYER BROWN LLP

17                                                 Carmine R. Zarlenga
                                                   Dale J. Giali

18

19

20                                            By:_____/s/ *Dale J. Giali*_____
                                                   Dale J. Giali

21                                            Attorneys for Defendant
                                              Dreyer's Grand Ice Cream, Inc.

22

23

24  _____

25  [13] Plaintiffs argue that an "'All Natural' promise on a food label is also recognized as creating an
    express warranty under California state law." Opp. at 19, n.21.  The point, even assuming it is true, is

26  irrelevant.  First, California law is much broader on what constitutes an actionable warranty than is the
    MMWA.  Second, plaintiffs have expressly disclaimed a state law warranty claims.  FACC ¶ 70.

27

28
                                               -15-

**DECLARATION OF DALE J. GIALI**

I, Dale J. Giali, hereby declare and state as follows:

1.      I am an attorney licensed to practice law in the State of California and one of the attorneys of record for defendant Dreyer's Grand Ice Cream, Inc. in this action.  This declaration is based on my specific and personal knowledge of the facts recited below.

2.      On July 25, 2011, one of the attorneys for plaintiff Skye Astiana, Janet Spielberg, called me and we spoke by phone.  During that phone call, Ms. Spielberg informed me of thirteen (13) specific additional alleged non-natural ingredients that appear in federal regulations as synthetic and that would be included as ingredients Ms. Astiana would be challenging in a first amended complaint that Ms. Astiana intended to file in this action.  Among the thirteen ingredients that Ms. Spielberg identified was glycerin.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 15th day of June, 2012, at Los Angeles, California.


By:___/s/ *Dale J. Giali*_____

Dale J. Giali

-16-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2012, I caused the foregoing **REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CONSOLIDATED COMPLAINT; DECLARATION OF DALE J. GIALI IN SUPPORT** to be electronically filed with the Clerk of the Court.  I understand that the Court will provide electronic notification of and access to such filing to the counsel of record in this matter who are registered on the CM/ECF.

Dated:  June 15, 2012                     By:_____ */s/ Dale J. Giali* _____
                                                        Dale J. Giali, MAYER BROWN LLP
                                                        Attorneys for Defendant
                                                        DREYER'S GRAND ICE CREAM, INC.