United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKYE ASTIANA, *et al.*, | No. C-11-2910 EMC |
| Plaintiffs, | No. C-11-3164 EMC |
| v. | **CONSOLIDATED CASES** |
| DREYER'S GRAND ICE CREAM, INC., | |
| Defendant. _____/ | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |
| PAMELA RUTLEDGE-MUHS, *et al.*, | **(Docket No. 43)** |
| Plaintiffs, | |
| v. | |
| DREYER'S GRAND ICE CREAM, INC., | |
| Defendant. _____/ | |

Plaintiffs Skye Astiana, Pamela Rutledge-Muhs, and Jay Woolwine have filed a class action against Defendant Dreyer's Grand Ice Cream, Inc. ("DGIC"), alleging that it violated both federal and state law by misrepresenting that its ice cream (under the brand names Dreyer's, Edy's, and Haagen-Dazs) contained all natural ingredients when in fact they did not. Currently pending before the Court is DGIC's motion to dismiss. DGIC argues, among other things, that the claims asserted by Plaintiffs are preempted and/or are implausible. Having considered the parties briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** in part and **DENIES** in part DGIC's motion.

## I. FACTUAL & PROCEDURAL BACKGROUND

In the first amended consolidated complaint, Plaintiffs allege as follows.

DGIC manufactures and distributes ice cream under the following brand names: Dreyer's, Edy's, and Haagen-Dazs. *See* FAC ¶ 12. The Dreyer's and Edy's ice cream are basically the same – Dreyer's is simply used in the western part of the United States and Edy's in the eastern part of the United States. *See* FAC ¶¶ 12, 47. Haagen-Dazs is a premium line of ice cream. *See* FAC ¶ 12.

Some of the Dreyer's/Edy's ice cream products have labeling on the packages stating "All Natural Flavors." *See* FAC ¶ 47. As for the Haagen-Dazs ice cream products, some bear the label "All Natural Ice Cream." *See* FAC ¶ 46. According to Plaintiffs, these labels are false and misleading because (1) the Dreyer's/Edy's ice cream actually contains between one and five artificial and/or synthetic ingredients and (2) the Haagen-Dazs ice cream packaging does not disclose that one of the ingredients, cocoa, was processed using a synthetic and/or artificial alkalizing agent, *i.e.*, potassium carbonate, as opposed to a nonsynthetic one (such as sodium carbonate or sodium bicarbonate).[1] *See* FAC ¶¶ 29 & n.18, 46-47. Each plaintiff claims that, had he or she known the truth, then he or she would not have purchased DGIC's ice cream and would have purchased instead ice cream that was truly all natural or, if no such ice cream were available, then a non-natural ice cream that was cheaper than DGIC's. *See* FAC ¶¶ 8-10.

Based on, *inter alia*, the above allegations, Plaintiffs assert the following claims on their own behalf and on behalf of others similarly situated:

(1) Violation of written warranty under the Magnuson Moss Warranty Act, 15 U.S.C. § 2301. Plaintiffs allege that, by using the "All Natural Flavors" and "All Natural Ice Cream" labels, DGIC "promised that the ingredients in the products, including the flavor ingredients, were free of a particular type of defect (i.e., that they were not synthetic or artificial)." FAC ¶ 76.

(2) Common law fraud. Plaintiffs allege that Defendants made a misrepresentation by using the "All Natural Flavors" and "All Natural Ice Cream" labels because the ice cream actually contained synthetic and/or artificial ingredients. *See* FAC ¶¶ 82-83.

---

[1] In support of their claim that an ingredient is synthetic or artificial, Plaintiffs cite to various regulations which characterize the ingredient as such.

2

(3) An unlawful business practice in violation of California Business & Professions Code § 17200. Plaintiffs allege that the underlying laws that were violated are: (a) California's Sherman Law and the federal Food, Drug & Cosmetic Act, both of which address misbranded food, including false and misleading labeling; (b) the Magnuson Moss Warranty Act; and (c) federal and state law regulations that specifically deal with the labeling of ice cream. *See* FAC ¶¶ 94-97.

(4) An unfair business practice in violation of § 17200.

(5) A fraudulent business practice in violation of § 17200.

(6) False advertising in violation of California Business & Professions Code § 17500.

(7) Violation of the California Consumer Legal Remedies Act ("CLRA"). Plaintiffs allege that the Act was violated because, *e.g.*, DGIC represented that its ice cream was of a particular standard, quality, or grade even though it was not. *See* FAC ¶ 123(b).

(8) Restitution based on quasi-contract/unjust enrichment.

## II. DISCUSSION

A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to

a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal*, 129 S. Ct. at 1949.

B.  Federal Claim

The only federal claim pled in the complaint is that for breach of warranty under the Magnuson Moss Warranty Act. *See* 15 U.S.C. § 2301 *et seq.* The Act defines a written warranty as follows:

> any written affirmation of fact or written promise made in connection with the sale of a consumer product[2] by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time.

15 U.S.C. § 2301(6)(A). DGIC argues that the federal claim should be dismissed because, as a matter of law, a claim that a food is "natural" does not give any assurance that it is defect free; in other words, just because a food contains artificial and/or synthetic ingredients, that does not make it defective. According to DGIC, the word "natural" is just used to describe the food.

DGIC's reasoning is sound, and the case law supports its position. Most notably, in *Larsen v. Trader Joe's Co.*, No. C-11-5188 SI (Docket No. 41), Judge Illston rejected the plaintiffs' contention that they had a viable claim under the Magnuson Moss Warranty Act because statements that a food product is "All Natural" or "100% Natural" is a written warranty promising that the product is defect free. Judge Illston noted:

> The word "defect" is not defined within the [Act], nor is there case law explicitly interpreting the term. However, based on the plain meaning of the word, this Court is not persuaded that being "synthetic" or "artificial" is a defect. The Oxford English Dictionary defines "defect" as "the fact of being wanting or falling short; a blemish [or] flaw." The synthetic ingredients at issue were presumably knowingly and purposely added or used in the process of making these food products. As a defect primarily indicates an

---

[2] "The term 'consumer product' means any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes . . . ." 15 U.S.C. § 2301(1). A consumer product can be food. *See* 40 Fed. Reg. 25721, 25722 (1975) ("Consumer product as defined in the Act includes the following items, and any other items that are tangible personal property and are normally used for personal, family, or household purposes: boats, photographic film and chemicals, clothing, appliances, jewelry, furniture, typewriters, motor homes, automobiles, mobile homes, vehicle parts and accessories, stereos, carpeting, small aircraft, toys, and food.").

4

> omission or an aberration, the deliberate use of these ingredients does not comport with the plain meaning of the word "defect."

*Larsen*, No. C-11-5188 SI (Docket No. 41) (Order at 4-5). ]

Similarly, in *Hairston v. South Beach Beverage Co.*, No. CV 12-1429-JFW (DTBx), 2012 U.S. Dist. LEXIS 74279 (C.D. Cal. May 18, 2012), the court noted as follows:

> In this case, the Lifewater label fails to meet the definition of "written warranty" under Section 2301(6)(A) of the MMWA because the label neither promises a defect-free product, nor guarantees a level of performance over a specific time period. The challenged statements – "all natural with vitamins" and the names of various Lifewater flavors – are "product descriptions" rather than promises that Lifewater is defect-free, or guarantees of specific performance levels.

*Id.* at *18. Numerous courts have also held that product descriptions do not constitute warranties against a product defect. *See Littlehale v. The Hain Celestial Group, Inc.*, No. C 11-6342 PJH (Docket No. 48) (N.D. Cal. July 2, 2012) (Order at 1) (rejecting "plaintiffs' argument that the statements 'Pure Natural' and 'All Natural' are affirmations or promises that the products are defect free"; finding instead that "the statements are mere product descriptions" because "[t]o accept plaintiffs' argument would be to transform most, if not all, product descriptions into warranties against a defect"); *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, MDL-1703, 2006 U.S. Dist. LEXIS 100903, at *13 (N.D. Ill. May 17, 2006) (agreeing with Sears that the phrase 'Made in USA' does not constitute a 'written warranty' because it does not affirm or promise that the material or workmanship is defect-free"; noting that the phrase "arguably relate[s] to the 'nature' of the material [but] fails to satisfy the defect-free . . . prong" as [t]he phrase is [simply] a product description that does not inform consumers that the tools are defect-free"); *Goodman v. Perlstein*, No. 86-2144, 1989 U.S. Dist. LEXIS 8420, at *6 (E.D. Penn. July 21, 1989) (rejecting plaintiffs' contention that certificates for jewelry providing pecuniary appraisals constituted written warranties; stating that "[t]he appraisals provided to plaintiffs do not promise that 'such material or workmanship is defect free'"; adding that the case could be different "[h]ad the defendant warranted that a particular diamond had no flaws" or "that the stone was rock-solid, impervious to chipping").

Notably, Plaintiffs do not cite any authority to support their position that food that contains artificial and/or synthetic ingredients is defective. Nor could the Court find any cases holding such.

Plaintiffs do not contend that such ingredients present a danger to health or safety; at best, Plaintiffs allege only a perceived detriment, *see* FAC ¶ 37, thus underscoring the labeling aspect of their claims.

Accordingly, the Court dismisses with prejudice the federal claim for breach of warranty.

## C. State Law Claims

Plaintiffs' state law claims are all essentially claims for false advertising. The analysis of the state law claims, however, is different depending on the ice cream products at issue. The Court addresses first the state law claims related to the Dreyer's/Edy's ice cream which contained the "All Natural Flavors" label. The Court then turns to the Haagen-Dazs ice cream which contained the "All Natural Ice Cream" label.

### 1. Dreyer's/Edy's

For the Dreyer's/Edy's ice cream, DGIC's main argument is that the state law claims are preempted pursuant to 21 U.S.C. § 343-1, part of the Food, Drug & Cosmetic Act ("FDCA").

As DGIC asserts, § 343-1 is a preemption provision. It provides in relevant part as follows:

> [N]o State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce –
>
> . . . .
>
> (3) any requirement for the labeling of food of the type required by section . . . 403(k) that is not identical to the requirement of such section.

21 U.S.C. § 343-1(a)(3). "[N]ot identical to" means that

> the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food . . . that:
>
> (i) Are not imposed by or contained in the applicable provision (including any implementing regulation) . . . ; or
>
> (ii) Differ from those specifically imposed by or contained in the applicable provision (including any implementing regulation).

21 C.F.R. § 100.1(c)(4).

Section 403(k) (codified at 21 U.S.C. § 343(k)) provides in relevant part that "[a] food shall be deemed to be misbranded . . . [i]f it bears or contains any artificial flavoring, artificial coloring, or

6

chemical preservative, unless it bears labeling stating that fact." 21 U.S.C. § 343(k). Artificial flavor/flavoring and natural flavor/flavoring are terms defined by regulation in 21 C.F.R. § 101.22(a)(1) and (3). Artificial flavor/flavoring means "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, [etc.]." *Id.* § 101.22(a)(1). In turn, natural flavor/flavoring means "the essential oil, oleoresin, essence or extractive, [etc.] which contains the flavoring constituents derived from a spice, fruit or fruit juice, vegetable or vegetable juice, [etc.], whose significant function in food is flavoring rather than nutritional." *Id.* § 101.22(a)(3).

Title 21 C.F.R. § 101.22 is one of the implementing regulations for § 403(k). There are two subsections that are potentially relevant for resolving the current dispute.

- Section 101.22(h)(1). This section addresses labeling of flavors in the statement of ingredients. It provides as follows: "The label of a food to which flavor is added shall declare the flavor in the statement of ingredients in the following way: . . . (1) Spice, natural flavor, and artificial flavor may be declared as 'spice,' 'natural flavor,' or 'artificial flavor,' or any combination thereof, as the case may be." 21 C.F.R. § 101.22(h)(1).
- Section 101.22(i). This section addresses labeling of "characterizing flavors." It provides as follows:

> (i) If the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means, or if for any other reason the manufacturer or distributor of a food wishes to designate the type of flavor in the food other than through the statement of ingredients, such flavor shall be considered the characterizing flavor and shall be declared in the following way:
>
> (1) If the food contains no artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., "vanilla," in letters not less than one-half the height of the letters used in the name of the food [with certain exceptions] . . . .
>
> (2) If the food contains any artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display

> panel or panels of the label shall be accompanied by the common or usual name(s) of the characterizing flavor, in letters not less than one-half the height of the letters used in the name of the food and the name of the characterizing flavor shall be accompanied by the word(s) "artificial" or "artificially flavored," in letters not less than one-half the height of the letters in the name of the characterizing flavor, e.g., "artificial vanilla", "artificially flavored strawberry," or "grape artificially flavored."

21 C.F.R. § 101.22(i).

Another implementing regulation for § 403(k) is 21 C.F.R. § 135.110. In contrast to § 101.22, § 135.110 applies to ice cream specifically. Notably, one of the provisions in § 135.110 also governs the labeling of "characterizing flavors." Section 135.110(f)(2) provides:

> (i) If the food contains no artificial flavor, the name on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., "vanilla," in letters not less than one-half the height of the letters used in the words "ice cream."
>
> (ii) If the food contains both a natural characterizing flavor and an artificial flavor simulating it, and if the natural flavor predominates, the name on the principal display panel or panels of the label shall be accompanied by the common name of the characterizing flavor, in letters not less than one-half the height of the letters used in the words "ice cream," followed by the word "flavored," in letters not less than one-half the height of the letters in the name of the characterizing flavor, e.g., "Vanilla flavored," or "Peach flavored," or "Vanilla flavored and Strawberry flavored."
>
> (iii) If the food contains both a natural characterizing flavor and an artificial flavor simulating it, and if the artificial flavor predominates, or if artificial flavor is used alone the name on the principal display panel or panels of the label shall be accompanied by the common name of the characterizing flavor in letters not less than one-half the height of the letters used in the words "ice cream," preceded by "artificial" or "artificially flavored," in letters not less than one-half the height of the letters in the name of the characterizing flavor, e.g., "artificial Vanilla," or "artificially flavored Strawberry" or "artificially flavored Vanilla and artificially flavored Strawberry."

*Id.* § 135.110(f)(2).

In an advisory opinion, the FDA has pointed out there is a conflict between §§ 101.22(i) and 135.110(f)(2), both of which address characterizing flavors. As the FDA has explained, under §

8

101.22(i), "if a food contains *any* artificial flavor that simulates, resembles, or reinforces the characterizing flavor, the food must be labeled 'artificially flavored,'" whereas, under the latter, "if the food contains both a natural characterizing flavor and an artificial flavor simulating it, the food need not be labeled as artificial unless the artificial flavor predominates." Kravec Decl., Ex. 2, at 6 (FDA advisory opinion) (emphasis added).

In the instant case, Plaintiffs have made two challenges to the Dreyer's/Edy's ice cream. First, they argue that the use of the "All Natural Flavors" label is misleading because it suggests that all of the ingredients in the ice cream (not just the flavoring ingredients) are natural when in fact they are not. *See* FAC ¶ 41. Second, they argue that DGIC has violated § 135.110(f)(2) because the Dreyer's/Edy's ice cream "simply us[es] the common or usual name of the characterizing flavor," thus "falsely representing . . . that it has no artificial flavors" when in fact it does have two artificial flavors, *i.e.*, propylene glycol monostearate and/or alcalized cocoa processed with potassium carbonate. FAC ¶ 53. Plaintiffs assert that DGIC "reinforced" this misrepresentation through its use of the "All Natural Flavors" label on the ice cream. FAC ¶ 53.

### a. "All Natural Flavors"

DGIC contends that claims based on the first theory are preempted because "natural flavors" is a term that it is allowed to use in the statement of ingredients pursuant to § 101.22(h)(1) and therefore it should be allowed to use the same term elsewhere on the ice cream label without being penalized. DGIC's argument here is not simply one of preemption but rather an argument on the merits as well – *i.e.*, that, under the applicable federal standard of conduct, it has not engaged in any unlawful behavior.

To the extent Plaintiffs suggest DGIC's argument has no viability because DGIC used the term "*All* Natural Flavors" (emphasis added) on the label as opposed to "natural flavors" alone, the Court does not agree. Section 341-1(a)(3) bars a state from imposing any requirement for the labeling of food "*of the type* required by section . . . 403(k)." 21 U.S.C. § 343-1(a)(3) (emphasis added). The statute does not require exact precision. That being said, the Court is not persuaded by DGIC's argument for an independent reason.

1    DGIC's argument is largely predicated on 21 U.S.C. § 343(r).  *See* Mot. at 8.  Under §
2 343(r), a claim on a label about a food product's nutritional levels can be made "if the
3 characterization of the level . . . uses terms which are defined in regulations of the Secretary."  21
4 U.S.C. § 343(r)(2)(A)(i).  The problem for DGIC is that, as indicated by the above, § 343(r) is
5 facially inapplicable to the instant case; Plaintiffs are not challenging any claim made by DGIC with
6 respect to *nutritional levels*.  While DGIC might argue that the logic of § 343(r) should extend here,
7 the Court declines to do so.  Congress could have included, but chose not to include, a comparable
8 provision for flavoring.

9    Moreover, the Court notes that a claim about nutritional levels is less likely to be subject to
10 interpretation by a consumer.  For example, where a claim is made that a food product has 0 grams
11 of trans fat, there is no real room for debate as to what is meant by "trans fat."  In contrast, a claim
12 that a food product has "All Natural Flavors" is plausibly subject to some interpretation – *i.e.*, what
13 is the meaning of "flavors"?  Here, Plaintiffs take the position that a reasonable consumer could
14 interpret "All Natural Flavors" to mean "all natural ingredients," a claim purportedly applicable to
15 all of Dreyer's/Edy's ice cream flavors.  While DGIC disagrees, and while the Court is skeptical of
16 Plaintiffs' "spin" on "All Natural Flavors,"[3] it cannot say at this juncture that it is implausible under
17 *Twombly* and *Iqbal* that a reasonable consumer might so understand the term.

18    To the extent DGIC also argues for dismissal of claims based on the first theory on non-
19 preemption grounds – *i.e.*, because (1) it is implausible that a reasonable consumer would actually
20 view the "All Natural Flavors" label or because (2) Plaintiffs have failed to adequately allege that
21 the label was material to them and that they relied on it – the Court rejects those arguments.
22 Although the label was not prominently displayed, clearly it was intended to be seen by consumers
23 or there would be no reason to include it.  Furthermore, Plaintiffs have alleged that they are
24 concerned about and try to avoid consuming foods that are not natural; that they relied on the label
25 in purchasing the ice cream; and that, had they known about the synthetic and/or artificial
26 ingredients, they would not have purchased the ice cream.  *See* FAC ¶¶ 7-10.  These allegations are

---

[3] The Dreyer's/Edy's labels do not say "All Natural Ingredients" or "All Natural" – a more obvious and plain way to convey the supposed message.

10

1  sufficient to establish materiality and reliance. To the extent DGIC asserts that Plaintiffs are
2  obligated to explain *why* consuming natural foods is important to them, *see* Mot. at 19-20, such
3  specificity is not required by Federal Rule of Civil Procedure 8.
4        Finally, to the extent DGIC argues lack of materiality and reliance with respect to one
5  particular plaintiff – *i.e.*, Skye Astiana – the Court rejects that argument as well. Even if Ms.
6  Astiana knew that potassium carbonate was an artificial ingredient, the Dreyer's/Edy's label did not
7  identify that the agent used to alkalize the cocoa was potassium carbonate. Similarly, even if Ms.
8  Astiana knew that glycerin could be produced through a synthetic process, nothing about the label
9  disclosed that the glycerin was in fact produced through such a process.[4] To the extent DGIC argues
10 that it is not required to identify whether a natural or synthetic process was used so long as it
11 identified the ingredient, that argument is not persuasive. According to DGIC, the FDA has
12 "recogni[zed] that the disclosure of [high fructose corn syrup] (without indicating which type [*i.e.*,
13 synthetic or nonsynthetic]) provides consumers with sufficient information." Mot. at 21 n.24.
14 However, DGIC does not provide a cite to the relevant FDA authority. Moreover, it is not clear that
15 any FDA conclusions made as to high fructose corn syrup would automatically apply to other
16 ingredients.

      b.    Section 135.110(f)(2)

18       Plaintiffs' second challenge to the Dreyer's/Edy's ice cream is one made pursuant to §
19 135.110(f)(2). According to Plaintiffs, DGIC has violated § 135.110(f)(2) because the
20 Dreyer's/Edy's ice cream "simply us[es] the common or usual name of the characterizing flavor,"
21 thus "falsely representing . . . that it has no artificial flavors" when in fact it does have two artificial
22 flavors, *i.e.*, propylene glycol monostearate and/or alcalized cocoa processed with potassium

---

[4] In its reply brief, DGIC presents evidence that, as of July 2011, Ms. Astiana knew that the glycerin here was in fact artificial and/or synthetic, *see* Gialia Reply Decl. ¶ 2 (testifying that Ms. Astiana's counsel told him in July 2011 that she intended to amend the complaint to include other artificial and/or synthetic ingredients, including glycerin), but thereafter she continued to buy DGIC's ice cream and even went on to buy other products containing glycerin made by other companies (*e.g.*, products made by a company called Hain Celestial which she sued on April 6, 2012, because of, *inter alia*, its use glycerin). Even if the Court could give credit to DGIC's evidence at the 12(b)(6) phase, that evidence would not bar any claims being asserted by Ms. Astiana, at least at this juncture of the proceedings. Ms. Astiana has alleged that she made purchases *prior* to July 2011, *i.e.*, before she purportedly knew that the glycerin was artificial and/or synthetic.

1  carbonate.[5] FAC ¶ 53. As an example, Plaintiffs point to Dreyer's/Edy's 'Triple Chocolate Peanut
2  Butter Sundae" which does not use the word "flavored" or "artificial" as it allegedly should. FAC ¶
3  53.
4      As indicated by the above, Plaintiffs contend that the § 135.110(f)(2) violation is a part of *all*
5  of their state law claims. Indeed, Plaintiffs have pled in their complaint that they "do not seek to
6  enforce any of the state law claims raised herein to impose any standard of conduct that exceeds that
7  which would violate [the] FDCA." FAC ¶ 6. In so alleging, Plaintiffs expressly admit that the
8  FDCA preemption provision, *i.e.*, § 343-1, does put limits on their claims.
9      While the Court acknowledges Plaintiffs' admission, the preemption issue is not thereby
10 resolved in all aspects. The Court begins by noting that Plaintiffs have brought a § 17200 claim
11 predicated on a violation of § 135.110(f)(2). *See* FAC ¶ 97. As to this claim, the Court agrees that
12 there is no preemption. Here, Plaintiffs do not seek to impose a higher standard of conduct because
13 the federal standard is effectively incorporated into the § 17200 claim. In addition, to the extent the
14 § 17200 claim is predicated on a violation of California Health & Safety Code § 110100(a) – which
15 expressly adopts the standards articulated in the FDCA[6] – Plaintiffs do not seek to impose a higher
16 standard of conduct. Therefore, the Court concludes that there is no basis to find preemption of the
17 § 17200 claim, but only to the extent the claim is predicated on an unlawful business practice (not an
18 unfair or fraudulent one) and only to the extent the law being violated is either the FDCA or §
19 110100(a).
20     However, Plaintiffs may not proceed with the other state law claims (including the § 17200
21 claims predicated on an unfair or fraudulent business practice) because, to the extent those state laws
22 impose a label requirement stricter or different from that required by federal laws regulating flavor-
23 related labeling (21 U.S.C. § 343 and 21 C.F.R. § 135.110), they are pre-empted under 21 U.S.C. §
24 343-1. To the extent Plaintiffs point out that they are limiting all of their state law claims to the

---

[5] Plaintiffs further assert that DGIC "reinforced" this misrepresentation through its use of the "All Natural Flavors" label on the ice cream. FAC ¶ 53.

[6] Section 110100(a) provides that "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act [*i.e.*, FDCA], in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state." Cal. Health & Safety Code § 110100(a).

12

federal standard in order to avoid preemption under § 343-1, *see* FAC ¶ 6, then another problem arises – *i.e.*, these claims would then add nothing to Plaintiffs' case and would simply be duplicative.[7] "It is well established that a district court has broad discretion to control its own docket, and that includes the power to dismiss duplicative claims." *M.M. v. Lafayette Sch. Dist.*, 681 F.3d 1082, --- (9th Cir. 2012).

In its reply brief, DGIC argued for the first time that, even if Plaintiffs are bringing a claim based on § 135.110(f)(2), that claim should still be dismissed because Plaintiffs have failed to adequately state a claim for relief under the regulation. As a preliminary matter, the Court notes that, arguably, it should not even entertain this argument. DGIC could have raised the argument in its opening brief but failed to do so. However, even considering the merits, the Court is not persuaded. As noted above, Plaintiffs have adequately pled why there is a § 135.110(f)(2) violation – *i.e.*, because the characterizing flavor listed on the label does not reflect that artificial flavors were used when in fact they allegedly were.[8]

c. Summary

Accordingly, the Court rules as follows on the Dreyer's/Edy's state law claims:

(1) The motion to dismiss the state law claims based on the use of the "All Natural Flavors" label is denied.

(2) The motion to dismiss the state law claims based on an alleged violation of § 135.110(f)(2) is granted in part and denied in part. All claims except the § 17200 unlawful business practice claim alleging a violation of the FDCA and/or California Health & Safety Code § 110100(a) are dismissed as either pre-empted or duplicative.

---

[7] Notably, Plaintiffs admitted at the hearing that the other state law claims added nothing to their complaint. Plaintiffs did not contend, *e.g.*, that different remedies would be available under the other state law claims.

[8] Contrary to what DGIC argues, Plaintiffs have alleged that propylene glycol monostearate is a flavor because it imparts flavor and is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, and so forth. *See* FAC ¶ 30. Plaintiffs have also alleged the same with respect to alcalized cocoa. *See* FAC ¶ 29. It is not clear at this point whether potassium carbonate should essentially be considered part of the flavor imparted by the alcalized cocoa; that issue cannot be decided on a Rule 12(b)(6) motion.

### 2. Haagen-Dazs

As for the Haagen-Dazs ice cream, as noted above, the contested label stated "All Natural Ice Cream," and not "All Natural Flavors." DGIC argues that the state law claims (each of which, as noted above, is essentially a claim for false advertising) based on the "All Natural Ice Cream" label should be dismissed because of materiality problems similar to above. DGIC further argues that Plaintiffs' claims based on the "All Natural Ice Cream" label are implausible because (1) ice cream is not a wholesome or healthy food, (2) ice cream is not a natural food (*i.e.*, one found in nature), (3) the label on its face indicates that only the ice cream itself is natural (*i.e.*, the ice cream base) and not mix-ins to the ice cream, and (4) even if the mix-ins were considered part of the ice cream, a reasonable consumer would not likely expect that the cocoa was alkalized with a "natural" alkalizing agent, as opposed to the commonly used potassium carbonate. As discussed below, none of these arguments is persuasive.

DGIC's materiality argument is rejected for the same reasons as discussed above. As for DGIC's first two arguments numbered above, they are clearly without merit and hardly worth addressing. Plaintiffs do not claim that ice cream is a wholesome or healthy food. They simply state in their complaint that there is a perceived benefit to natural ingredients in food products – *e.g.*, that natural ingredients are healthier and help avoid disease and chronic conditions. *See* FAC ¶ 37. Likewise, Plaintiffs do not claim that ice cream may be found in nature. Plaintiffs simply maintain that the label "All Natural Ice Cream" suggests that the entire ice cream product contains natural ingredients.

As for DGIC's third argument numbered above, although not entirely without merit, it too is rejected. As noted above, in the third argument, DGIC asserts that "All Natural Ice Cream" means that only the ice cream base itself is natural and not, *e.g.*, mix-ins to the ice cream. In support of this argument, DGIC points out that the ingredient list for the ice cream separates out the ice cream from mix-ins (such as cookie dough pieces and "chocolaty" chips). *See* Mot. at 16. In response, Plaintiffs contend that DGIC's position has no merit because, under federal regulations, ice cream is defined to include flavoring ingredients and because, under Ninth Circuit precedent, *Williams v. Gerber*

1  *Products Co.*, 552 F.3d 934 (9th Cir. 2008), DGIC is barred from relying on the ingredient list to
2  "correct" a false or misleading statement on the front of its packaging.
3        The Court agrees with Plaintiffs.  First, a flavoring ingredient for ice cream may arguably be
4  considered an integral part of the ice cream.  Section 135.110 provides in relevant part that "[i]ce
5  cream is a food produced by freezing, while stirring, a pasteurized mix consisting of [certain] dairy
6  ingredients" and "excluding other food fats, except such as are natural components of flavoring
7  ingredients used or are added in incidental amounts to accomplish specific functions.  Ice cream is
8  sweetened with safe and suitable sweeteners and may be characterized by the addition of flavoring
9  ingredients."  *Id.* § 135.110(a)(1).  Mix-ins which provide a part of the flavor may arguably be
10 treated similarly.
11       Second, *Williams* governs.  In *Williams*, the plaintiffs were parents of small children who
12 brought a class action against Gerber, alleging that the company deceptively marketed its "Fruit
13 Juice Snacks," a food product developed for toddlers.  The district court granted Gerber's 12(b)(6)
14 motion to dismiss but, on appeal, the Ninth Circuit reversed.

> The district court suggests that "no reasonable consumer upon review of the package as a whole would conclude that Snacks contain juice from the actual and fruit-like substances displayed on the packaging particularly where the ingredients are specifically identified."  We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discovery the truth from the ingredient list in small print on the side of the box.  The ingredient list on the side of the box appears to comply with FDA regulations and certainly serves some purpose.  We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception.  Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.

24 *Id.* at 939-40.  Thus, as Plaintiffs argue, under *Williams*, DGIC cannot rely on the ingredient list to
25 correct any false or misleading statements on the front of its packaging.
26       DGIC's final contention is predicated on an FDA advisory policy which states that natural
27 means "nothing artificial or synthetic (including all color additives regardless of source) has been
28 included in, or has been added to, a food *that would not normally be expected to be in the food*."  58

Fed. Reg. 2303, 2407 (1993) (emphasis added). According to DGIC, because potassium carbonate is commonly used as an alkalizing agent – as Plaintiffs admit in their complaint – nothing artificial or synthetic has been used in its ice cream. This position is problematic because, even if potassium carbonate is commonly used, that does not necessarily mean that a reasonable consumer would expect it to be used – *i.e.*, normally used does not necessarily imply normally expected; a reasonable consumer may not have the same knowledge as, *e.g.*, a commercial manufacturer. Even if a reasonable consumer might have some knowledge about alkalizing agents, Plaintiffs have alleged that not only is potassium carbonate commonly used as an alkalizing agent but so too is sodium carbonate, which is not artificial or synthetic. *See* FAC ¶ 29 & n.18.

Accordingly, the state law claims with respect to the Haagen-Dazs ice cream shall not be dismissed.

D.   Standing

Finally, DGIC argues that the Court should dismiss all of the claims asserted by Plaintiffs to the extent they are based on ice cream products that Plaintiffs themselves did not purchase. According to DGIC, Plaintiffs lack standing to bring claims based on products they did not buy. In response, Plaintiffs argue that there is sufficient similarity between the products they did buy and those they did not buy such that their claims should survive dismissal and that any concerns of DGIC (or, for that matter, the Court) are better addressed at the class certification stage – *i.e.*, whether Plaintiffs can adequately represent purchasers of the other products.

Both parties acknowledge that there is authority going both ways. *See, e.g.*, *Donohue v. Apple, Inc.*, No. 11-cv-05337, 2012 U.S. Dist. LEXIS 65860 (N.D. Cal. May 10, 2012) (stating that "[c]ourts in this circuit have diverged on the question of whether a named plaintiff has standing to sue on behalf of purchasers of a product that he or she did not purchase"). Some authority is conclusory in its analysis. For those cases that do provide more specific reasoning, the critical inquiry seems to be whether there is sufficient similarity between the products purchased and not purchased.

For example, in *Dysthe v. Basic Research LLC*, No. CV 09-8013 AG (SSx), 2011 WL 5868307 (C.D. Cal. June 13, 2011), the plaintiff asserted class action claims related to two different

1 products, Relacore and Relacore Extra Maximum Strength, even though she had only purchased the
2 latter product and not the former. The court held that the plaintiff lacked standing to bring claims
3 based on a product she had never purchased. *See id.* at *4. Because she had never bought Relacore,
4 she could not "show[] any harm suffered as to this product." *Id.* Notably, the court disagreed with
5 the plaintiff's position that the two products were "'nearly identical.'" *Id.* "[T]heir respective
6 ingredients shows significant differences between the Products. Relacore contains nineteen
7 ingredients, but Relacore Extra contains only ten." *Id.* Furthermore, the two products had different
8 packaging. "The Relacore packaging is blue and black, and it describes product features such as
9 'Stress and Mood Components,' 'Anxiety Components,' and 'Energy Components.' Relacore
10 Extra's packaging is purple and black and it does not list those three 'Components.'" *Id.* at *5. The
11 court concluded:

> Having a few common ingredients is simply not enough to show the Products are the same or even "nearly identical." In fact, this is true for just about any type of product. After all, just because an Old Fashioned and a Manhattan both have bourbon doesn't mean they're the same drink. Relacore and Relacore Extra are different products, marketed and sold separately by Defendants.

*Id.*

In contrast, in *Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122 (W.D. Wash. 2010), the court rejected the defendant's argument that the plaintiffs' class action claims were plausible only as to those computer models that they actually purchased, and not those that they did not purchase. The court explained:

> Plaintiffs have pleaded the same core factual allegations and causes of actions regarding [the] computer models [they purchased, *i.e.*, the Inspiron 1100 and 1150] as they have regarding the Inspiron 5100 and 5160 models [which they did not purchase]. Although Dell's argument as to these computer models touches on legal concerns that may surface later in this action, the court is satisfied that the amended complaint includes sufficient factual allegations.

*Id.* at 1134.

Similarly, in *Koh v. S.C. Johnson & Son, Inc.*, No. C-09-0927 RMW, 2010 WL 94265 (N.D. Cal. Jan. 6, 2010), Judge Whyte of this Court rejected the defendant's argument that the plaintiff lacked standing to pursue class action claims based on a product (Shout) that he did not purchase as

17

1 opposed to a product (Windex) that he did purchase. The court began by noting that "the Supreme
2 Court has not resolved whether the issue presented is a question of standing or adequacy of
3 representation." *Id.* at *3. It then noted that "there is no brightline rule that different product lines
4 cannot be covered by a single class." *Id.* Ultimately, the court concluded that there was enough in
5 the complaint to survive dismissal because the plaintiff was challenging the defendant's use of
6 specific labels (*i.e.*, "Greenlist Ingredients" and "Greenlist™ is a rating system that promotes the use
7 of environmentally responsible ingredients. For additional information, visit www.scjohnson.com")
8 that could be found on *both* the Shout and the Windex products. (According to the plaintiff, these
9 labels made the products seem more environmentally friendly than they actually were.) The court
10 added that the issue was more properly one for consideration at the class certification stage. *See id.*
11 *See also Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) (holding that, "once
12 the district court correctly determined that Fallick had standing to bring suit under ERISA against
13 Nationwide with respect to its application of reasonable and customary limitations to its
14 determination of medical benefits – a methodology which, by Nationwide's own admission, it
15 employs in *all* the benefits plans which Fallick wishes to include under the aegis of the proposed
16 class – the court should then have analyzed whether Fallick satisfied the criteria of Rule 23 with
17 respect to the absent class members") (emphasis added).
18 In the instant case, Plaintiffs have alleged sufficient similarity between the products they did
19 purchase and those that they did not; any concerns of DGIC and/or the Court about material
20 differences are better addressed at the class certification stage rather than at the 12(b)(6) stage.
21 Plaintiffs are challenging the same kind of food products (*i.e.*, ice cream) as well as the same labels
22 for all of the products – *i.e.*, "All Natural Flavors" for the Dreyer's/Edy's products and "All Natural
23 Ice Cream" for the Haagen-Dazs products. That the different ice creams may ultimately have
24 different ingredients is not dispositive as Plaintiffs are challenging the same basic mislabeling
25 practice across different product flavors. Indeed, many of the ingredients are the same – *i.e.*, 21 out
26 of 59 ice creams contain propylene glycol monostearate; 43 out of 59 contain potassium carbonate;
27 and all 59 appear to contain glycerin, mono and diglycerides, tetrasodium pyrophosphate, and
28

xanthan gum. *See* FAC ¶ 1. Therefore, the Court rejects DGIC's argument that claims based on ice cream products not purchased by Plaintiffs should be dismissed from the case.

To the extent DGIC relies on the *Larsen* opinion recently issued by Judge Illston, *see Larsen*, No. C-11-5188 SI (Docket No. 41), that case is distinguishable. While Judge Illston concluded that the plaintiffs did not have standing to pursue claims related to Trader Joe's crescent rolls since they did not purchase that product, the plaintiffs in that case challenged a wide range of Trader Joe's products (cookies, apple juice, cinnamon rolls, biscuits, ricotta cheese, and crescent rolls) which bear little similarity. *See Larsen*, No. C-11-5188 SI (Docket No. 41) (Order at 1-2) (listing products at issue). Here, as noted above, Plaintiffs are challenging the same kind of product (ice cream), based on largely the same ingredients, and asserting the same wrongful conduct applicable to a wide range within the product line.

### III. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part DGIC's motion to dismiss.

(1) The federal breach-of-warranty claim is dismissed with prejudice.

(2) As to the Dreyer's/Edy's state law claims, the claims are dismissed only in part. More specifically, the state law claims are dismissed *except* for the § 17200 unlawful business practice claim based on a violation of the FDCA and California Health & Safety Code § 110100(a) (*i.e.*, those which expressly adopt the federal labeling standard).

(3) The motion to dismiss is denied with respect to the Haagen-Dazs state law claims.

(4) The motion to dismiss based on standing is denied.

This order disposes of Docket No. 43.

IT IS SO ORDERED.

Dated: July 20, 2012

_____
EDWARD M. CHEN
United States District Judge